**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT DELAWARE**

| | |
|---|---|
| In re:<br><br>RGN-GROUP HOLDINGS, LLC, a Delaware limited liability company, *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-11961 (BLS)<br>(Joint Administration Requested) |

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS ESTABLISHING
NOTIFICATION PROCEDURES FOR LEASE TERMINATION**

The debtors and debtors in possession in the above-captioned chapter 11 proceedings (collectively, the "Debtors"), hereby move (the "Motion") pursuant to sections 105(a), 362, and 541 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Rule 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an interim order (the "Proposed Interim Order") and final order (the "Proposed Final Order"), substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, (i) establishing notice procedures in connection with any purported termination of a Lease or "lock-out" of a Lease Holder by a Landlord during the pendency of these Chapter 11 Cases (all as defined herein), and (ii) granting related relief. In support of this Motion, the Debtors rely upon the *Declaration of James S. Feltman in Support of Chapter 11 Petitions and First-Day*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's Federal Employer Identification Number ("FEIN"), where applicable, are as follows: RGN-Group Holdings, LLC, RGN-National Business Centers, LLC (7723), H Work, LLC (4516), RGN-Columbus IV, LLC, RGN-Chapel Hill II, LLC, RGN-Chicago XVI, LLC, and RGN-Fort Lauderdale III, LLC. The aforementioned Debtors that do not include a FEIN are disregarded entities for tax purposes and do not have FEINs. The mailing address for the Debtors is 3000 Kellway Drive, Suite 140, Carrollton, Texas 75006 (Attn: James S. Feltman, Responsible Officer).

*Relief* (the "First-Day Declaration"), which was filed concurrently herewith. In further support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1. The Court has jurisdiction over these chapter 11 cases and this Motion under 28 U.S.C. §§ 1334(b), 1334(e)(1), and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012 (the "Order of Reference"). The Motion is a core matter under 28 U.S.C. § 157(b), and the Court may enter a final order consistent with Article III of the United States Constitution.[2]

2. Venue of these chapter 11 cases and this Motion is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

3. The statutory and procedural predicates for the relief requested herein are sections sections 105, 362, and 541 of title 11 of the United States Code (the "Bankruptcy Code").

## GENERAL BACKGROUND

4. The Debtors are direct or indirect subsidiaries of Regus Corporation, a Delaware corporation that, together with its affiliates (collectively, "IWG" or the "Company"), offers a network of on-demand office and co-working spaces, and ancillary services and support, to a variety of clients across a host of industries in over 1,000 locations in the United States and Canada.

5. IWG's business model begins with entry into long-term non-residential real property leases (each, a "Lease") with property owners (each, a "Landlord") that provide the

---

[2] The Debtors consent to entry of a final order by this Court if it is determined that the Court, absent consent of the parties, cannot enter a final order consistent with Article III of the United States Constitution.

2

Company unoccupied office space (the "Centers"). Based on significant market research on potential client needs in local markets and the unique requirements of their existing clients, IWG engineers each of the Centers to meet the architectural style, service, space, and amenity needs of those individuals, companies, and organizations who will contract for use of subportions of the Centers. IWG markets its Centers under an umbrella of different brand names, each tailored to appeal to different types of clients and those clients' specialized needs. These clients (the "Occupants") enter into short-term licenses (each, an "Occupancy Agreement") to use portions of the Centers, which are customizable as to duration, configuration, services, and amenities. When operating successfully, a Center's Occupants' license payments ("Occupancy Fees") will exceed the combined cost of the underlying long-term lease, management cost, and operating expenses of the Center.

6.  The lessee on each Lease (each, a "Lease Holder") is typically a special-purpose entity (SPE) formed for this specific purpose—including, for example, Debtors RGN-Columbus IV, LLC ("Columbus IV"), RGN-Chapel Hill II, LLC ("Chapel Hill II"), RGN-Chicago XVI, LLC ("Chicago XVI"), and RGN-Fort Lauderdale III, LLC ("Fort Lauderdale III" and, collectively with Columbus IV, Chapel Hill II, and Chicago XVI, the "SPE Debtors"). However, certain IWG entities act as Lease Holder for multiple Leases—including, for example, Debtors RGN-National Business Centers, LLC ("RGN-National") and H Work, LLC ("H Work"). Certain Lease Holders' obligations under their respective Leases are partially or fully guaranteed by another IWG entity, including in some cases Debtors RGN-Group Holdings, LLC ("Holdings"), RGN-National, and H Work (collectively, the "Guarantor Debtors").[3]

---

[3] Non-debtor Regus Plc S.A., a Bailiwick of Jersey entity headquartered in Luxembourg, is also guarantor of certain of the Leases.

