**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>RGN-GROUP HOLDINGS, LLC, a Delaware limited liability company, *et al.*.[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-11961 (BLS)<br><br>(Jointly Administered)<br><br>Hearing Date: August 25, 2020, at 3:00 p.m. (ET)<br><br>Related to Docket No. 7 |

**OBJECTION OF VARIOUS LANDLORDS TO DEBTORS'**
**MOTION FOR INTERIM AND FINAL ORDERS ESTABLISHING**
**NOTIFICATION PROCEDURES FOR LEASE TERMINATION**

The landlords of various Regus entities identified on <u>Exhibit "A"</u> attached hereto (collectively, the "<u>Landlords</u>"), by and through their counsel, hereby file this objection (the "<u>Objection</u>") to the *Motion for Interim and Final Orders Establishing Notification Procedures for Lease Termination* [Docket No. 7] (the "<u>Motion</u>") filed by the Debtors in the above-captioned bankruptcy cases, as follows:[2]

**PRELIMINARY STATEMENT**

1. In the Motion, the Debtors request that the Court issue what is effectively a nationwide mandatory injunction prohibiting Landlords from the enforcement of state law rights under their leases with certain non-debtor special-purpose entity (SPE) tenants (the "<u>Non-Debtor Tenants</u>") without giving prior notice to the Debtors and the Subchapter V Trustee. It is

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's Federal Employer Identification Number ("FEIN"), where applicable, are as follows: RGN-Group Holdings, LLC, RGN-National Business Centers, LLC (7723), H Work, LLC (4516), RGN-Columbus IV, LLC, RGN-Chapel Hill II, LLC, RGN-Chicago XVI, LLC, and RGN-Fort Lauderdale III, LLC. The aforementioned Debtors that do not include a FEIN are disregarded entities for tax purposes and do not have FEINs. The mailing address for the Debtors is 3000 Kellway Drive, Suite 140, Carrollton, Texas 75006 (Attn: James S. Feltman, Responsible Officer).. The Debtors' principal place of business is 433 Plaza Real, Suite 335, Boca Raton, FL 33432.

[2] Capitalized terms not otherwise defined the Objection shall have the same meaning set forth in the Motion.

fundamental tenet of bankruptcy law, however, that the automatic stay only applies to debtors and does not prevent creditors from enforcing their rights against third parties. *See generally* 11 U.S.C. § 362(a); *In re DESA Holdings Corp.*, 353 B.R. 419, 425 (Bankr. D. Del. 2006); *see also In re Uni-Marts, LLC*, 399 B.R. 400, 415 (Bankr. D. Del. 2009) ("In general, only the debtor is afforded the protections of the automatic stay under section 362; conversely, third-parties do not receive the protection of the automatic stay."). Thus, for example, "it is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the debtor." *Uni-Marts, LLC, at 415* (*citing McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 509–10 (3rd Cir. 1997)).

2.      In the Motion, the Debtors ask this Court to disregard this fundamental tenet of bankruptcy law. First, the Debtors assert that the automatic stay in their cases enjoins any effort by the Landlords from terminating their respective leases against the Non-Debtor Tenants or from recovering possession of the premises because one of the Debtors, RGN-Group Holdings, LLC ("<u>Holdings</u>"), allegedly has a "possessory property interest in [the non-debtor] lease premises where the Centers are operated due to the FF&E therein." Motion at ¶ 24. Stated differently, the Debtors argue that because Holdings allegedly owns and leases personal property, through Equipment Lease Agreements, to the Non-Debtor Tenants at multiple leased locations, Holdings somehow has an occupancy interest in such real property (i.e., the leasehold estates) that is protected by the automatic stay, even though they admit they are not parties to any of the underlying leases. It is well-established, however, that property rights in bankruptcy cases are created and defined by applicable state law (*see Butner v. U.S.*, 440 U.S. 48, 54–55 (1979)) and the Debtors have failed to cite any state law authority whatsoever for this novel and sweeping proposition. The reason for the Debtors' failure is simple: there is no such authority. Indeed, the Debtors' argument would do violence to property rights under state law and grant third parties outside the landlord/tenant relationship automatic interests in real property leases. Given that state

law does not grant the Debtors any possessory interest in the Landlords' respective leasehold estates, the Debtors' automatic stay argument necessarily fails as a matter of law.