ACTIVE.124811477.06

7. On July 30, August 2, August 3, and August 8 of this year, Columbus IV, Chapel Hill II, Chicago XVI, and Fort Lauderdale III, respectively, each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.

8. On August 17, 2020, the Guarantor Debtors filed their voluntary chapter 11 petitions with this Court.[4]

9. Each of the Debtors is a "small business debtor" as defined by section 101(51D) of the Bankruptcy Code. The Debtors have elected for subchapter V of chapter 11 of the Bankruptcy Code to apply to their chapter 11 cases (the "Chapter 11 Cases"). Further, the Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1182(2) and 1184 of the Bankruptcy Code. As of the date hereof, no request for appointment of an official committee of unsecured creditors, a chapter 11 trustee, or an examiner has been made.

10. On July 31, 2020, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed Natasha Songonuga to serve as the trustee under section 1183(a) of the Bankruptcy Code (the "Subchapter V Trustee") for Columbus IV. The U.S. Trustee subsequently appointed Ms. Songonuga as the Subchapter V Trustee for Chapel Hill II and Chicago XVI on August 10, 2020, and for Fort Lauderdale III on August 13, 2020.[5]

11. Additional information regarding the Debtors' history and business operations, their capital structure, and the events leading up to the commencement of these Chapter 11 Cases is set forth in the First Day Declaration.

---

[4] As used herein, the term "Petition Date" refers to the date of commencement of the applicable Debtor's (or Debtors') chapter 11 proceedings.

[5] Although Ms. Songonuga has not yet been officially designated as Subchapter V Trustee in the Guarantor Debtors' chapter 11 cases, the Debtors anticipate that she will be so designated.

4

**RELEVANT BACKGROUND**

12. All of the furniture, fixtures, equipment, and other personal property (collectively, "FF&E") located in the respective Centers in the United States is owned by Debtor Holdings and leased to each Lease Holder pursuant to certain Equipment Lease Agreements executed between each Lease Holder and Holdings (each, an "Equipment Lease Agreement"). The FF&E includes furniture in both offices and common areas, fixtures and other construction within the office space, and phones and other telecommunication and video equipment used by the Occupants in the leased premises. The FF&E serves as collateral for more than $400 million of prepetition secured debt owed by Holdings to Regus Corporation and, taken together, is the most significant asset of the Debtors' estates.

13. Under the Equipment Lease Agreements, the Lease Holders pay Holdings for the original cost of the FF&E, plus a finance fee and any direct costs incurred by Holdings to provide the FF&E to the Lease Holders (such as insurance, maintenance, etc.), plus a margin fee.[6] In 2019, Holdings' gross revenues related to the Equipment Leases totaled approximately $9.1 million per month.

14. As noted above, the Guarantor Debtors are guarantors of certain Leases within the IWG North American portfolio, including approximately 570 Centers in the United States and 86 Centers in Canada. In consideration for their provision of guarantees, the Guarantor Debtors

---

[6] To be clear, following their respective Petition Dates, the SPE Debtors have not made any payments to Holdings under their respective Equipment Lease Agreements. Any payments by the SPE Debtors, H Work, or RGN-National under their respective Equipment Lease Agreements going forward will be in accordance with applicable provisions of the Bankruptcy Code (*e.g.*, section 365(b)(5) (providing 60-day period before a debtor must resume performance on a personal property lease post-petition), and applicable orders of this Court (*e.g.*, with respect to debtor-in-possession financing or use of cash collateral).

receive guarantee fees from the respective Lease Holders, payable semi-annually in arrears, which totaled approximately $7.4 million in June 2020.

15. Under many, if not most, of the Leases for Centers that are guaranteed by the Guarantor Debtors, the commencement of bankruptcy proceedings by the guarantor is an event of default. Subject to the particular terms of the Lease and applicable local law, Landlords' remedies in the event of a default under their Leases Lease may include (i) retaking of possession of the Centers and exclude the Lease Holders (and, by extension, its Occupants) therefrom— referred to herein as a "lock-out" right, and (ii) termination of the Lease.