3. The Debtors next resort to the argument that because their revenue may be negatively impacted if one or more of the Landlords enforce their non-residential real property leases against the Non-Debtor Tenants, such action could "rise to the level of a violation of the automatic stay." Motion at ¶ 25. This argument also fails. The Debtors admit that the Non-Debtor Tenants are for the most part all SPE's formed by the Debtors. The Debtors created these SPE's and benefitted from the separateness of these entities under corporate law. Having assumed the benefit of such separateness under corporate law, the Debtors cannot now escape it now and argue that the potential impact of a loss of revenue from a lease termination implicates the automatic stay. *See, e.g., Kreisler v. Goldberg*, 478 F.3d 209 (4th Cir. 2007)(lease ejection action against non-debtor subsidiary which might affect value of the debtor not subject to automatic stay because debtor chose to set up separate subsidiary and automatic stay does not apply to non-debtors).

4. Debtors also exaggerate the timing and effect of so-called "lock-outs" to the Non-Debtor Tenants and the imposition of landlord liens on personal property owned by Holdings. *See, e.g.*, Motion at ¶¶ 16-17. In a series of sweeping "cocktail party"-level generalizations, without any reference to applicable state law, Debtors imply that landlord liens could be imposed on the personal property of a non-tenant third party and that terminations of the leases of Non-Debtor Tenants "would result in the Landlord coming into possession of the FF&E owned by Holdings." Motion at ¶ 16. The treatment of third party personal property in leased premises following recovery of possession of leased premises by a landlord is a routine matter of state law. Holdings' ownership of the FF&E, like that of any equipment or furniture lessor, does not change and, as a Chapter 11 debtor, such interest remains protected by the automatic stay. There is no need, and certainly no legitimate justification is offered, for an additional layer of protection through the proposed Notice Procedures.

5.       Finally, the Debtors resort to section 105 of the Bankruptcy Code and, without having filed a formal adversary proceeding as required under Bankruptcy Rule 7001, argue that the Court can grant a nationwide mandatory injunction against the third party Landlords because, absent granting a mandatory injunction in the form of notice procedures, the "Debtors would potentially need to take broader, pre-emptive action to protect Holding's interest in the FF&E."[3] As recognized by the courts in Delaware, however, bankruptcy courts are careful to reserve the power to extend the automatic stay to third parties only in situations which are the most extreme and involve unusual circumstances. *McCartney v. Integra National Bank North*, 106 F.3d 506, 510 (3rd Cir. 1997). Here, there is nothing extreme or unusual about a landlord terminating a lease where a third party may own property that was abandoned by the non-debtor tenant. The debtor's interest in such abandoned property is already protected by the automatic stay and the landlords would already be required to seek relief from the automatic stay to exercise their state rights and remedies to dispose of such abandoned property. Given that the automatic stay already protects the Debtors' interest in the FF&E from the Landlords seeking to dispose of such property, there are no extreme and unusual circumstances that justifies issuing an injunction here. Rather, the Debtors are obviously attempting to extend the benefit of the automatic stay for the Non-Debtor Tenants without having the burden of having them filing for bankruptcy. Equity does not allow such a result.

## JURISDICTION

6.       Although couched as a motion under sections 105 and 362 of the Bankruptcy Code, the Debtors' request for a mandatory statewide injunction was required to have been filed as an

---

[3] The Debtors acknowledge that they are asking for an extraordinary nationwide injunction. Such injunctive requests ordinarily require an adversary proceeding under Bankruptcy Rule 7001(7) and compliance with the injunction standards of section Bankruptcy Rule 7065. *In re Conxus Communications, Inc.*, 262 B.R. 893, 899 (D. Del. 2001). The Debtors do not explain why they believe that they can shortcut the rules and procedures established by law. Particularly given the request for a nationwide injunction, the Landlord's assert that the Motion must be denied since the Debtors' failed to comply with Bankruptcy Rule 7001.

adversary proceeding under Bankruptcy Rule 7001. In the event the Court nonetheless decides to consider the Debtors' procedurally improper Motion, then, pursuant to Bankrutpcy Rule 7012(b) and Local Bankruptcy Rule 7012-1, the Landlords state that that the Debtors' proceeding is a non-core proceeding and the Landlords do not consent to the entry of final orders or judgment by the bankruptcy court.