16. If effectuated, either a lock-out or a termination would result in the Landlord coming into possession of the FF&E owned by Holdings—at the very least physically, but perhaps also legally, *e.g.*, to the extent the Lease or local law provides for the imposition of a landlord's lien on personal property located in the Center.[7] A lock-out or Lease termination at a given Center would also necessarily impact the revenue (i) to Holdings' bankruptcy estate under the applicable Equipment Lease Agreement, and (ii) to the applicable Guarantor Debtor's estate for guarantee fees.

17. While the exercise of "lock-out" or termination rights would typically require advance notice to the Lease Holder, in certain circumstances it might not—*e.g.*, if there had been a previous default, notice, and expiration of applicable cure periods and the Landlord and Tenant were operating under a formal or informal forbearance arrangement. And in any event, even where notice to the Lease Holder is provided, it is not certain whether (or if so, when) such notice would be provided to the Debtors so as to permit them to seek enforcement or extension

---

[7] For the avoidance of doubt, nothing herein is intended or should be construed as an acknowledgement of the validity of such a lien or a waiver of any rights or defenses thereto, all rights and defenses being expressly reserved by Holdings.

of the automatic stay, as applicable, if appropriate under the circumstances and in the interests of the Debtors' estates and creditors.

## **RELIEF REQUESTED**

18. By this Motion, pursuant to sections 105(a) and (d)(2), and 362(a) of the Bankruptcy Code, the Debtors request entry of interim and final orders establishing notice procedures (the "Notice Procedures") in connection with any purported termination of a Lease or "lock-out" of a Lease Holder by a Landlord during the pendency of these chapter 11 cases (collectively, "Termination Actions"), so as to provide the Debtors a fair opportunity to protect the interests of their estates and creditors by seeking intervention from this Court if and to the extent necessary and appropriate under the particular circumstances of a proposed Termination Action.

19. As set forth in the proposed orders, the Notice Procedures generally require that any Landlord, or successor or assign of any Landlord, under any Lease provide the Debtors and the Subchapter V Trustee ten (10) business days' notice prior to the effective date of any intended Termination Action with respect to any Lease. If at the conclusion of this notice period (or earlier, if agreed by the Debtors and the Subchapter V Trustee) there has been no order of this Court staying the Termination Action, then the Landlord would be free to proceed with the Termination Action at that time. Any Termination Actions taken in violation of the Notice Procedures would be void *ab initio*.

20. The Debtors' intend that the Proposed Interim Order and Proposed Final Order will apply to any Termination Actions in respect of Lease Holders and Centers located in Canada and they intend to seek recognition of such orders as part of the proposed recognition proceedings under the Companies' Creditors Arrangement Act in Canada.

**BASIS FOR RELIEF REQUESTED**

21.     With certain exceptions, section 541 of the Bankruptcy Code provides that all property, "wherever located and by whomever held," to which a debtor has a legal or equitable interest becomes property of the estate upon the commencement of a chapter 11 case. 11 U.S.C. § 541(a)(1). The FF&E is owned outright by Holdings and is leased to the Lease Holders for use in their Centers. The FF&E is unquestionably property of Holdings' estate.

22.     By virtue of 28 U.S.C. § 1334(e)(1) and the Order of Reference, this Court has exclusive *in rem* jurisdiction over the FF&E, as property of Holdings' estate. This property is protected by section 362(a) of the Bankruptcy Code, which imposes a stay, applicable to "all entities," against "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," and "any act to create, perfect, or enforce a lien against property of the estate." 11 U.S.C. §§ 362(a)(3) & (4). The automatic stay extends extraterritorially. *See, e.g.*, *In re Rimsat, Ltd.*, 98 F.3d 956, 962 (7th Cir. 1996) (Posner, J.) (holding automatic stay applies extraterritorially, noting "[t]he efficacy of the bankruptcy proceeding depends on the court's ability to control and marshall the assets of the debtor wherever located (see [11 U.S.C. ]§ 541(a))").

23.     As noted above, the "lock-out" of a Lease Holder from its Center and the termination of a Lease would necessarily result in the applicable Landlord obtaining control of property "of" the Holdings estate—i.e., the FF&E, which would then be in the Landlord's possession. This would violate, at a minimum, section 362(a)(3) of the Bankruptcy Code (and possibly section 362(a)(4), to the extent the Landlord asserted any lien upon the FF&E).