## BACKGROUND

7.    Landlords are the owners, affiliates, or managing agents of the owners of office buildings located in throughout the United States. The Debtors are direct or indirect subsidiaries of Regus Corporation ("Regus"). Regus and its affiliates operate a network of on-demand office and co-working spaces and ancillary services each defined as a Center in the Motion. According to the Debtors, they operate 570 Centers in the United States.

8.    The Non-Debtor Tenants (defined as Lease Holders in the Motion) have entered into one or more non-residential real property leases (the "Real Property Leases") with the Landlords for occupancy in office space owned by the respective Landlords (collectively referred to the "Premises"). As admitted by the Debtors in the Motion, the Non-Debtor Tenants are typically special purpose entities (SPE's) that were set up by Regus for the specific purpose of being a tenant under one or more of the Non-Debtor Tenants' Real Property Leases. Not a single one of the Debtors is a tenant under any of the Landlord's respective Real Property Leases. A list of the applicable Landlords and the locations of each of the Real Property Leases is attached hereto as Exhibit "A".

9.    In the Motion, the Debtors' contend that the FF&E located in each of the Centers is owned by Holdings, one of the Debtors, and is leased by Holdings to the applicable Non-Debtor Tenant at a Center in connection with the operation of the applicable Center. The Debtors do not contend in the Motion that they have any form of direct occupancy agreement, other form of access agreement with the applicable Landlords or, indeed, any contractual privity with Landlords.

10. The Debtors each filed voluntary petitions under chapter 11 of the Bankruptcy Code on various dates commencing on July 30, 2020. The Debtors contend that they are each a "small business debtor" as defined in section 101(51D).[4] The Debtors remain in possession of their properties and continue to manage their businesses as debtors-in-possession pursuant to sections 1182(2) and 1184 of the Bankruptcy Code.

11. On July 31, 2020, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed Natasha Songonuga to serve as the trustee under section 1183(a) of the Bankruptcy Code for Columbus IV. The U.S. Trustee subsequently appointed Ms. Songonuga as Subchapter V Trustee for Chapel Hill and Chicago XVI on August 10, 2020, and for Fort Lauderdale III on August 13, 2020.

12. On August 17, 2020, the Debtors filed their Motion with the Court (Docket No. 7). At the first day hearings in the Debtors' cases, the Court set the interim hearing on the Motion for August 25, 2020, at 2:00 p.m.

**OBJECTION**

I. **THE AUTOMATIC STAY DOES NOT APPLY TO ANY EFFORT BY THE LANDLORDS TO TERMINATE THEIR LEASES WITH THE NON-DEBTOR TENANTS OR TO RECOVER POSSESSION OF THE APPLICABLE PREMISES**

13. "It is a tenet of bankruptcy law that the automatic stay provisions of § 362 of the Bankruptcy Code apply only to debtors and do not prevent litigation from proceeding against non-debtors." *DESA Holdings*, at 425 (Bankr. D. Del. 2006); *see also Uni-Marts, LLC*, at 415 ("In general, only the debtor is afforded the protections of the automatic stay under section 362; conversely, third-parties do not receive the protection of the automatic stay."). "As a consequence,

---

[4] The Debtors' assertion that they are each small business debtors is not relevant to the Motion and Landlords reserve all objections to this assertion. However, the Landlords are particularly surprised by this assertion as to Holdings given that Holdings admits that it has $400 million in prepetition secured debt to Regus.

it is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the debtor." *Uni-Marts, LLC, at 415* (Bank. D. Del. 2009) (*citing McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 509–10 (3rd Cir. 1997)). Indeed, it is "black letter bankruptcy principle that § 362(a) does not create a general, automatic stay of a creditor's right to assert claims against non-debtor parties who are related to the debtor in some fashion." *In re Irwin*, 457 B.R. 413, 418 (Bankr. E.D. Pa. 2011).