24.     The "lock-out" of a Lease Holder and the termination of a Lease would also necessarily result in the applicable Landlord obtaining control of property "from" the Holdings

8

bankruptcy estate—namely, the possessory property interest in the premises where Centers are operated due to the FF&E therein.  For example, in *In re Atlantic Business and Community Corporation*, the bankruptcy court found that a landlord violated the automatic stay when it attempted to exercise its recapture rights by changing the locks to the premises.  *In re Atlantic Bus. & Cmty. Corp.*, 901 F.2d 325, 328 (3d Cir. 1990).  The debtor was a mere "tenant at sufferance" at the time of the landlord's action (i.e., having no leasehold interest the premises), but it owned the equipment located on the premises.  On appeal, the landlord argued that the debtor's access to the subject equipment was not a protectable property interest in the premises as defined section 541 of Bankruptcy Code, and thus was not covered by the automatic stay.  The Third Circuit disagreed.  Applying rationale from the Second Circuit's decision in *In re 48th Street Steakhouse Inc.*, 835 F.2d 427, 430 (2nd Cir. 1987), the Third Circuit found that "the mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger protection of the automatic stay." *Atlantic Bus. & Cmty. Corp.*, 901 F.2d at 328 (quoting *48th Street Steakhouse*, 835 F.2d at 430).  Here, Holdings has a similar possessory interest in the various Centers by virtue of its ownership of the FF&E located therein.  Like the changing of the locks in *Atlantic Business*, a Landlord's seizure of a Center would similarly interfere with the limited possessory interest in the Center represented by Holdings' FF&E.

25. Finally, the "lock-out" of Lease Holders or termination of Leases could negatively impact the Guarantor Debtors' revenue streams from Equipment Lease Agreements and guarantee fees, since it would effectively put the applicable Lease Holders out of business. Whether this indirect effect on property of the Guarantor Debtors' estates would rise to the level of a violation of the automatic stay may depend on the particular circumstances, courts in this district have recognized in other contexts that a risk of harm to property of the bankruptcy estate

9

is sufficient to justify the imposition of notice procedures similar to those contemplated by this Motion. *See, e.g.*, *In re Quorum Health Corp.*, No. 20-10766 (KBO) (Bankr. D. Del. Apr. 13, 2020 and May 1, 2020) (notice procedures for trading in equity securities of the debtor, given the potential impact of such trades on the debtor's net-operating-loss carryforward deductions for income tax purposes); *In re Melinta Therapeutics, Inc.*, No. 19012748 (LSS) (Jan. 3, 2020 and Feb. 7, 2020) (same); *In re Anna Holdings, Inc.*, No. 19-12551 (CSS) (Bankr. D. Del. Dec. 3, 2019) (same); *In re Forever 21, Inc.*, No. 19-12122 (MFW) (Bankr. D. Del. Oct. 24, 2019) (same); *In re Destination Maternity Corp.*, No. 19-12256 (BLS) (Bankr. D. Del. Oct. 22, 2019 and Nov. 12, 2019) (same); *In re Insys Therapeutics, Inc.*, No. 19-11292 (KG) (Bankr. D. Del. June 11, 2019 and July 3, 2019) (same).[8]

26. Section 105(a) of the Bankruptcy Code authorizes the Court to enter "any order, process, or judgment that is necessary or appropriate to carry out the provisions of th[e Bankruptcy Code]." 11 U.S.C. § 105(a). Section 105(d)(2) further provides that the Court may, "unless inconsistent with any other provision of th[e Bankruptcy Code] or with applicable Federal Rules of Bankruptcy Procedure, may issue an order . . . prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically . . . ." 11 U.S.C. § 105(d)(2).

27. The Debtors submit that the proposed Notice Procedures are a necessary and appropriate procedural mechanism for enforcement of the automatic stay applicable to property of the Guarantor Debtors' bankruptcy estates, particularly since the Termination Actions that would be subject to the Notice Procedures (i) in most cases, already require some form of

---

[8] Due to their voluminous nature, the orders are not attached to this Motion, but are available on request.

advance notice to at least the Lease Holder prior to the effectiveness of such actions under the terms of the Lease or applicable law, and (ii) in any event, would at least arguably require advance notice to the Debtors and Subchapter V Trustee, and an opportunity to be heard before this Court, pursuant to section 362(d)(1) of the Bankruptcy Code (governing relief from the automatic stay) and Federal Rule of Bankruptcy Procedure 4001(a) (requiring a motion on notice to parties in interest).  In addition, the Debtors submit that the Notice Procedures are appropriate to ensure that the Debtors' chapter 11 cases are handled expeditiously and economically, by providing the Debtors and affected Landlords a brief, but meaningful opportunity for discussion, and identification and narrowing of any factual or legal issues, before engaging in motion practice or litigation that would be burdensome on the parties and this Court.  Indeed, absent establishment of the Notice Procedures, the Debtors would potentially need to take broader, pre-emptive action to protect Holdings' interest in its FF&E (*e.g.*, commencement of an adversary proceeding seeking injunctive relief under section 105(a) and Federal Rule of Bankruptcy Procedure 7065—which might need to be against all Landlords, absent any ability of the Debtors to determine beforehand the Centers, if any, for which there is likely to be a dispute).