14. Notwithstanding this basic tenant of bankruptcy law, the Debtors argue that the automatic stay bars the Landlords from exercising their state law rights under their respective Leases against the Non-Debtors Tenants because of two primary arguments: (i) Holdings' ownership of the FF&E which is in the possession of the Non-Debtor Tenants somehow gives the Debtors a possessory interest in the respective Premises that is subject to the automatic stay; and (ii) the termination of any of the Real Property Leases might negatively impact the Debtors' revenue stream thereby implicating the automatic stay. Both of the Debtors' arguments fail as a matter of law.

> 1. **The Debtors Failure to Cite Any State Law That Grants an Owner of Equipment a Possessory Interest in a Leasehold If the Equipment is Stored On the Leasehold Premises Mandates that the Motion be Denied**

15. The Debtors' primary argument to support extension of the automatic stay to the Non-Debtor Tenants is that Holdings owns the FF&E which is located in the various Premises. Thus, according to the Debtors, because the Non-Debtors Tenants have possession of Holdings' FF&E, the Debtors allegedly have a "possessory property interest in [the non-debtor] lease premises where the Centers are operated due to the FF&E therein" which is protected by the automatic stay in their cases. Motion at ¶ 24. Simply stated, the Debtors are asserting that a third

party which owns personal property located on a leasehold estate automatically has a possessory interest in such leasehold estate which is protected by the automatic stay.  Not surprisingly, the Debtors fail to cite any state law authority for this novel argument.  Such failure is fatal to their Motion.

16. Property rights in bankruptcy are created and defined by applicable state law. *Butner v. U.S.*, supra, 440 U.S. at 54–55.  Under state law, a leasehold estate generally gives the tenant the exclusive possession or occupancy of the premises against the whole world. *See, e.g., Avalon Pacific-Santa Ana, L.P. v. HD Supply Repair & Remodel, LLC*, 192 Cal. App.4th 1183, 1190 (Cal. App. 2011); *Munns v. State*, 412 S.W.3d 95, 99 (Tex. App. 2013); *Storer Cable T.V. of Florida, Inc. v. Summerwinds Apt. Assoc. Ltd. et al.*, 493 So.2d 417, 421 (Fla. 1986).  Moreover, state courts have determined that in order to have possession of real property, the party must exercise dominion and control over such property.  *See, e.g., Alex & Gregory, Inc. v. Nick La Vista's Glen Cove Service Station, Inc.*, 124 Misc. 2d 257 (N.Y. 1984).  Given this black letter law, a third party to a leasehold has no rights of possession under state law merely because it may have an interest in personal property in possession of the tenant.

17. This precept was illustrated by the court in *Alex*.  There, third party creditors of the tenant conducted a sheriff sale of personal property located in the tenant's premises.  Because these creditors conducted a sale of the personal property on the premises, the landlord argued that the property was occupied by someone other than the tenant which then allowed the landlord to lockout the tenant under New York State law.  The *Alex* court rejected the argument and found that "'[t]o occupy' means to 'to take and hold possession of' or 'have possession and use' [citations omitted] and an 'occupant' is one who holds possession and exercises dominion." *Id.* at 259 [citations omitted].  Thus, according to the *Alex* court, the exercise of control over personal property in a leasehold premises itself does not create any occupancy rights in the premises under New York law.

18. Given that a lease generally creates occupancy rights exclusive to the tenant and the exercise of control over personal property in the leasehold premises itself does not create occupancy rights under state law, the Debtors' argument necessarily fails. The Debtors' have no interest in the leasehold or possessory right in the real property (i.e., the Premises) that is protected by the automatic stay and Landlords are presently not restrained by the automatic stay from enforcing their rights under their respective Leases against the Non-Debtor Tenants.