28. For these reasons, the Debtors respectfully submit that the proposed Notice Procedures are in the best interests of the Debtors' estates and creditors, and should be approved.

## **INTERIM APPROVAL SHOULD BE GRANTED**

29. Granting the relief requested herein on an interim basis will benefit the Debtors and their estates by preventing the near-term loss of the Debtors' ability to successfully reorganize, while allowing Landlords and other parties in interest time to evaluate the Notice Procedures and be heard with respect to them at a final hearing.  Absent the interim relief, the Debtors and their estates may be irreparably harmed due to a potential flood of Termination

11

Actions that may follow immediately after Landlords receive notice of the Guarantor Debtors' bankruptcy filings. That is, Landlords may rush to regain possession of the Centers from Lease Holders notwithstanding (and perhaps unaware, until after the fact) that such actions may be prohibited under section 362 of the Bankruptcy Code. Interference with Holdings' rights vis-à-vis its FF&E in the U.S. Centers, or disruption of the Guarantor Debtors' revenue streams from Equipment Lease Agreements and/or guarantee fees in U.S. or Canadian Centers, as applicable, would jeopardize the Debtors' prospects of a successful reorganization. Accordingly, the Debtors request that the Notice Procedures proposed herein be approved on an interim basis at the "first-day" hearing in these chapter 11 cases, and that a further hearing be scheduled to consider entry of the Proposed Final Order.

## **RESERVATION OF RIGHTS**

30. Nothing contained herein is intended or shall be construed as (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (c) a waiver of any claims or causes of action that may exist against any creditor or interest holder; (d) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code; or (e) a bar on the Debtors' right or ability to pursue the similar relief as part of an adversary proceeding.

## **NOTICE**

31. The Debtors will provide notice of this Motion to: (i) the Office of the United States Trustee; (ii) the Subchapter V Trustee; (iii) the Debtors' thirty (30) largest unsecured

12

creditors on a consolidated basis; (iv) counsel for the Debtors' prepetition secured lender; (v) the Securities & Exchange Commission; (vi) the Internal Revenue Service; (vii) the Delaware State Treasury; (viii) the Delaware Secretary of State; and (ix) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. Notice of this Motion and any order with respect hereto will be served in accordance with Local Rule 9013-1(m), including, for the avoidance of doubt, on the Landlords.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary under the circumstances.

*[Remainder of page intentionally left blank.]*

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Interim Order and Proposed Final Order, substantially in the forms attached hereto, granting the relief requested herein and any further relief as is just and proper.

| | |
|---|---|
| Dated: Wilmington, Delaware<br>August 17, 2020 | **FAEGRE DRINKER BIDDLE & REATH LLP**<br>James F. Conlan (admitted *pro hac vice*)<br>Mike T. Gustafson (admitted *pro hac vice*)<br>311 S. Wacker Drive, Suite 4300<br>Chicago, Illinois 60606<br>Tel.: (312) 212-6500<br>Fax: (312) 212-6501<br>James.Conlan@faegredrinker.com<br>Mike.Gustafson@faegredrinker.com<br><br>-and-<br><br>*/s/ Patrick A. Jackson*<br>Patrick A. Jackson (Del. Bar No. 4976)<br>Ian J. Bambrick (Del. Bar No. 5455)<br>222 Delaware Avenue, Suite 1410<br>Wilmington, DE 19801<br>Tel.: (302) 467-4200<br>Fax: (302) 467-4201<br>Patrick.Jackson@faegredrinker.com<br>Ian.Bambrick@faegredrinker.com<br><br>-and-<br><br>Jay Jaffe (admitted *pro hac vice*)<br>600 E. 96th Street, Suite 600<br>Indianapolis, Indiana 46240<br>Tel.: (317) 237-0300<br>Fax: (317) 237-1000<br>Jay.Jaffe@faegredrinker.com<br><br>*Proposed Counsel to the Debtors*<br>*and Debtors in Possession* |