19. Even though state law does not grant the Debtors any occupancy rights in the Premises triggering the automatic stay, the Debtors' nonetheless argue that the Third Circuit's ruling in *Atlantic Business and Community Corporation*, 901 F.2d 325, 328 (3rd Cir. 1990), supports extending the automatic stay here. However, *Atlantic Business* is easily distinguished and is inapplicable to the facts. In *Atlantic Business*, the debtor was considered a tenant at sufferance because it had entered into possession of certain premises and equipment with the owner's permission but without any written documentation supporting the debtor's use of such property. *Id*. at 326. The Third Circuit found that although the debtor was a tenant at sufferance, its possessory interest in the real property was nonetheless protected by the automatic stay.

20. Unlike the debtor in *Atlantic Business*, however, here Holdings never had a possessory interest in the Premises protected by the automatic stay. In fact, the court in *In re Hart*, 530 B.R. 293 (Bank. E.D. Penn. 2015), rejected the very same argument made by the Debtors here. In *Hart*, a secured creditor foreclosed on certain real property owned by a limited liability company that was solely owned by the debtor. The debtor, citing *Atlantic Business*, argued that the stay was violated because she had a possessory interest in the real property a result of her receipt of rental payments under the real property leases, her payment of taxes, and the fact that she took responsibility to pay expenses for the real property. *Id*. at 306. The *Hart* court rejected the argument because unlike *Atlantic Business* "the Debtor *never* had possession of the LLC Real

Property." *Id.* Just like *Hart*, here Holdings is not a party to the Real Property Leases and has no rights of possession in the Premises. Thus, *Atlantic Business* has no application to the facts here.

21. What Holdings does have is both the protection of the automatic stay (11 U.S.C. § 362(a)) with respect to the disposition of any personal property and rights to receive notice under applicable state law to reclaim its personal property left in the Centers following the recovery of possession. The Debtors' Motion wholly fails to describe why and how these existing remedies are inadequate.

22. Debtors exaggerate the impact and scope of potential landlord liens as they relate to the FF&E owned by Holdings. Many states, particularly California, do not have statutory landlord liens. In those states that provide for a statutory landlord lien to secure the payment of rent, such liens are <u>limited to the property of the tenant</u>, and do not include the property of non-tenant parties, such as Holdings here. *See, e.g.*, Arizona Rev. Statutes §33-361(D) (once a tenant's rent is past due, a landlord may "have a lien on and may seize as much *personal property of the tenant* located on the premises …"); Florida Stat. ch. 83.08(2) (Under a non-agricultural lease, a landlord's lien for unpaid rent is upon the "*property of the lessee or his or her sublessee or assigns*, usually kept on the premises."); 735 Illinois Compiled Statutes 5/9-301 ("In all cases of distress for rent, the landlord, by himself or herself, his or her agent or attorney, may seize for rent any personal property of his or her tenant that may be found in the county where such tenant resides, *and in no case shall the property of any other person*, although the same may be found on the premises …"); Texas Property Code §54.021 ("A person who leases or rents all or part of a building for nonresidential use has a preference lien on the *property of the tenant or subtenant* in the building for rent that is due and for rent that is to become due …") (Emphasis added).

23. Holdings is neither a tenant or subtenant at the Centers and, indeed, is just like an equipment lessor that has its personal property located in premises leased by a tenant. Debtors'

perceived risk of the imposition of landlord liens against FF&E owned by Holdings (Motion at ¶ 16) is not consistent with applicable state law and does not justify the extraordinary relief sought.

24. Debtors similarly exaggerate the threat of the exercise of "lock out" remedies by which Landlords would recover possession of a Center containing FF&E owned by Holdings. Motion at ¶ 15. Contrary to the suggestion of the Motion, very few states permit "lock outs" of commercial tenants without resort to legal process (e.g., Arizona, Nevada and Texas) and, even in those states, such landlord self-help remedy can be "bargained away" by the terms of the lease. In virtually all states, following a tenant default, the landlord must resort to unlawful detainer, forcible detainer or other eviction remedy through a defined statutory process. Debtors' Motion makes no reference to applicable state law and why the default notice period afforded to the Non-Debtor Tenants by statute or contract is insufficient for Holdings to protect its interest in owned FF&E.

25. Assuming landlords recover possession from a defaulting Non-Debtor Tenant under applicable state law, Landlords would then have to obtain relief from stay to pursue state law remedies with respect to the FF&E owned by Holdings (generally a three to four week process), Landlords would then have to provide notice to Holdings regarding the disposition of FF&E remaining in the Centers under applicable state law.

26. By way of example, a commercial landlord in California may only dispose of the personal property as "abandoned property" in accordance with a rigid statutory framework in the California Civil Code. *See* Cal. Civil Code § 1993 *et seq.* Some of the more burdensome requirements under the California Civil Code include the requirement that: (i) the landlord store the personal property in a safe place, (ii) the landlord must provide the tenant and any other party with a possible ownership interest in the property (such as Holdings, here) with specific written notice required, and (iii) if personal property remains unclaimed following a minimum of 15 days' notice, the landlord may only dispose of personal property over a specified value through a public auction process. Florida has a similar procedure by which Holdings would receive a minimum of

ten days' notice. Florida Stat. ch. 715.101 *et seq*. Indeed, again using California as an example, if this Court approved the notice period sought by Debtors (described as 10 business days in paragraph 19 of the Motion and 15 business days in the accompanying proposed order) would be in addition to the time required for a Landlord to obtain relief from stay and, depending on the method of service employed, an additional 15-18 days for service of a notice of right to reclaim abandoned property (Cal Civ. Code §1993.03(b)) – as much as nine weeks or more! Debtors' Motion makes no reference to the statutory notice periods under applicable state law with respect to the possible disposition of Holdings' personal property and fails to explain why the protections of these state law notice procedures, which would only follow relief from stay, are inadequate to protect its interests.

## 2. The Fact That Termination of The Leases May Impact the Debtors' Revenue Does Not Implicate the Automatic Stay

27. Likely recognizing the weakness of their *Atlantic Business* arguments, the Debtors then resort to the argument that because their revenue may be negatively impacted if one or more of the Landlords' enforce their non-residential Real Property Leases against the Non-Debtor Tenants, this "indirect effect" *could* "rise to the level of a violation of the automatic stay." Motion at ¶ 24. This argument also fails.

28. Yet another maxim of bankruptcy law is that the automatic stay does not apply to the assets of a debtor's non-debtor subsidiaries, even if such subsidiaries are wholly owned. *See, e.g., Kreisler*, at 214 (automatic stay does not apply to assets of debtor's subsidiaries); *In re Calhoun*, 312 B.R. 380, 384 (Bankr. N.D. Iowa 2004) (same); *In re HSM Kennewick*, L.P., 347 B.R. 569, 571 (Bankr. N.D. Tex. 2006); *In re Brittain*, 435 B.R. 318, 321–22 (Bankr. D.S.C. 2010); *Murray v. Mares (In re Murray)*, 147 B.R. 688, 690 (Bankr. E.D. Va.1992). The Debtors admit that the Non-Debtor Tenants are for the most part all SPE's formed by the Debtors. The Debtors

created these SPE's and benefitted from the separateness of these entities under corporate law. Having assumed the benefit of such separateness under corporate law, the Debtors cannot now escape it and argue that the potential impact of a loss of revenue from a lease termination implicates the automatic stay. Any act by the Landlords against the Non-Debtor Tenants to terminate one of the Real Property Leases is not an action against property of the Debtors since they have no interest in such leases. Thus, the automatic stay simply does not apply irrespective of its claimed "indirect" impacts on the Debtors' revenue.

29.     The Fourth Circuit addressed and rejected this precise argument in *Kreisler*. There, a the debtor's wholly owned subsidiary was a party to a ground lease. Following the debtor's bankruptcy filing, the ground lessor initiated an action against the debtor's subsidiary for ejectment. The debtor filed a motion for violation of the automatic stay arguing that the ground lease was property of the debtor's bankruptcy estate or that the automatic stay should apply because it would affect the value of its interest in the subsidiary. The Fourth Circuit readily rejected both arguments. First, the Fourth Circuit stated that because the debtor set up its subsidiary to hold title to the ground lease it could not argue that ground lease was protected by the automatic stay in its case. The Fourth Circuit stated: "Having assumed whatever benefits flowed from that decision, it cannot now ignore the existence of the LLC in order to escape its disadvantages." *Id.* at 214. Second, as for the impact on value argument, the Fourth Circuit stated that the automatic stay is not implicated if enforcement by a third party against a non-debtor subsidiary will only affect a loss of value.

30.     The Fourth Circuit's ruling is dispositive of the Debtors' argument. The fact that the Debtors' revenue may be impacted is irrelevant to whether the stay applies to real property leased by the Non-Debtor Tenants. The Debtors chose to isolate all their leases in the SPE Non-Debtor Tenants. They cannot now seek to avoid this structure by arguing that the stay applies to their non-debtor affiliates.

## II. The Automatic Stay Cannot Be Extended Here Because No Extreme Or Unusual Circumstances Exist

31. As set forth above, the automatic stay does not apply to any action by the Landlords to terminate the Leases or recover possession of the Premises against the Non-Debtor Tenants. Given the automatic stay does not apply, the Debtors must seek to extend the automatic stay under sections 105 and 362 of the Bankruptcy Code. Such relief, however, should be denied here because no "exceptional" and "unusual circumstances" exist justifying extending the automatic stay.

32. Bankruptcy courts may extend the automatic stay to non-debtor third-parties if "unusual circumstances" are present. *See Uni-Marts, LLC*, at 416. Bankruptcy courts are careful, however, to reserve the power to extend the automatic stay to third parties only in situations which are the most extreme and involve unusable circumstances. *McCartney v. Integra National Bank North*, 106 F.3d 506, 510 (3rd Cir. 1997). As for what fact patterns constitutes such an extreme or unusual situation, the Fourth Circuit explained:

> [t]his "unusual situation," it would seem, arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.

*A. H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986).

33. Here, there is nothing extreme or unusual about a landlord terminating a lease where a third party may own personal property that is located in the premises. Office premises, restaurants, manufacturing facilities and other commercial tenancies routinely contain leased equipment. Just as where the tenant is a debtor in bankruptcy, the termination of the lease has no effect on the personal property owned by third parties. Here, Holdings' interest in any FF&E in the Premises leased by the Non-Debtor Tenants is already protected by the automatic stay and the applicable Landlord would already be required to seek relief from the automatic stay to exercise its state law rights and remedies to dispose of such abandoned property. Given that the automatic

stay already protects the Debtors' interest in the FF&E from the Landlord's seeking to dispose of such property if one of the Real Property Leases is terminated, and Holdings would then be subject to ordinary state law procedures, there are no extreme and unusual circumstance that justifies issuing an injunction here.  Rather, the Debtors are obviously attempting to get the benefit of the automatic stay for the Non-Debtor Tenants, potentially protecting them from their own lease defaults, without having the burden of having those entities filing for bankruptcy.  Such relief is improper.

## RESERVATION OF RIGHTS

34. Landlords reserves their rights to further object to the Motion based upon any new information provided by Debtors or upon any different relief requested by Debtors.

## JOINDER

35. To the extent not inconsistent with the foregoing, Landlords joins in the objections to the Motion filed by Debtors' other landlords.

**WHEREFORE**, Landlords requests that the Court deny approval of the Motion and grant such other and further relief as is just and proper.

Dated:  August 24, 2020

Michael S. Greger, Esq. (*pro hac vice pending*)
Ivan M. Gold, Esq. (*pro hac vice pending*)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111-4074
(415) 837-1515
mgreger@allenmatkins.com
igold@allenmatkins.com

- and -

/s/ Karen C. Bifferato
Karen C. Bifferato (#3279)
Connolly Gallagher LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
Telephone: (302) 888-6221
Facsimile: (302) 757-7299
Email: kbifferato@connollygallagher.com

Attorneys for the Landlords identified on Exhibit "A"