## **Exhibit I**

Revised Proposed Interim Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RGN-GROUP HOLDINGS, LLC, a Delaware limited liability company, *et al.*[1] | Case No. 20-11961 (BLS) (Jointly Administered) |
| Debtors. | **Re: D.I. 75** |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL, (III) GRANTING ADEQUATE PROTECTION, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of the above referenced debtors and debtors in possession (collectively, the "Debtors") in the above-referenced chapter 11 cases (the "Chapter 11 Cases"), for entry of an interim order (this "Interim Order") and a final order ("Final Order"), pursuant to sections 105, 361, 362, 363, 364 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking, *inter alia*:

> (i)     authorization for the Debtors to obtain up to $17,500,000 in aggregate principal amount of postpetition financing (the "DIP Facility"), and to access up to $7,500,000 in the aggregate in the interim and pending a final hearing, all on the terms and conditions set forth in this Interim Order and that certain DIP Facility Term Sheet (the "DIP Term Sheet," substantially in the form attached hereto as Exhibit A and together with this Interim Order and the DIP

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's Federal Employer Identification Numbers ("FEIN"), where applicable are as follows: RGN-Group Holdings, LLC, RGN-National Business Centers, LLC (7723), H Work, LLC (4516), RGN-Columbus IV, LLC, RGN-Chapel Hill II, LLC, RGN-Chicago XVI, LLC, and RGN-Fort Lauderdale III, LLC. The aforementioned Debtors that do not include a FEIN are disregarded entities for tax purposes and do not have FEINs. The mailing address for the Debtors is 3000 Kellway Drive, Suite 140, Carrollton, Texas 75006 (Attn: James S. Feltman, Responsible Officer).

Budget (defined below) as the same may be amended, restated or supplemented from time to time, collectively, the "DIP Loan Documents"),[2] by and among the Debtors and Regus Corporation ("Regus," in such capacity, the "DIP Lender");

(ii)     authorization for each Debtor to grant security interests, liens, and superpriority claims to the DIP Lender to secure all obligations of the Debtors under and with respect to the DIP Facility (collectively, the "DIP Obligations"), including, subject to entry of the Final Order, on the proceeds and property recovered in respect of such Debtor's claims and causes of action (but not on the actual claims and causes of action) arising under Chapter 5 of the Bankruptcy Code or any other similar state or federal law (collectively, the "Avoidance Action Proceeds");

(iii)    authorization for each Debtor, pursuant to sections 105, 361, 362, 363 and 507 of the Bankruptcy Code, to use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"), and all other Prepetition Collateral (defined below), in accordance with the terms of this Interim Order and the DIP Budget, as provided herein;

(iv)     to provide Adequate Protection (defined below) of the liens and security interests (such liens and security interests, the "Prepetition Liens") of Regus, as prepetition lender (in such capacity, the "Prepetition Secured Party") under that certain Senior Loan and Security Agreement, dated as of August 1, 2013 (as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition Credit Agreement", along with any other agreements, instruments, notes, guaranties and other documents related thereto, including without limitation each of the Joinder Agreements to the Prepetition Credit Agreement executed by each of the Debtors (each, a "Joinder Agreement"), are referred to herein collectively, the "Prepetition Financing Documents")), by and among the applicable Debtor and the Prepetition Secured Party, which Prepetition Liens are being consensually primed by the DIP Facility, as more fully set forth in this Interim Order;

(v)      authorization to include as a borrowing under the DIP Facility the amount of any Cash Collateral used or unsecured credit granted to Debtor RGN-Columbus IV, LLC ("Columbus-IV") pursuant to the *Stipulation (I) Authorizing Use of Cash Collateral and Providing Adequate Protection and (II) Confirming Administrative Expense Status for Further Advances* [Docket No. 12] (the "Stipulation"), by and between the Prepetition Secured Party and Columbus IV, LLC, attached hereto as Exhibit B;

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to those terms in the DIP Loan Documents.

(vi)     modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order and the Final Order;

(vii)    waiver of any applicable stay with respect to the effectiveness and enforceability of the Interim Order or the Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h)); and

(viii)   related relief.

and an interim hearing having been held by this Court on August 31, 2020 (the "Interim Hearing"); and pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, due and sufficient notice of the Motion and the relief sought at the Interim Hearing having been given under the particular circumstances by the Debtors; this Court having considered the Motion and all pleadings related thereto, including the record made by the Debtors at the Interim Hearing; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS AS FOLLOWS:**

A.     Between July 30, 2020 and August 17, 2020 and (as to the applicable Debtor, the "Petition Date"), each applicable Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.     On July 31, 2020, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed Natasha Songonuga to serve as the trustee under section 1183(a) of the Bankruptcy Code (the "Subchapter V Trustee") for Columbus IV. The U.S. Trustee subsequently appointed Ms. Songonuga as the Subchapter V Trustee for RGN-Chapel Hill II, LLC and RGN-Chicago XVI, LLC on August 10, 2020, and for RGN-Fort Lauderdale III, LLC on August 13, 2020. The U.S. Trustee subsequently appointed Ms.

ACTIVE.124903568.04

Songonuga as the Subchapter V Trustee for RGN-Group Holdings, LLC, RGN-National Business Centers, LLC, and H Work, LLC (collectively, the "Guarantor Debtors") on August 21, 2020.

C.    No duly appointed, statutory committee of unsecured creditors ("Committee"), as provided for under section 1102 of the Bankruptcy Code, has been appointed in the Chapter 11 Cases.

D.    Subject to Paragraph 15 below, without prejudice to the rights, if any, of any other party, the Debtors admit, stipulate and agree that:

(1)    All Prepetition Financing Documents are valid and enforceable by the Prepetition Secured Party against each of the applicable Debtors.

(2)    As of the Petition Date, each of the Debtors was indebted and liable, without defense, counterclaim or offset of any kind, to the Prepetition Secured Party under the Prepetition Financing Documents, severally, but not jointly, in the principal amounts of not less than those set forth on Schedule 1 attached hereto, plus, in each case, all accrued or hereafter accruing and unpaid interest thereon and any additional amounts, charges, fees and expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable or reimbursable under the Prepetition Financing Documents as to such Debtor) now or hereafter due under the Prepetition Financing Documents (all obligations of each Debtor arising under the Prepetition Credit Agreement or any other Prepetition Financing Documents, including all loans, advances, debts, liabilities, principal, interest, fees, charges, expenses and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Prepetition Secured Party by such Debtor, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, shall be referred to herein

collectively as the "Prepetition Secured Obligations"), which Prepetition Secured Obligations are legal, valid, and binding obligations of each applicable Debtor and no portion of which is subject to avoidance, disallowance, reduction, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(3)    Pursuant to the Prepetition Financing Documents, as of the Petition Date, each Debtor granted to the Prepetition Secured Party, to secure such Debtor's Prepetition Secured Obligations, a valid, duly authorized, non-voidable, binding, perfected, first-priority security interest in all of the Collateral (as defined in the Prepetition Credit Agreement and referred to in this Interim Order as the "Prepetition Collateral").

(4)    The Debtors have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against the Prepetition Secured Party with respect to the Prepetition Financing Documents, whether arising at law, in contract or at equity, including any recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510 or 542 through 553, inclusive, of the Bankruptcy Code.

(5)    Subject to the entry of the Final Order, the Debtors do not have, and hereby forever release and waive, any claims, objections, challenges, counterclaims, causes of action, defenses, setoff rights, obligations, rights to subordination or any other liabilities, whether arising under the Bankruptcy Code or applicable non-bankruptcy law, against the Prepetition Secured Party, or any of its agents, attorneys, advisors, professionals, officers, directors, and employees from the beginning of time through the Petition Date.

E.    The Debtors have an immediate and critical need to obtain postpetition financing under the DIP Facility and to use Cash Collateral to, among other things, pay the costs and expenses associated with administering the Chapter 11 Cases, continue the orderly operation of

ACTIVE.124903568.04

the Debtors' business, maximize and preserve the Debtors' going concern value, make lease and other contractual payments and satisfy other working capital and general corporate purposes, make capital expenditures as needed in the ordinary course of business to maximize the value of the Debtor's centers, in each case, in accordance with the DIP Budget, and to provide Adequate Protection. Without access to the DIP Facility and the continued use of Cash Collateral to the extent authorized pursuant to this Interim Order, the Debtors and their estates would suffer immediate and irreparable harm. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without access to the DIP Facility and the authorized use of Cash Collateral.

F.      In light of the Debtors' facts and circumstances, the Debtors would be unable to obtain (i) adequate unsecured credit allowable either (a) under sections 364(b) and 503(b)(1) of the Bankruptcy Code, or (b) under section 364(c)(1) of the Bankruptcy Code, (ii) adequate credit secured by (x) a senior lien on unencumbered assets of their estates under section 364(c)(2) of the Bankruptcy Code, and (y) a junior lien on encumbered assets under section 364(c)(3) of the Bankruptcy Code, or (iii) secured credit under section 364(d)(1) of the Bankruptcy Code from sources other than the DIP Lender on terms more favorable than the terms of the DIP Facility. The only viable source of secured credit available to the Debtors, other than the use of Cash Collateral, is the DIP Facility. The Debtors require both additional financing under the DIP Facility and the continued use of Cash Collateral under the terms of this Interim Order to satisfy their postpetition liquidity needs.

G.      The DIP Lender has indicated a willingness to provide the Debtors with certain financing commitments, but solely on the terms and conditions set forth in this Interim Order and

ACTIVE.124903568.04

in the DIP Loan Documents.  Accordingly, after considering all of their practical alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the financing to be provided by the DIP Lender pursuant to the terms of this Interim Order and the DIP Loan Documents represents the best financing currently available to the Debtors.

H.      The consent of the Prepetition Secured Party to the priming of its liens by the DIP Liens (defined below), the Carve-Out (defined below) and use of the Prepetition Collateral, including Cash Collateral, by the Debtors, is limited to this Interim Order and the DIP Facility presently before this Court and shall not extend to any other postpetition financing or to any modified version of this DIP Facility with any party other than the DIP Lender.  Furthermore, the consent of the Prepetition Secured Party to the priming of its liens by the DIP Liens, the Carve-Out and use of the Prepetition Collateral, including Cash Collateral, by the Debtors does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition Secured Party that its interests in the Prepetition Collateral are adequately protected pursuant to this Interim Order or otherwise, provided, however, the Prepetition Secured Party agrees that the Adequate Protection granted to the Prepetition Secured Party in this Interim Order is reasonable and calculated to protect the interests of the Prepetition Secured Party, subject to the rights of the Prepetition Secured Party to seek a modification of such Adequate Protection, as set forth below.

I.      The security interests and liens granted pursuant to this Interim Order to the DIP Lender are appropriate under section 364(d) of the Bankruptcy Code because the Prepetition Secured Party is the only known holder of a valid, perfected, prepetition security interest or lien in the property of the Debtors' estates, and the Prepetition Secured Party has consented to the security interests and priming liens granted pursuant to this Interim Order to the DIP Lender.

ACTIVE.124903568.04

J.      Good cause has been shown for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local Rule 4001-2(b).   In particular, the authorization granted herein for the Debtors to execute the DIP Loan Documents, to continue using the Prepetition Collateral, including Cash Collateral, and to obtain interim financing, including on a priming lien basis, is necessary to avoid immediate and irreparable harm to the Debtors and their estates.  Entry of this Interim Order is in the best interest of the Debtors, their estates and creditors.  The terms of the DIP Loan Documents (including the Debtors' continued use of the Prepetition Collateral, including Cash Collateral) are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration for the Prepetition Secured Party's consent thereto.

K.      The Debtors, the DIP Lender and the Prepetition Secured Party have negotiated the terms and conditions of the DIP Loan Documents (including the Debtors' continued use of the Prepetition Collateral, including Cash Collateral), this Interim Order, and the Stipulation in good faith and at arm's length, and any credit extended and loans made to the Debtors pursuant to this Interim Order and the Stipulation shall be, and hereby are, deemed to have been extended, issued or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.  The Prepetition Secured Party is entitled to receive Adequate Protection as set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code for any diminution in the value of its interests in the Prepetition Collateral, including Cash Collateral, resulting from the automatic stay or the Debtors' use, sale or lease of the Prepetition Collateral, including Cash Collateral, during the Chapter 11 Cases.

ACTIVE.124903568.04

L.       Based on the foregoing, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**[3]

1.       <u>Jurisdiction and Venue</u>.   Consideration of the Motion constitutes a "core-proceeding" as defined in 28 U.S.C. § 157(b)(2).   This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       <u>Notice</u>.  Given the nature of the relief sought in the Motion, this Court concludes that the form, scope and timing of notice of the Motion and Interim Hearing was sufficient and adequate under the circumstances and complies with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable law, and no further notice relating to the Interim Hearing or Motion is necessary or required.

3.       <u>The DIP Budget and Reporting</u>.

(a)       Subject to and in accordance with the terms of the DIP Term Sheet, the Debtors shall from time to time as set forth below prepare and provide to the DIP Lender a cash flow forecast setting forth on a line item basis the Debtors' projected cash receipts and cash disbursements, substantially in the form of the initial budget annexed hereto <u>Exhibit C</u> (the initial budget and each subsequent budget, a "<u>DIP Budget</u>").  The Debtors may use the proceeds of the DIP Facility and Cash Collateral, for the purposes and up to the aggregate amounts set forth in the DIP Budget and subject to the terms and conditions set forth in the DIP Term Sheet and this

---

[3] Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.

ACTIVE.124903568.04

Interim Order.  Commencing September 25, 2020 and continuing on the same day every four weeks thereafter (and if such date is not a business day, the following business day), the Debtors shall provide the DIP Lender with an updated DIP Budget updating and/or extending the period covered by the DIP Budget so that it covers at least the period ending 13 weeks from the week in which the supplement is delivered.  Commencing October 2, 2020 and continuing on the same day every four weeks thereafter (and if such date is not a business day, the following business day), the Debtors shall provide the DIP Lender with variance reporting, for the cumulative four-week period ending the last business day of the week then ended, on a line item basis for cash receipts, cash operating disbursements and non-operating bankruptcy-related cash disbursements, which reporting shall (a) detail the variance, if any, of actual cash disbursements and actual cash receipts from the Budget and (b) provide an explanation of any per line item variance greater than 10.00% (the "DIP Budget Variance Report").

(b)     The DIP Budget may be amended, supplemented, extended or otherwise modified from time to time in any manner as to which Debtors and the DIP Lender mutually agree in writing without further order of this Court; provided that notice of any amendments shall be given to the Office of the United States Trustee for this District (the "U.S. Trustee") and the Chapter 5 Trustee.  The Debtors shall promptly provide any modified DIP Budget and DIP Budget Variance Report to the U.S. Trustee and the Chapter 5 Trustee; provided, however, the Debtors may take appropriate actions with respect to confidentiality of any portion of the DIP Budget and DIP Budget Variance Report.

4.     Use of Prepetition Collateral (including Cash Collateral).  Immediately upon entry of this Interim Order, each Debtor is authorized to use Cash Collateral, subject to and as set forth in the DIP Budget, this Interim Order and the DIP Loan Documents.  Each Debtor is further

ACTIVE.124903568.04

authorized to use the Prepetition Collateral (including Cash Collateral) during the period from the Petition Date through and including the Maturity Date (defined in the DIP Term Sheet) in accordance with the terms and conditions of this Interim Order.

5.    <u>Borrowing Authorization</u>.

(a)    <u>The DIP Facility</u>.  The Debtors are authorized to enter into and perform the transactions contemplated in this Interim Order and the DIP Loan Documents and such additional documents, instruments, and agreements as may be reasonably required by the DIP Lender to implement the terms or effectuate the purposes of this Interim Order, and to receive financial accommodations and borrow under the Interim DIP Facility up to $7,500,000 in the aggregate.  The DIP Loan Documents shall constitute and are hereby deemed to be the legal, valid and binding obligations of the Debtors and each of their respective estates, enforceable against each such Debtor and its respective estate in accordance with the terms hereof and the DIP Loan Documents and any successor of each such Debtor or any representative of the estates (including a trustee, responsible person, or examiner with expanded powers).

(b)    <u>Working Capital</u>.  Each Debtor is authorized to use the DIP Facility and Cash Collateral to fund working capital requirements and operating expenses of such Debtor during these Chapter 11 Cases and other line items subject to and in accordance with the terms of the DIP Budget, this Interim Order, and the DIP Loan Documents, including without limitation, capital expenditures in the ordinary course of business, management fees or expense reimbursements due by the Debtors to Regus Management Group, LLC ("<u>RGM</u>") pursuant to the management agreements by and between RGM and each Debtor as described more fully in the *Debtor's Motion for Interim and Final Orders Authorizing Continued Performance of Obligations under Intercompany Agreements and, on a Final Basis, Payment of the RMG*

*Prepetition Claim* (the "Intercompany Motion"), amounts owed by each Debtor to RGN-Group Holdings, LLC ("Holdings") pursuant to the equipment lease agreements executed by each Debtor in favor of Holdings as described more fully in the Intercompany Motion, and amounts owed by each Debtor to Franchise International GmBH ("Franchisor") pursuant to the Franchise Agreements for Operation of Regus Business Centres executed by each Borrower and Franchisor as described more fully in the Intercompany Motion.

6.      Due Authorization.  The Debtors acknowledge, represent, stipulate and agree, and this Court hereby finds and orders, that:

(a)      in entering into the DIP Loan Documents and obtaining the use of Cash Collateral, and as consideration therefor and for the other accommodations and agreements of the DIP Lender reflected herein and in the DIP Loan Documents, each Debtor hereby agrees that until such time as all of the DIP Obligations are indefeasibly paid in full in cash and the DIP Term Sheet and DIP Loan Documents are terminated in accordance with the terms thereof, such Debtor shall not in any way prime or seek to prime the DIP Obligations, the DIP Liens or the DIP Superpriority Claims (defined below) provided to the DIP Lender under this Interim Order by offering a subsequent lender or a party in interest a superior or *pari passu* lien or administrative expense pursuant to any section of the Bankruptcy Code or otherwise or acquiescing thereto;

(b)      the Debtors are jointly and severally liable for the full and prompt payment when due (whether at maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter) and performance of the DIP Obligations owed or hereafter owing to the DIP Lender, and an Event of Default (as defined in the DIP Term Sheet) as to any Debtor shall be an Event of Default as to each Debtor.  The Debtors agree that their obligations under this Interim

ACTIVE.124903568.04

Order and any DIP Loan Document shall not be discharged as to the DIP Obligations until the indefeasible payment and performance, in full in cash of the DIP Obligations, and the termination of the lending commitments under the DIP Loan Documents with regard to the Debtors; and

(c)     in no event shall the DIP Lender, whether in connection with the exercise of any rights or remedies under the DIP Facility, hereunder or otherwise, by entering into the DIP Loan Documents be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors, or otherwise cause liability to arise to the federal or state government, or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the Comprehensive Environmental Response, Compensation and Liability Act, sections 9601 et seq. of title 42, United States Code, as amended, or any similar federal or state statute).

7.     <u>Stipulation</u>.  The Stipulation is hereby superseded and replaced by this Order and the Final Order.

8.     <u>DIP Interest and Reimbursement of Expenses</u>.

(a)     The principal amount extended to Debtors under the DIP Facility shall bear interest at the applicable rate (including any applicable default rate after the occurrence of an Event of Default set forth in the DIP Loan Documents, and be due and payable in accordance with this Interim Order and the DIP Loan Documents, in each case without further notice, motion or application to, order of, or hearing before, this Court.

(b)     The DIP Lender shall be entitled to reimbursement from the Debtors for the reasonable and documented prepetition and postpetition fees and expenses of the attorneys

and advisors (each, a "DIP Lender Advisor") for the DIP Lender paid to any DIP Lender Advisor by the DIP Lender, which reimbursement obligations shall be DIP Obligations hereunder.

9.    Amendments; Joinders.

(a)    Each of the Debtors is expressly authorized and empowered to enter into any non-material amendments, supplements, extensions or other modifications from time to time in any manner as to which Debtors and the DIP Lender mutually agree in writing without further order of this Court.  Any material modification or amendment agreed to by the Debtors and the DIP Lender shall be subject to Court approval following notice of such any material modification or amendment by the Debtors to the U.S. Trustee and the Chapter 5 Trustee, which parties may object to such modification or amendment, in writing, within five (5) Business Days from the date of the transmittal of such notice by electronic mail; provided, further, that if such objection is timely provided, then such modification or amendment shall be permitted only pursuant to an order of this Court, the entry of which may be sought on an expedited basis.

(b)    Additional Debtors in any subsequently filed chapter 11 case that is jointly administered with the Chapter 11 Cases may become Borrowers under the DIP Facility subject to (i) such Debtor's execution of a joinder to the Term Sheet in form and substance acceptable to the DIP Lender in its sole discretion, (ii) submission by the new Debtor of a joinder motion (the "Joinder Motion") with a revised Budget acceptable to the Borrowers and the DIP Lender, and (iii) entry of an order by the Bankruptcy Court approving the Joinder Motion.

10.    DIP Superpriority Claims and DIP Liens.  In respect of the DIP Obligations, the DIP Lender is granted the following with respect to each Debtor, its estate and all DIP Collateral (defined below):

ACTIVE.124903568.04

(a)      a superpriority administrative expense claim pursuant to section 364(c)(1) Bankruptcy Code with priority over all other administrative expenses pursuant to the Bankruptcy Code (including the kinds specified in or arising or ordered pursuant to sections 105(a), 326, 328, 330, 331, 503(b), 507, 552(b), 726 and, to the extent an administrative expense and subject to entry of the Final Order, 506(c) and 546(c), (other than expenses of a trustee under section 726(b)) and 1114 of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment), which superpriority expenses of the DIP Lender shall be subordinate to the DIP Liens (defined below) and the Carve-Out (the "DIP Superpriority Claims"); provided that pursuant to applicable bankruptcy law, the granting of such DIP Superpriority Claims does not affect the status and superior priority of any liens, including the liens of the DIP Lender, the Prepetition Secured Party and the holder of any Permitted Prior Senior Lien.

(b)      a first priority, priming security interest in and lien pursuant to section 364(d)(1) of the Bankruptcy Code on all encumbered property of the Debtor and its estate (the "Section 364(d)(1) Liens"), which Section 364(d)(1) Liens shall be senior to any existing liens or claims, subject only to (i) the Carve-Out and (ii) liens on property of such Debtor (including the proceeds of such property) that are in existence on the Petition Date but only, if applicable,[4] (A) to the extent a lien on any property is valid, perfected, and not avoidable, (B) the lien on such property (or the proceeds of such property, as applicable) on the Petition Date is a valid, perfected and non-avoidable Permitted Lien (as defined in the Prepetition Credit Agreement) senior in priority to the prepetition liens on such property or (C) valid, non-avoidable liens that are perfected subsequent to the Petition Date as permitted by section 546(b)

---

[4]  Debtors have represented that there are no existing prior liens on the Debtors' property except the liens in favor of the Prepetition Secured Party.

of the Bankruptcy Code (the foregoing clauses (A)-(C) being referred to collectively as the "Permitted Prior Senior Liens");

(c)      a first priority security interest and lien pursuant to section 364(c)(2) of the Bankruptcy Code on all unencumbered property of the Debtor and its estate (the "Section 364(c)(2) Liens"), including, subject to entry of the Final Order, Avoidance Action Proceeds, but excluding any lease of, or leasehold or other interest in, any non-residential real property (each, an "Excluded Real Property Interest"); provided, however, that the Section 364(c)(2) Liens shall encumber any proceeds or income from or in connection with any Excluded Real Property Interest, which Section 364(c)(2) Liens shall be subject only to the Carve-Out; and

(d)      a junior security interest and lien pursuant to section 364(c)(3) of the Bankruptcy Code on all property of the Debtor and its estate that is subject to a Permitted Prior Senior Lien, if any (collectively, the "Section 364(c)(3) Liens"), which Section 364(c)(3) Liens are also subject to the Carve-Out.  The Section 364(d)(1) Liens, Section 364(c)(2) Liens, and Section 364(c)(3) Liens shall be collectively referred to as the "DIP Liens."

11.      DIP Collateral.  The DIP Liens of the DIP Lender under the DIP Loan Documents and as approved and perfected by this Interim Order include, inter alia, liens upon and security interests in (i) all of those items and types of collateral in which security interests may be created under Article 9 of the Uniform Commercial Code, (ii) to the extent not expressly prohibited by law or contract, all of those items and types of collateral not governed by Article 9 of the Uniform Commercial Code, including, without limitation, licenses issued by any federal or state regulatory authority, any leasehold or other real property interests (other than Excluded Real Property Interests), and commercial tort claims of each Debtor, (iii) any and all other collateral of any nature or form, and (iv) the products, rents, offspring, profits, and proceeds of any of the

foregoing (collectively, (i)-(iv), the "DIP Collateral"). None of the DIP Obligations, DIP Liens or DIP Superpriority Claims shall (a) be subject to or *pari passu* with any lien or security interest that is avoided and preserved for the benefit of any Debtor's estate under section 551 of the Bankruptcy Code, (b) be subject to or *pari passu* with any inter-company claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, (c) be subject to sections 510, 549, or 550 of the Bankruptcy Code or (d) hereafter be subordinated to or made *pari passu* with any other lien or security interest under sections 361, 363 or 364 of the Bankruptcy Code or otherwise, except as expressly provided in this Interim Order.

12.    Carve-Out.

(a)    Generally. The DIP Liens, the DIP Superpriority Claims, the liens of the Prepetition Secured Party, the Adequate Protection Liens (defined below), and the Section 507(b) Claims (defined below) of the Prepetition Secured Party, shall be subject to the payment, without duplication, of the following fees and expenses (the amounts set forth below, together with the limitations set forth therein, collectively, the "Carve-Out") from any of the loan proceeds of the DIP Facility, Cash Collateral or proceeds resulting from liquidation of DIP Collateral or Prepetition Collateral:

(i)    The budgeted reasonable fee and expense claims of the respective retained professionals of the Debtors and the Chapter 5 Trustee, whose retention has been approved by this Court at any time during the Chapter 11 Cases pursuant to sections 330 and 331 of the Bankruptcy Code (collectively, the "Retained Professionals") and the reasonable fees and expenses of the Chapter 5 Trustee (the "Chapter 5 Trustee Fees"), which were incurred (A) on and after the Petition Date and before the Carve-Out Trigger Date (defined below) and are set

forth in the DIP Budget, and (B) on and after the Carve-Out Trigger Date in an aggregate amount not exceeding $1,000,000.00 for all Retained Professionals and Chapter 5 Trustee Fees; <u>provided</u> that, in each case, such fees and expenses of the Retained Professionals and the Chapter 5 Trustee Fees are ultimately allowed on a final basis by this Court pursuant to sections 330 and 331 of the Bankruptcy Code or otherwise and are not excluded from the Carve-Out under Paragraph 16 of this Interim Order (nothing herein shall waive the right of any party to object to the allowance of any such fees and expenses); and

(ii)    the unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code, plus statutory interest, if any, imposed under 31 U.S.C. § 3717.  There is no limitation on the obligations of the Debtors and their estates with respect to unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code.

(b)    <u>Carve-Out Trigger Date</u>.  As used herein, the term "<u>Carve-Out Trigger Date</u>" means the date on which the DIP Lender provides written notice to the Debtors, the U.S. Trustee and the Chapter 5 Trustee that the Carve-Out is invoked, which notice may be delivered only on or after the occurrence of an Event of Default under the DIP Loan Documents or upon the Maturity Date.

(c)    <u>Reduction of Amounts</u>.  The fixed dollar amount available to be paid under the Carve-Out following the Carve-Out Trigger Date on account of allowed fees and expenses incurred on and after the Carve-Out Trigger Date shall be reduced, dollar-for-dollar, by the aggregate amount of payments made on and after the Carve-Out Trigger Date on account of fees and expenses incurred on and after the Carve-Out Trigger Date to Retained Professionals (whether from Cash Collateral, any proceeds of the DIP Facility, or otherwise).

(d)  <u>Reservation of Rights</u>.  The DIP Lender reserves its rights to object to the allowance of any fees and expenses.  The payment of any fees or expenses of the Retained Professionals and Chapter 5 Trustee Fees pursuant to the Carve-Out shall not, and shall not be deemed to (i) reduce any Debtor's obligations owed to any of the DIP Lender, the Prepetition Secured Party or to any holder of a Permitted Prior Senior Lien, or (ii) modify, alter or otherwise affect any of the liens and security interests of such parties in the DIP Collateral or Prepetition Collateral (or their respective claims against any Debtor).  The DIP Lender and Prepetition Secured Party shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Retained Professionals, Chapter 5 Trustee Fees, the U.S. Trustee or Clerk of the Bankruptcy Court (or of any other entity) incurred in connection with the Chapter 11 Cases or any successor case, and nothing in this Interim Order or otherwise shall be construed to obligate such parties in any way to pay such compensation to or to reimburse such expenses.

13.  <u>Waiver of Right to Surcharge</u>.  Subject to entry of the Final Order, in light of (i) the consent of the DIP Lender to the current payment of administrative expenses of the Debtors' estates in accordance with the DIP Budget, (ii) the agreement of the DIP Lender to subordinate its DIP Superpriority Claims to the Carve-Out, and (iii) the agreement of the DIP Lender to subordinate its DIP Liens to the Carve-Out and Permitted Prior Senior Liens, the DIP Lender and Prepetition Secured Party are each entitled to a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code and (b) any "equities of the case" claims or other claims under sections 105(a) or 552(b) of the Bankruptcy Code.  Subject to entry of the Final Order, no costs or expenses of administration or other charge, lien, assessment or claim incurred at any time (including, without limitation, any expenses set forth in the DIP Budget) by any Debtor or any other person or entity shall be imposed or charged against any or all of the DIP Collateral, the

ACTIVE.124903568.04

DIP Lender, the Prepetition Collateral, and the Prepetition Secured Party or their respective claims or recoveries under the Bankruptcy Code, including sections 105(a), 506(c), 552(b) thereof, or otherwise, and the Debtors, on behalf of their estates, waive any such rights.  It is expressly understood by all parties that in making all such undertakings and proceeding in compliance with the DIP Budget, this Interim Order and the DIP Loan Documents, the DIP Lender and Prepetition Secured Party have each relied on the foregoing provisions of this Paragraph.  Notwithstanding any approval of or consent to the DIP Budget, nothing in this Interim Order shall constitute or be deemed to constitute the consent by the DIP Lender and the Prepetition Secured Party to the imposition of any costs or expense of administration or other charge, lien, assessment or claim (including, without limitation, any amounts set forth in the DIP Budget) against such party, its claims or its collateral under sections 105(a), 506(c) or 552(b) of the Bankruptcy Code or otherwise and no such consent shall be implied from any other action or inaction by such parties.

14.    <u>Automatic Perfection</u>.

(a)    The (i) DIP Liens granted to the DIP Lender pursuant to this Interim Order and the DIP Loan Documents and (ii) Adequate Protection Liens granted pursuant to this Interim Order to the Prepetition Secured Party shall be valid, enforceable, and perfected by operation of law upon entry of this Interim Order by this Court without any further action by any party. Neither the DIP Lender in respect of the DIP Liens, nor the Prepetition Secured Party in respect of the Adequate Protection Liens, shall be required to enter into or to obtain any control agreements, landlord waivers (unless required by law or contract), mortgagee waivers, bailee waivers or warehouseman waivers or to give, file or record any UCC-1 financing statements, mortgages, deeds of trust, leasehold mortgages, notices to account debtors or other third parties,

notices of lien or similar instruments in any jurisdiction (including filings with the United States

Patent and Trademark Office, the United States Copyright Office or any similar agency in

respect of trademarks, copyrights, trade names or patents with respect to intellectual property)

(collectively, the "Perfection Documents"), or obtain consents from any licensor or similarly

situated party in interest, or take any other action to validate, record or perfect the DIP Liens

granted under the DIP Loan Documents and this Interim Order and the Adequate Protection

Liens granted under this Interim Order and approved hereby, all of which are automatically and

immediately perfected by the entry of this Interim Order.  If the DIP Lender or Prepetition

Secured Party, independently or collectively, in each of their sole discretion respectively, choose

to obtain, enter into, give, record or file any Perfection Documents, (x) all such Perfection

Documents shall be deemed to have been obtained, entered into, given, recorded or filed, as the

case may be, as of the Petition Date, (y) no defect in any such act shall affect or impair the

validity, perfection, priority or enforceability of the DIP Liens and Adequate Protection Liens,

and (z) such liens shall have the relative priority set forth herein notwithstanding the timing of

filing of any such Perfection Documents.  In lieu of optional recording or filing any Perfection

Documents, the DIP Lender and the Prepetition Secured Party may, in each of their sole

discretion, choose to record or file a copy of this Interim Order in any place that any Perfection

Document would or could be recorded or filed (which may include a description of the collateral

appropriate to be indicated in a recording or filing at such place of recording or filing), and such

recording or filing by the DIP Lender and the Prepetition Secured Party shall have the same

effect as if such Perfection Document had been filed or recorded as of the Petition Date.  In

addition, the DIP Lender may, in its reasonable discretion, require the Debtors to file or record

any Perfection Document. The Debtors are authorized to execute and deliver promptly upon demand to the DIP Lender all Perfection Documents as the DIP Lender may reasonably request.

(b)     Until the indefeasible payment in full in cash of the DIP Obligations, DIP Collateral and Perfection Documents evidencing liens subordinate to the DIP Liens in the possession, custody or control of the Prepetition Secured Party (or in the possession, custody or control of agents or bailees of the Prepetition Secured Party) shall be deemed to be sufficient for the purposes of perfecting the security interests granted in such DIP Collateral and the Prepetition Secured Party (or its agents or bailees, as applicable) shall, to the extent applicable, be an agent or bailee, as the case may be, on behalf of and for the benefit of the DIP Lender for the purposes of perfecting the security interests granted in such DIP Collateral. Upon an Event of Default and the request of the DIP Lender, the Prepetition Secured Party (or its agents or bailees, as applicable) shall transfer, assign and otherwise convey, as applicable, any DIP Collateral and Perfection Documents in its possession, custody or control to the DIP Lender for the enforcement of rights and remedies under the DIP Loan Documents, and, upon the indefeasible payment in full in cash of all DIP Obligations, the DIP Lender (or its agents or bailees, as applicable) shall transfer, assign and otherwise convey any Prepetition Collateral and Perfection Documents to the Prepetition Secured Party. The authorization, grant, perfection, scope and vesting of the DIP Liens, the DIP Superpriority Claims and the DIP Obligations are fully effectuated by this Interim Order and any security agreements, collateral agreements or other Perfection Documents executed as part of the DIP Loan Documents shall supplement the authorization, grant, perfection, scope and vesting set forth herein as well as the powers and protections accorded to the DIP Lender, but in no event shall any such security agreement,

ACTIVE.124903568.04

collateral agreement or other Perfection Document be interpreted as a limitation of such provisions of this Interim Order.

15. <u>Effect of Stipulations on Third Parties</u>.

(a) <u>Generally</u>. The admissions, stipulations, agreements, releases, and waivers set forth in Paragraph D above of this Interim Order (collectively, the "<u>Prepetition Lien and Claim Matters</u>") are and shall be binding on the Debtors, any subsequent trustee (including any chapter 7 trustee), responsible person, examiner with expanded powers, any other estate representative and all parties-in-interest and all of their successors-in-interest and assigns, including, without limitation, any subsequently appointed statutory committee (the "<u>Committee</u>"), and the Chapter 5 Trustee, <u>unless</u>, and solely to the extent that, a party-in-interest with standing and requisite authority, (i) has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "<u>Challenge</u>") by 75 days from entry of this Interim Order for any party in interest (the "<u>Challenge Deadline</u>"), as such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition Secured Party or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline, and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal.

(b)    <u>Binding Effect</u>.  To the extent any Prepetition Lien and Claim Matters are not subject to a Challenge timely commenced by the Challenge Deadline, or to the extent any Challenge does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Matters shall pursuant to this Interim Order become binding, conclusive and final on any person, entity or party-in-interest in the Chapter 11 Cases, and their successors and assigns, and in any successor case for all purposes and shall not be subject to challenge or objection by any party-in-interest, including, without limitation, any trustee, responsible individual, examiner with expanded powers or other representative of the Debtors' estates.  Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding unless such Challenge is successful pursuant to an order or judgment that is final and no longer subject to appeal or further review.  Subject to entry of the Final Order, to the extent any such Challenge proceeding is timely and properly commenced, the Prepetition Secured Party shall be entitled to include the related costs and expenses, including but not limited to reasonable attorneys' fees, incurred in defending themselves in any such proceeding, to the extent permitted by the Prepetition Financing Documents.

16.    <u>Limitation on Use of Proceeds</u>.  Notwithstanding anything in this Interim Order to the contrary, no portion or proceeds of the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the DIP Budget shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with: (a) objecting, contesting or raising any defense to the validity,

ACTIVE.124903568.04

perfection, priority, or enforceability of, or any amount due under, the DIP Loan Documents or the Prepetition Financing Documents or any security interests, liens or claims granted under this Interim Order, the DIP Loan Documents, or the Prepetition Financing Documents to secure such amounts; (b) asserting any Challenges, claims, actions or causes of action against any of the DIP Lender, the Prepetition Secured Party or any of their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors; or (c) contesting the Prepetition Lien and Claim Matters; provided that no more than $25,000.00 in the aggregate of the proceeds of the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, and the Carve-Out may be used by the Chapter 5 Trustee or the Committee, if any, to investigate (but not prosecute or Challenge) Prepetition Lien and Claim Matters.

17.    Avoidance Action Proceeds.    Subject to entry of the Final Order, (i) Avoidance Action Proceeds shall be DIP Collateral and shall be subject to the DIP Liens and DIP Superpriority Claims, and (ii) subject and subordinate to the DIP Liens and DIP Superpriority Claims, Avoidance Action Proceeds shall be subject to the Adequate Protection Liens and Section 507(b) Claims of the Prepetition Secured Party.

18.    Adequate Protection.    The Prepetition Secured Party agrees, and this Court finds, that the adequate protection provided in this Interim Order (the "Adequate Protection") is reasonable and calculated to protect the interests of the Prepetition Secured Party. Notwithstanding any other provision hereof, the grant of Adequate Protection to the Prepetition Secured Party pursuant hereto is without prejudice to the right of the Prepetition Secured Party to seek adequate protection or to seek modification of a grant of Adequate Protection provided in this Interim Order so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such request.

ACTIVE.124903568.04

(a)      Adequate Protection Liens.    As adequate protection, the Prepetition Secured Party, in accordance with sections 361, 363(e) and 364(d) of the Bankruptcy Code, is hereby granted valid, binding, enforceable and perfected security interests and replacement liens (the "Adequate Protection Liens") upon all of the Debtors' assets, including (effective upon the entry of the Final Order) Avoidance Action Proceeds, but excluding any Excluded Real Property Interest; provided, however, that the Adequate Protection Liens shall encumber any proceeds or income from or in connection with any Excluded Real Property Interest, in each case to secure the Prepetition Secured Obligations of such Debtor against, without duplication, the aggregate diminution, if any, subsequent to the Petition Date, in the value of the applicable Prepetition Collateral by:   (i) the reduction in Prepetition Collateral available to satisfy the Prepetition Secured Obligations as a consequence of the priming of the Prepetition Secured Obligations by the DIP Obligations; (ii) depreciation, use, sale, loss, decline in market price or otherwise of the Prepetition Collateral as a consequence of the use, sale or lease of the Prepetition Collateral by the applicable Debtor or as a result of the imposition of the automatic stay; and (iii) the sum of the aggregate amount of all Cash Collateral and the aggregate value of all non-cash Prepetition Collateral which is applied in payment of the DIP Obligations or any other obligations or expenses of the applicable Debtor other than Prepetition Secured Obligations, but only to the extent of any decrease in the value of the Prepetition Collateral on account of subsections (i), (ii) and (iii) above, all to the extent authorized by the Bankruptcy Code.  The Adequate Protection Liens are subject and subordinate to (A) the Carve-Out, (B) the DIP Obligations, the DIP Liens and the DIP Superpriority Claims, and (C) the Permitted Prior Senior Liens.  The Adequate Protection Liens shall not (x) be subject to any lien or security interest that is avoided and preserved for the benefit of the applicable Debtor's estate under section 551 of the Bankruptcy

27

Code, (y) subject to any inter-company claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, or (z) hereafter be subordinated to or made *pari passu* with any other lien or security interest under sections 361, 363 or 364 of the Bankruptcy Code or otherwise except as expressly provided in this Interim Order and the DIP Loan Documents, including, without limitation, with respect to the Carve-Out, Permitted Prior Senior Liens, DIP Obligations, DIP Liens and DIP Superpriority Claims.

        (b)       <u>Section 507(b) Claims</u>.  To the extent that the Prepetition Secured Party shall hold claims allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code, notwithstanding the provision of Adequate Protection hereunder, the Prepetition Secured Party is hereby granted an administrative expense claim pursuant to section 507(b) of the Bankruptcy Code (each, a "<u>Section 507(b) Claim</u>") with priority over all other administrative expenses, but in all cases subject and subordinate to the Carve-Out, the Permitted Prior Senior Liens, DIP Obligations, DIP Liens and DIP Superpriority Claims.

        (c)       <u>Adequate Protection Payments</u>.  Until the Prepetition Secured Obligations have been paid in full, the Debtors shall pay monthly to the Prepetition Secured Party all accrued and unpaid interest on the Prepetition Secured Obligations as provided in the Prepetition Credit Agreement.

        19.     <u>Milestones</u>. As a condition to the DIP Facility and the use of Cash Collateral, the Debtors shall comply with the milestones set forth in the DIP Term Sheet (the "<u>Milestones</u>"). For the avoidance of doubt, the failure of the Debtors to comply with any of the Milestones (a) shall constitute an Event of Default under the DIP Facility and this Interim Order, (b) subject to the expiration of the Remedies Notice Period (defined below), will result in the automatic termination of the Debtors' authority to use Cash Collateral under this Interim Order, and

ACTIVE.124903568.04

(c) shall permit the DIP Lenders to, subject to Paragraph 21, exercise the rights and remedies provided for in this Interim Order and the DIP Facility.

20.    <u>Indemnification</u>.  The Debtors shall indemnify the DIP Lender and its successors and assigns and the officers, directors, employees, agents, advisors, controlling persons and members of each of the foregoing (each, an "<u>Indemnified Person</u>") and hold each of them harmless from and against all costs, expenses (including reasonable fees, disbursements and other charges of counsel) and liabilities of such Indemnified Person arising out of or relating to any claim or any litigation or other proceeding (regardless of whether such Indemnified Person is a party thereto and regardless of whether such matter is initiated by a third party or by the Debtors or any of their affiliates or shareholders) that relates to the DIP Facility or the use of Cash Collateral and borrowings under the DIP Facility pursuant to this Interim Order, including the financing contemplated hereby, the Chapter 11 Cases, or any transactions in connection therewith; provided that no Indemnified Person will be indemnified for any cost, expense or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted from such Person's gross negligence, willful misconduct, fraud or violations of this Interim Order.

21.    <u>Remedies</u>.  Upon the occurrence of an Event of Default under the DIP Loan Documents or upon the Maturity Date, and in each case without further notice, motion or application to, order of, or hearing before, this Court (other than such notice required by this Paragraph), subject to the full funding of the Carve-Out, the DIP Lender is granted leave to cease making financial accommodations to the Debtors, accelerate any or all of the DIP Obligations and declare such DIP Obligations to be immediately due and payable in full, in cash.  Upon the Maturity Date, and after providing five (5) business days' prior written notice to this Court

ACTIVE.124903568.04

(the "<u>Remedies Notice Period</u>"), U.S. Trustee, and the Chapter 5 Trustee, the DIP Lender shall

be entitled to exercise all of its rights and remedies under this Interim Order and the DIP Loan

Documents, including, without limitation, to foreclose upon the DIP Collateral or otherwise

enforce the DIP Obligations, the DIP Liens and the DIP Superpriority Claims on any or all of the

DIP Collateral and/or to exercise any other default-related remedies under the DIP Loan

Documents, this Interim Order or applicable law in seeking to recover payment of the DIP

Obligations.  With respect to Permitted Prior Senior Liens, any exercise of such rights and

remedies shall be in accordance with applicable non-bankruptcy law.  During the Remedies

Notice Period, any party in interest may seek an expedited hearing and an order of the Court

staying the DIP Lender's exercise of such remedies against the DIP Collateral and, if no such

stay is obtained, then the DIP Lender may exercise any and all such rights and remedies and the

Debtors' authority to use Cash Collateral under this Interim Order shall terminate, in each case,

without further order of the Court or notice to any party.  The DIP Lender shall not object to any

motion filed by the Debtors during the Remedies Notice Period seeking an expedited hearing nor

seek to reduce the Remedies Notice Period.

22.    <u>Access to DIP Collateral</u>.  Subject to appropriate notice and entry of the Final

Order, notwithstanding anything contained herein to the contrary and without limiting any other

rights or remedies of the DIP Lender contained in this Interim Order or the DIP Loan

Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan

Documents, upon written notice to the landlord of any leased premises that an Event of Default

or the Maturity Date has occurred and is continuing under the DIP Loan Documents, the DIP

Lender may, subject to the applicable notice provisions, if any, in this Interim Order and any

separate agreement by and between such landlord and the DIP Lender, enter upon any leased

premises of the Debtors or any other party for the purpose of exercising any remedy with respect to DIP Collateral located thereon and shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder. Nothing herein shall require the DIP Lender to assume any lease as a condition to the rights afforded to the DIP Lender in this Paragraph.

23.     <u>Insurance Policies</u>. Effective as of entry of this Interim Order, the Debtors consent to, and the DIP Lender and the Prepetition Secured Party shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors that insures any of the DIP Collateral or Prepetition Collateral, as applicable.

24.     <u>Successors and Assigns</u>. This Interim Order, the DIP Term Sheet and the other DIP Loan Documents shall be binding upon all parties in interest in these Chapter 11 Cases, including any subsequently appointed trustee, committee, responsible individual, examiner with expanded powers, or other estate representative.

25.     <u>Survival</u>. The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any subsequent order (other than entry of any subsequent Final Order which shall supersede this Interim Order), and the rights, remedies, powers, privileges, liens and priorities of the DIP Lender and the Prepetition Secured Party provided for in this Interim Order, in any DIP Loan Document and any Prepetition Financing Document shall not be modified, altered or impaired in any manner without their consent (which consent shall not be unreasonably withheld) by any order, including any order (i) confirming any plan of reorganization or liquidation in any of the Chapter 11 Cases (and, to the extent not indefeasibly paid in full in cash, the DIP Obligations shall not be discharged by the entry of any such order,

ACTIVE.124903568.04

each of the Debtors having hereby waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code), (ii) converting any of the Chapter 11 Cases to a Chapter 7 case or to cases not under the Small Business Reorganization Act, (iii) dismissing any of the Chapter 11 Cases, or (iv) any superseding cases under the Bankruptcy Code.  The terms and provisions of this Interim Order as well as the DIP Obligations, the DIP Liens, the DIP Superpriority Claim, the DIP Loan Documents, and the Adequate Protection Liens shall continue in full force and effect notwithstanding the entry of any such order, and such rights, claims and liens shall maintain their priority as provided by this Interim Order and the DIP Loan Documents to the maximum extent permitted by law until all of the DIP Obligations are indefeasibly paid in full, in cash.

26.     Good Faith.  The DIP Facility, the use of Cash Collateral, and the other provisions of this Interim Order, the DIP Term Sheet and the other DIP Loan Documents have been negotiated in good faith and at arm's length among the Debtors, the DIP Lender, and the Prepetition Secured Party, and the extension of the financial accommodations to the Debtors by the DIP Lender pursuant to this Interim Order and the DIP Loan Documents have been and are deemed to be extended in good faith, as that term is used in section 364(e) of the Bankruptcy Code.  The DIP Lender and the Prepetition Secured Party are entitled to, and are hereby granted, the full protections of section 364(e) of the Bankruptcy Code.

27.     Subsequent Reversal or Modification.  If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability under this Interim Order and the DIP Loan Documents by the Debtors prior to the date of receipt of written notice to the DIP Lender and the Prepetition Secured Party of the effective date of such action, or (ii) the validity and enforceability of any lien, administrative expense, right, or priority authorized or created hereby

32

or pursuant to this Interim Order and the DIP Loan Documents, including, without limitation, the

DIP Obligations, the DIP Liens, the DIP Superpriority Claims, the Prepetition Secured

Obligations, the Adequate Protection Liens, and the Section 507(b) Claims.

28.     <u>No Waiver</u>.  This Interim Order shall not be construed in any way as a waiver or

relinquishment of any rights that the DIP Lender and Prepetition Secured Party may have to

bring or be heard on any matter brought before this Court.   Any consent, modification,

declaration of default, or exercise of remedies or non-exercise of remedies under or in

connection with this Interim Order or the DIP Loan Documents shall require the approval of the

DIP Lender and shall not be deemed a waiver or relinquishment of any of the rights of the DIP

Lender.  Except as expressly set forth herein, nothing contained in this Interim Order (including

without limitation, the authorization to use any Cash Collateral) shall impair, prejudice or modify

any rights, claims or defenses available in law or equity to the DIP Lender or the Prepetition

Secured Party.  All such rights, claims and defenses, and the rights, objections and defenses of all

parties in connection therewith, are hereby reserved.

29.     <u>Additional Defaults</u>.  In addition, and without limitation of the Events of Default

set forth in and defined in the DIP Loan Documents or this Interim Order, it shall be a default

hereunder (and constitute an "<u>Event of Default</u>" under the DIP Loan Documents) if an order is

entered converting any of the Chapter 11 Cases or dismissing the Guarantor Debtors' Chapter 11

Cases under section 1112 of the Bankruptcy Code or appointing a Chapter 11 trustee or an

examiner or other estate representative with expanded powers.  Any order for dismissal or

conversion shall be automatically deemed to preserve the rights of the DIP Lender and the

Prepetition Secured Party under this Interim Order and shall preserve the Carve-Out.  It shall be

an Event of Default for the sale of substantially all of the assets of the Debtors, unless, upon the

ACTIVE.124903568.04

closing of such transaction, all liens securing the DIP Obligations and the Prepetition Secured Obligations are transferred to the proceeds of such sale. If an order dismissing any of these Chapter 11 Cases under section 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall be deemed to provide that (a) the DIP Liens and the DIP Superpriority Claims granted to the DIP Lender hereunder and in the DIP Loan Documents, as the case may be, and the Carve-Out shall continue in full force and effect, shall remain binding on all parties in interest and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and indebtedness owing to the DIP Lender under the DIP Loan Documents shall have been indefeasibly paid in full in cash and the DIP Lender's obligations and commitments under the DIP Loan Documents shall have been terminated, and this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Obligations, DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, Section 507(b) Claims, and the Carve-Out.

30.   <u>Order Governs</u>.  In the event of any conflict between the provisions of this Interim Order and the DIP Loan Documents, the Motion, or any supporting documents (including, without limitation, with respect to Excluded Real Property Interests), the provisions of this Interim Order shall control and govern to the extent of such conflicts.

31.   <u>Right to Credit Bid</u>.  Pursuant to section 363(k) of the Bankruptcy Code, (i) the DIP Lender shall have the exclusive right to use the DIP Obligations, DIP Liens and DIP Superpriority Claim to credit bid with respect to any bulk or piecemeal sale of all or any portion of the DIP Collateral, and (ii) subject to entry of the Final Order and the rights of the Chapter 5 Trustee or any Committee under paragraph 15, the Prepetition Secured Party shall have the exclusive right to use the Prepetition Secured Obligations and the Prepetition Adequate

ACTIVE.124903568.04

Protection Liens and Section 507(b) Claims to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Prepetition Collateral.

32.    <u>No Marshaling</u>.  Subject to entry of the Final Order, none of the DIP Lender, DIP Collateral, Prepetition Secured Party or Prepetition Collateral shall be subject to the doctrine of marshaling or any similar doctrine or law of any jurisdiction requiring the recovery upon or application to any indebtedness of any collateral or proceeds in any particular order or action.

33.    <u>Waiver of Requirement to File Proofs of Claim</u>.

(a)    The DIP Lender shall not be required to file proofs of claim in the Chapter 11 Cases or, subject to the entry of the Final Order, any successor chapter 7 cases, in order to maintain its claims for payment of the DIP Obligations under the applicable DIP Loan Documents.  The statements of claim in respect of the DIP Obligations set forth in this Interim Order, together with the evidence accompanying the Motion and presented at the Interim Hearing are deemed sufficient to and do constitute proofs of claim in respect of such obligations and such secured status.

(b)    The Prepetition Secured Party shall not be required to file proofs of claim in the Chapter 11 Cases or, subject to the entry of the Final Order, any successor chapter 7 cases, in order to maintain its claims for payment of the Prepetition Secured Obligations under the Prepetition Financing Documents or for payment and performance of the Adequate Protection obligations hereunder.  The statements of claim in respect of the Prepetition Secured Obligations and the Adequate Protection obligations set forth in this Interim Order, together with the evidence accompanying the Motion and presented at the Interim Hearing are deemed sufficient to and do constitute proofs of claim in respect of such obligations and such secured status.

ACTIVE.124903568.04

34.     <u>Lease Rejection Rights</u>.  The DIP Lender shall be provided no less than two (2) days' prior written notice (or such lesser time as the DIP Lender may consent to in writing) before the Debtors file a motion seeking authority to reject a lease.  Upon the effective date of any Debtor's rejection of the lease of any center, and conditioned on the prior written consent of the DIP Lender, (i) Holdings shall be entitled to take possession of the FF&E leased to the Debtors for use at such center and owned by Holdings, and (ii) RGM and Franchisor shall be permitted to move occupants to other centers under the terms of their management agreements and franchise agreements with the Debtors.

35.     <u>Immediate Effect of Order</u>.  This Interim Order shall take effect immediately upon execution hereof, and, notwithstanding anything to the contrary contained in Bankruptcy Rules, including Bankruptcy Rule 4001(a)(3), there shall be no stay of execution of effectiveness of this Order.  All objections to the entry of this Interim Order have been withdrawn or overruled and the Motion is approved on an interim basis on the terms and conditions set forth herein.  The Debtors shall promptly mail copies of this Interim Order to (i) the U.S. Trustee; (ii) the Chapter 5 Trustee; (iii) each Debtor's twenty (20) largest unsecured creditors; (iv) counsel to the DIP Lender and the Prepetition Secured Party; (v)  all other known parties with liens of record on assets of the Debtors as of the Petition Date; (vi) the local office for the Internal Revenue Service; and (vii) any party having filed requests for notice in the Chapter 11 Cases (collectively, (i)-(vii), the "<u>Notice Parties</u>").

36.     <u>Final Hearing</u>.  The Final Hearing is scheduled for September 29, 2020, at 10:00 a.m. (prevailing Eastern Time) before this Court.  The Debtors shall promptly serve a notice of entry of this Interim Order and the Final Hearing, together with a copy of this Interim Order, by first class mail, postage prepaid or overnight mail upon the Notice Parties.  The notice of the

ACTIVE.124903568.04

entry of this Interim Order and the Final Hearing shall state that objections to the entry of the Final Order shall be filed with this Court by no later than 4:00 p.m. (prevailing Eastern Time) on September 24, 2020 (the "Objection Deadline"), with copies to: (i) counsel for the Debtors, Faegre Drinker Biddle & Reath LLP, 222 Delaware Avenue, Suite 1410, Wilmington, DE 19801, Attn. Patrick Jackson and Ian Bambrick; (ii) counsel for the DIP Lender and the Prepetition Secured Party, Young Conaway Stargatt & Taylor, LLP, 2000 North King Street, Wilmington, Delaware 19801, Attn:  Robert Brady and Joseph M. Barry; (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn:  David Villagrana; and (iv) the Chapter 5 Trustee, Gibbons PC, 300 Delaware Avenue Suite 1015, Wilmington, DE 19801, Attn: Natasha Songonuga.

37.    <u>Non-Debtors Not Subject to this Order</u>.    For the avoidance of doubt and notwithstanding anything to the contrary contained herein or in the Motion, nothing in this Interim Order shall (i) constitute a finding or determination with respect to the validity, amount, priority, or enforceability of any debt to Regus by any entity other than the Debtors, (ii) authorize, provide for, or result in the encumbrance of any property of any entity other than the Debtors, or (iii) authorize, provide for, or result in the incurrence of any debt by any entity other than the Debtors.

ACTIVE.124903568.04

**<u>EXHIBIT A</u>**

**DIP Term Sheet**

ACTIVE.124903569.03

**RGN-GROUP HOLDINGS, LLC et al.**
**DIP FACILITY TERM SHEET**
**August 25, 2020**

This term sheet (this "***Term Sheet***") sets forth a summary of the terms and conditions with respect to the DIP Loans (as defined below) and the DIP Facility (as defined below). This Term Sheet shall be a binding agreement with respect to the DIP Loans and, together with the Financing Orders (as defined below) and any other related agreements, documents, security agreements or pledge agreements entered into in connection herewith and therewith, sets forth all of the terms, conditions, representations and other provisions with respect to the DIP Facility. In the event of any conflict between this Term Sheet and the terms of the Financing Orders, the terms of the Financing Orders shall govern.

| | |
|---|---|
| **Borrowers:** | The Borrowers shall be those debtors and debtors-in-possession (each, a "***Debtor***" and, collectively, the "***Debtors***") in the jointly administered cases (the "***Chapter 11 Cases***") filed under Chapter 11 of Title 11 of the United States Code (as amended, the "***Bankruptcy Code***") and filed with the United States Bankruptcy Court for the District of Delaware (the "***Bankruptcy Court***"). As used herein, the term "***Petition Date***" shall refer to the date of commencement of the applicable Debtor's Chapter 11 Case. |
| **DIP Lender:** | Regus Corporation, a Delaware corporation |
| **DIP Facility:** | Up to $17,500,000.00 million under a multi-draw term loan debtor-in-possession financing facility (the "***DIP Facility***" and the loans made thereunder, the "***DIP Loans***"). As provided herein, the DIP Facility will be secured by a first priority lien on all of the Borrowers' assets, including (effective upon the entry of the Final Order) all proceeds of avoidance actions (collectively, the "***DIP Collateral***"). Subject, in each case, to the conditions precedent set forth herein and in the Financing Orders, $7,500,000.00 of the DIP Facility (the "***Interim DIP Loan***") will be funded upon entry of an interim order approving the DIP Facility (the "***Interim Order***"), with the remainder (the "***Remaining DIP Loans***") to be funded consistent with the Budget (as defined below) upon entry of the final order (the "***Final Order***, and together with the Interim Order, the "***Financing Orders***"). Without limiting the foregoing, the DIP Facility shall be subject to the entry in the Bankruptcy Court of the Interim Order (as to the interim DIP Facility) and the Final Order (as to the final DIP Facility), in form and substance acceptable to the DIP Lender in its sole and absolute discretion. |

| | |
|---|---|
| **Joint and Several Liability:** | The Borrowers shall have joint and several liability for the DIP Obligations. |
| **Interest Rate/ Default Rate:** | Interest shall accrue on the DIP Loans at the rate of 6.5% per annum (or, if less, at the highest rate then permitted by applicable law). Accrued, unpaid interest shall be paid by the Borrowers to the DIP Lender on or before the 1st business day of each month. <br><br> At all times while an Event of Default (as defined below) exists, at the election of the DIP Lender, the DIP Loans shall bear interest at a rate per annum equal to 1.00% in excess of the interest rate set forth in the immediately preceding paragraph. <br><br> It is the intention of the parties hereto to conform strictly to all applicable usury laws now or hereafter in force, and any interest payable under this Term Sheet and related documentation shall be subject to reduction to the amount not in excess of the maximum legal amount allowed under the applicable usury laws as now or hereafter construed by the courts having jurisdiction over such matters. |
| **Maturity Date:** | The earliest of (a) February 16, 2021 (or such later date as the DIP Lender in its sole discretion may agree in writing with the Borrowers); (b) acceleration of the DIP Loans pursuant to this Term Sheet or the Financing Orders; (c) 40 days after entry of the Interim Order (or such later date as the DIP Lender in its sole discretion may agree in writing with the Borrowers) if the Final Order has not been entered and become a final, non-appealable order on or prior to the expiration of such 40-day period; and (d) the effective date of a plan of reorganization filed in the Chapter 11 Cases (the "***Plan***") that is confirmed pursuant to an order entered by the Bankruptcy Court and to which the DIP Lender consents in its sole and absolute discretion. |
| **Budget:** | All advances, and the use of funds provided, under the DIP Facility and any Cash Collateral (as defined below) shall be subject to and consistent with the budget to be agreed by DIP Lender and the Borrowers (the "***Budget***"), which Budget may be modified by the Borrowers with the written consent of the DIP Lender in its sole and absolute discretion and without further order |

|  | of the Bankruptcy Court. The funding of all DIP Loans following the Interim DIP Loan shall be subject to prior use of cash in accordance with the Budget and cash need under the Budget.<br><br>Commencing September 25, 2020 and continuing on the same day every four weeks thereafter (and if such date is not a business day, the following business day), the Borrowers shall furnish a supplement to the initial Budget (or the previously supplemented Budget), updating and/or extending the period covered by the initial Budget (or the previously supplemented Budget) so that it covers at least the period ending 13 weeks from the week in which the supplement is delivered. Such supplemental Budgets shall be subject to the DIP Lender's approval in its sole and absolute discretion and without further order of the Bankruptcy Court. The initial Budget (or the previously supplemented and approved Budget) shall remain the Budget in effect with respect to the period covered by such Budget until such time as the DIP Lender approves such supplemental Budget.<br><br>Commencing October 2, 2020 and continuing on the same day every four weeks thereafter (and if such date is not a business day, the following business day), the Debtors shall provide the DIP Lender with variance reporting, for the cumulative four-week period ending the last business day of the week then ended, on a line item basis for cash receipts, cash operating disbursements and non-operating bankruptcy-related cash disbursements, which reporting shall (a) detail the variance, if any, of actual cash disbursements and actual cash receipts from the Budget and (b) provide an explanation of any per line item variance greater than 10.00%. To illustrate the foregoing, the first variance report shall be due October 2, 2020 and shall cover the cumulative four-week period ending September 25, 2020.<br><br>The Debtors shall provide to the DIP Lender such other financial and operational reporting as reasonably requested by the DIP Lender from time to time. |
|---|---|
| **Cash Use Stipulation:** | Pursuant to the Cash Collateral Stipulation[5], Regus Corporation consented to the use of its Cash Collateral by RGN-Columbus IV, LLC ("***Columbus-IV***") to pay August rent in the ordinary course of business, or to the extent such Cash Collateral was insufficient, as an extension of unsecured credit by Regus Corporation pursuant to section 364(a) of the Bankruptcy Code pending the negotiation |

---

[5] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the *Declaration of James S. Feltman In Support of Chapter 11 Petitions and First-Day Relief* [Docket No. 3].

ACTIVE.124903569.03

|  | of this Term Sheet and the Financing Orders. The amount of any Cash Collateral used or unsecured credit granted to Columbus-IV pursuant to the Cash Collateral Stipulation shall be deemed to be a DIP Loan as of the date of the entry of the Interim Order and part of the DIP Obligations (as defined below) pursuant to this Term Sheet and the Financing Orders. |
|---|---|
| **DIP Obligations:** | As used herein, the term "***DIP Obligations***" means (a) the due and punctual payment by the Borrowers of (i) the unpaid principal amount of and interest on (including interest accruing after the maturity of the DIP Loans) the DIP Loans, as and when due, whether at maturity, by acceleration or otherwise, and (ii) all other monetary obligations, including advances, debts, liabilities, obligations, fees, costs, expenses and indemnities, whether primary, secondary, direct, indirect, absolute or contingent, due or to become due, now existing or hereafter arising, fixed or otherwise, of the Borrowers to the DIP Lender under this Term Sheet, the Financing Orders, and related documentation, and (b) the due and punctual payment and performance of all covenants, duties, agreements, obligations and liabilities of the Borrowers to the DIP Lender under or pursuant to this Term Sheet, the Financing Orders and related documentation. <br><br> No later than the effective date of the Plan, the DIP Obligations shall be indefeasibly paid in full in cash. |
| **Cash Collateral:** | Subject to the entry in the Bankruptcy Court of the Interim Order, the DIP Lender hereby consents to the use of its "cash collateral" as defined in section 363(a) of the Bankruptcy Code (the "***Cash Collateral***"), all in accordance with the terms and conditions set forth in this Term Sheet, the Financing Orders, any related documentation and the Budget. <br><br> In the event that the Final Order is not entered by the Bankruptcy Court and become a final, non-appealable order on or prior to the date that is 40 days after entry of the Interim Order (or such later date as the DIP Lender in its sole discretion may agree in writing with the Borrowers), upon the expiration of the Remedies Notice Period (as defined below) (and subject to the Remedies Notice Period Procedures (as defined below)), the consent of the DIP Lender to the use of Cash Collateral shall automatically terminate. |
| **Use of DIP Loan Proceeds** | The proceeds of the DIP Loans and Cash Collateral shall be available to finance, in each case consistent with the Budget: |

| | |
|---|---|
| **and Cash Collateral:** | 1.   working capital and general corporate purposes, including the payment of rent and other lease expenses;<br><br>2.   management fees or expense reimbursements to Regus Management Group, LLC ("***RGM***") pursuant to the Management Agreement by and between RGM and each Borrower as described more fully in the *Debtor's Motion for Interim and Final Orders Authorizing Continued Performance of Obligations under Intercompany Agreements and, on a Final Basis, Payment of the RMG Prepetition Claim* (the "***Intercompany Motion*** and the interim and final orders thereon shall be referred to as the "***Intercompany Orders***");<br><br>3.   amounts owed by each Borrower to Holdings pursuant to the Equipment Lease Agreements executed by each Borrower and Holdings as described more fully in the Intercompany Motion; and<br><br>4.   amounts owed by each Borrower to Franchise International GmBH ("***Franchisor***") pursuant to the Franchise Agreements for Operation of Regus Business Centres executed by each Borrower and Franchisor as described more fully in   the Intercompany Motion. |
| **Initial Funding:** | Subject to the terms and conditions set forth in this Term Sheet (including the Conditions Precedent (as defined below)) and the Financing Orders:<br><br>1.   Upon entry in the Bankruptcy Court of the Interim Order, in form and substance acceptable to the DIP Lender in its sole and absolute discretion, approving the DIP Loans and this Term Sheet and any other applicable documentation, the Interim DIP Loan will be available for the liquidity needs of the Debtors pursuant to the Budget.<br><br>2.   Upon the entry in the Bankruptcy Court of the Final Order, in form and substance acceptable to the DIP Lender in its sole and absolute discretion, approving (among other things) the DIP Facility and the DIP Loans, the remaining $10,000,000 of the DIP Loans will be available for the liquidity needs of the Debtors pursuant to the Budget. |
| **Security:** | As security for the prompt and complete payment and performance when due (whether at stated maturity, by acceleration or otherwise) of the DIP Obligations, each Borrower hereby grants to the DIP Lender a security interest in and continuing lien on all of such Borrower's right, title and interest in, to and under all of the DIP Collateral, including, but not limited to the following, in each case, whether now owned or existing or hereafter acquired, created or arising and wherever located: (a) all assets and property of each Borrower and its estate, real or personal, tangible or intangible, now owned or hereafter acquired, whether arising before or after the Petition Date, including, without limitation, all |

contracts, contract rights, licenses, general intangibles, instruments, equipment, accounts, documents, goods, inventory, fixtures, documents, cash, cash equivalents, chattel paper, letters of credit and letter of credit rights, investment property, commercial tort claims, money, insurance, receivables, receivables records, deposit accounts, collateral support, supporting obligations and instruments, all interests in leaseholds and real properties, all patents, copyrights, trademarks, trade names and other intellectual property (whether such intellectual property is registered in the United States or in any foreign jurisdiction), all books and records relating to the foregoing, all other personal and real property of the Borrowers, and all proceeds, products, accessions, rents, income and profits of or in respect of any of the foregoing (in each case as the foregoing are defined in the Uniform Commercial Code as in effect from time to time in the State of New York (the "*UCC*") (and, if defined in more than one Article of such Uniform Commercial Code, as defined in Article 9 thereof)); and (b) subject to the Final Order, proceeds of any actions under sections 544, 545, 547, 548 and 550 of the Bankruptcy Code.

Each Borrower hereby authorizes the DIP Lender to, at any time and from time to time, file any documents evidencing or perfecting the security interests granted herein, including without limitation financing statements, continuation statements, mortgages and amendments thereto that describe the DIP Collateral (including describing the DIP Collateral as "all assets" or "all personal property" of each Borrower, or words of similar effect), and which contain any other information required pursuant to the UCC or applicable law for the sufficiency of filing office acceptance of any such document, and each Borrower agrees to furnish any such information to the DIP Lender upon request.

If an Event of Default shall occur and be continuing, the DIP Lender may exercise, in addition to all other rights and remedies granted to it in this Term Sheet, the Financing Orders and in any other instrument or agreement securing, evidencing or relating to the DIP Obligations, all rights and remedies of a secured party under the UCC or any other applicable law. Without limiting the generality of the foregoing, if an Event of Default shall occur and be continuing, the DIP Lender, without demand of performance or other demand, presentment, protest, advertisement or notice of any kind (except any notice required by law referred to below) to or upon any Borrower or any other person or entity (all and each of which demands, presentments, protests, advertisements and notices and related defenses are hereby waived), may in such circumstances forthwith collect, receive, appropriate and realize upon the DIP Collateral, or any part thereof, and/or may forthwith sell, lease, assign, give options to purchase, or otherwise dispose of and deliver the DIP Collateral or any part thereof (or contract to do any of the foregoing), in one or more parcels at public or private sale or sales, upon such terms and conditions as they may deem advisable and at such prices as they may deem best, for cash or on

credit or for future delivery with assumption of any credit risk. The DIP Lender may disclaim any warranties that might arise in connection with any such lease, assignment, grant of option or other disposition of DIP Collateral and have no obligation to provide any warranties at such time. The DIP Lender shall have the right upon any such public sale or sales, and upon any such private sale or sales, to purchase the whole or any part of the DIP Collateral so sold, free of any right or equity of redemption in any Borrower, which right or equity is hereby waived and released. Such sales may be adjourned and continued from time to time with or without notice. The DIP Lender shall have the right to conduct such sales on any Borrower's premises or elsewhere and shall have the right to use any Borrower's premises without charge for such time or times as the DIP Lender deems necessary or advisable. The DIP Lender shall apply the net proceeds of any action taken by them pursuant to this provision, after deducting all reasonable costs and expenses of every kind incurred in connection therewith or incidental to the care or safekeeping of any of the DIP Collateral or in any way relating to the DIP Collateral or the rights of the DIP Lender hereunder, including attorneys' fees and disbursements, to the payment of the DIP Obligations in accordance with this Term Sheet, the Financing Orders and related documentation. Each Borrower waives all claims, damages and demands it may acquire against the DIP Lender arising out of the exercise by them of any rights hereunder. If any notice of a proposed sale or other disposition of DIP Collateral shall be required by law, such notice shall be deemed reasonable and proper if given at least 10 days before such sale or other disposition.

Each Borrower hereby irrevocably constitutes and appoints the DIP Lender and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of such Borrower and in the name of such Borrower or in its own name, for the purpose of carrying out the terms of this Term Sheet and related documentation, to take any and all appropriate and reasonable action and to execute any and all documents and instruments which may be necessary or desirable to accomplish the purposes of this Term Sheet and related documentation. Each Borrower hereby ratifies all that such attorneys shall lawfully do or cause to be done by virtue hereof. All powers, authorizations and agencies contained in this provision are coupled with an interest and are irrevocable until this Term Sheet is terminated, and the security interests created hereby are released. The DIP Lender's sole duty with respect to the custody, safekeeping and physical preservation of the DIP Collateral in its possession shall be (a) to deal with it in the same manner as the DIP Lender deals with similar property for its own account, and (b) to account for monies actually received.

Subject to any surviving obligations, at such time as the DIP Obligations have been indefeasibly paid in full, the DIP Collateral

shall be released from the liens created hereby. At the request and sole expense of any Borrower following any such termination, the DIP Lender shall deliver to the Borrowers any DIP Collateral held by the DIP Lender hereunder and execute and deliver to the Borrowers such documents as the Borrowers shall reasonably request to evidence such termination.

Each Borrower understands and agrees that the obligations of each Borrower under this provision shall be construed as continuing, absolute and unconditional without regard to (a) the validity or enforceability of this Term Sheet and any related documentation, any of the DIP Obligations or any other collateral security therefor or guaranty or right of offset with respect thereto at any time or from time to time held by DIP Lender, (b) any defense, set-off or counterclaim (other than a defense of indefeasible payment of the DIP Obligations in full) which may at any time be available to or be asserted by any Borrower or any other person or entity against the DIP Lender or (c) any other circumstance whatsoever (with or without notice to or knowledge of any Borrower) which constitutes, or might be construed to constitute, an equitable or legal discharge of any Borrower for the DIP Obligations, in bankruptcy or in any other instance. When making any demand hereunder or otherwise pursuing its rights and remedies hereunder against any Borrower, each DIP Lender may, but shall be under no obligation to, make a similar demand on or otherwise pursue such rights and remedies as it may have against any other Borrower or any other person or entity or against any other collateral security or guaranty for the DIP Obligations or any right of offset with respect thereto, and any failure by any DIP Lender to make any such demand, to pursue such other rights or remedies or to collect any payments from any other Borrower or any other person or entity or to realize upon any such collateral security or guaranty or to exercise any such right of offset, or any release of any other Borrower or any other person or entity or any such collateral security, guaranty or right of offset, shall not relieve any Borrower of any obligation or liability hereunder, and shall not impair or affect the rights and remedies, whether express, implied or available as a matter of law, of the DIP Lender against any Borrower. For the purposes hereof "demand" shall include the commencement and continuance of any legal proceedings.

| | |
|---|---|
| **Priority and Liens:** | All of the claims of the DIP Lender under the DIP Facility with respect to the DIP Loans and the DIP Obligations shall at all times: |

1. pursuant to section 364(c)(1) of the Bankruptcy Code, be entitled to superpriority claim status in the Chapter 11 Cases (which claims shall be payable from and have recourse to all DIP Collateral) (subject to the Carve-Out (as defined below));

2. pursuant to section 364(d)(1) of the Bankruptcy Code, be secured by a perfected first priority, priming lien on all encumbered DIP Collateral (subject to the Carve-Out and

| | |
|---|---|
| | Permitted Prior Senior Liens, if any); |
| | 3.    pursuant to section 364(c)(2) of the Bankruptcy Code, be secured by a perfected first priority lien on all unencumbered DIP Collateral (subject to the Carve-Out); and |
| | 4.    pursuant to section 364(c)(3) of the Bankruptcy Code, be secured by a perfected junior priority lien on all DIP Collateral that is subject to a Permitted Prior Senior Lien, if any (subject to the Carve-Out). |
| **Carve-Out:** | The Financing Orders shall provide for a customary, agreed funded budget for the Debtors' professionals that will be subject to a carve-out of the superpriority claims and liens of the DIP Lender (the "***Carve-Out***"). |
| **Conditions Precedent:** | The obligations of the DIP Lender to make any DIP Loans shall be conditioned on the satisfaction or waiver of the following: |
| | 1.    With respect to the availability of the Interim DIP Loan, the entry by the Bankruptcy Court of the Interim Order in form and substance acceptable to the DIP Lender in its sole and absolute discretion. |
| | 2.    With respect to the availability of the Remaining DIP Loans, the entry of the Final Order in form and substance acceptable to the DIP Lender in its sole and absolute discretion. |
| | 3.    The interim Intercompany Order shall have been entered concurrent with the Interim Financing Order and the final Intercompany Order shall have been entered concurrent with entry of the Final Financing Order. |
| | 4.    No trustee (other than a standing trustee under section 1183 of the Bankruptcy Code) or examiner having expanded powers shall have been appointed with respect to the Borrowers or their properties. |
| | 5.    There shall exist no unstayed action, suit, investigation, litigation or proceeding pending or (to the knowledge of the Borrowers) threatened in writing in any court or before any arbitrator or governmental instrumentality (other than the Chapter 11 Cases or the consequences that would normally result from the commencement and continuation of the Chapter 11 Cases) restraining, prohibiting or imposing material and adverse conditions upon this Term Sheet or the Financing Orders. |
| | 6.    No default or Event of Default shall have occurred or be continuing under this Term Sheet. |
| | 7.    The Borrower shall have delivered to the DIP Lender a draw request in a form acceptable to the DIP Lender. |

| | |
|---|---|
| | 8.   Any draw request shall not exceed the total amount of expenditures as set forth in the then-current Budget for the next four (4) weeks by more than ten percent (10%). |
| | 9.   This Term Sheet and any related documentation required hereunder shall have been executed and delivered in form, scope and substance satisfactory to the DIP Lender, and the DIP Lender shall have a perfected security interest in the DIP Collateral. |
| | 10.  There shall not exist any development occurring with respect to the Debtors or the DIP Collateral which could, in the opinion of the DIP Lender, materially and adversely affect the net operating income or value of the Debtors. |
| **Prepayments / Commitment Reductions:** | Voluntary prepayments of the DIP Loans and termination or reduction of the commitments in respect of the DIP Loans in whole or in part shall be permitted at any time without premium or penalty. All payments and prepayments of principal and interest hereunder and all principal reductions effected in accordance with the terms of this Term Sheet and the Financing Orders shall be applied <u>first</u> to the accrued and unpaid interest due hereunder and <u>second</u> to the unpaid principal balance of the DIP Loans then outstanding. |
| **Affirmative Covenants:** | So long as any amount remains outstanding under this Term Sheet or the Financing Orders, the Borrowers will: |
| | 1.    use the advances made under the DIP Facility and the Cash Collateral consistent with the Budget, and not use such funds to commence any action against the DIP Lender or its affiliates, employees, directors, officers or principals; |
| | 2.    permit the DIP Lender and its representatives and designees to visit and inspect the properties, books and records of the Borrowers upon reasonable notice; *provided* that no disclosure of information by the Borrowers to the DIP Lender in connection with any such inspection shall be required to the extent that such disclosure would result in the breach of any confidentiality obligations to which the Borrowers are subject or if such disclosure would compromise attorney-client privilege or require the disclosure of attorney work product; |
| | 3.    subject to the Budget, pay all material obligations imposed upon any Borrower or any of its properties or assets as they become due and payable, to the extent payment and/or enforcement thereof is not stayed as a result of the Chapter 11 Cases; |
| | 4.    comply with the requirements of all applicable laws; |
| | 5.    comply with the schedule of Case Milestones (as defined below); |
| | 6.    promptly upon request execute and deliver such documents |

| | |
|---|---|
| | and do such other acts as the DIP Lender may reasonably request in connection with the DIP Facility, and in accordance with this Term Sheet and the Financing Orders (including but not limited to execution of any additional security documents that may be reasonably requested);<br><br>7.   deliver, or cause to be delivered, such agreements, documents and instruments in furtherance of this Term Sheet and the Financing Orders as the DIP Lender may from time to time reasonably request (a) to carry out more effectively the purposes of this Term Sheet and the Financing Orders, (b) to subject to the liens created hereby any of the DIP Collateral, (c) to perfect and maintain the validity, effectiveness and priority of the liens created hereby and (d) to better assure, convey, grant, assign, transfer, preserve, protect and confirm to the DIP Lender the rights granted or now or hereafter intended to be granted to the DIP Lender under this Term Sheet and the Financing Orders; and<br><br>8.   maintain the security interest created by this Term Sheet as a perfected security interest having at least the priority required hereby and defend such security interest against all other claims and demands. |
| **Negative Covenants:** | So long as any amount remains due and outstanding under this Term Sheet or the Financing Orders, the Borrowers will not do any of the following:<br><br>1.   incur any indebtedness (other than the borrowings under the DIP Facility and obligations permitted to be incurred consistent with the Budget, any other indebtedness permitted (with prior written consent) to be incurred by the DIP Lender and the Bankruptcy Court, and any unsecured obligations incurred in the ordinary course of business by the Borrowers);<br><br>2.   incur any liens (other than liens securing indebtedness required or permitted by this Term Sheet and the Financing Orders to be secured, other liens permitted (with prior written consent) by the DIP Lender, and customary nonconsensual liens);<br><br>3. sell or transfer any assets outside the ordinary course of business, unless such sale or transfer results in the indefeasible payment in full in cash of the DIP Obligations (other than dispositions permitted (with prior written consent) by the DIP Lender);<br><br>4. use proceeds of the Carve-Out and the DIP Collateral (including the Cash Collateral) except as set forth in this Term Sheet and the Financing Orders;<br><br>5.   amend any of the Financing Orders or any Bankruptcy Court order relating to cash management or the Budget without the prior written consent of the DIP Lender in its sole and absolute discretion; |

| | |
|---|---|
| | 6.    agree to entry of any order precluding or modifying the DIP Lender's rights to credit bid up to the full amount of the outstanding DIP Obligations for the Debtors' assets; or<br><br>7.    other than the Carve-Out and as contemplated by the Financing Orders, consent to the granting of adequate protection payments or liens, superpriority administrative expense claims or liens having priority senior to or *pari passu* with those granted to the DIP Lender, except as otherwise expressly permitted by this Term Sheet or the Financing Orders. |
| **Case Milestones:** | Unless waived by the DIP Lender in its sole discretion, the failure of the Borrowers to meet the following milestones shall constitute an Event of Default:<br><br>1.    filing of the Plan no later than November 16, 2020;<br><br>2.    entry of an order confirming the Plan that is reasonably acceptable to the DIP Lender no later than January 15, 2021; and<br><br>3.    the "Effective Date" under the Plan shall have occurred no later than February 16, 2021. |
| **Events of Default:** | The term "Event of Default" as used herein means the occurrence or happening, at any time and from time to time, of any of the following:<br><br>1.    The failure by the Borrowers to perform or comply with any term, condition, covenant or obligation (other than as the result of any action or omission of the DIP Lender or RGM) contained in this Term Sheet or any of the Financing Orders which, in the case of Affirmative Covenants, continues unremedied for five (5) days after the receipt of written notice by the Borrowers.<br><br>2.    Any representation or warranty made in this Term Sheet or in any written document, statement, report, financial statement or certificate made or delivered to the DIP Lender by any of the Borrowers is untrue or incorrect in any material respect as of the date when made or deemed made.<br><br>3.    The cessation of the DIP Facility or any provision of this Term Sheet being in full force and effect or the DIP Facility or any provision of this Term Sheet being declared by the Bankruptcy Court to be null and void or the validity or enforceability of any provision of the DIP Facility or this Term Sheet being contested by any Borrower or any Borrower denying in writing that it has any further liability or obligation under any provision of the DIP Facility or the DIP Term Sheet or the DIP Lender ceasing to have the benefit of the liens granted by this Term Sheet.<br><br>4.    Except as permitted by this Term Sheet or the Financing Orders, the entry of any order of the Bankruptcy Court granting to |

any third party a claim or lien *pari passu* with or senior to that granted to the DIP Lender hereunder.

5.    Until the DIP Obligations are indefeasibly repaid in full (other than contingent obligations for which no claim has been made) and all commitments under the DIP Facility are terminated, the Borrowers shall make any payment of prepetition principal or interest or otherwise on account of any prepetition indebtedness for borrowed money or payables other than the DIP Obligations under the DIP Facility or other than as is consistent with the Budget, the Intercompany Orders, or the Financing Orders.

5.    Failure of the Borrowers to meet any of the applicable Case Milestones (other than as the result of any action or omission of the DIP Lender).

6.    The entry of an order converting the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code, or the Debtors filing a motion or not opposing a motion seeking such relief.

7.    The entry of an order dismissing the Guarantor Debtors' Chapter 11 Cases, or the Debtors filing a motion or not opposing a motion seeking such relief without the prior written consent of the DIP Lender.

8.    The entry of an order in the Chapter 11 Cases appointing any examiner having expanded powers or a trustee to operate all or any material part of the Debtors' business (other than a standing trustee under section 1183 of the Bankruptcy Code).

9.    The entry of an order in the Chapter 11 Cases granting relief from the automatic stay so as to allow a third party or third parties to proceed against any of the DIP Collateral.

10.    The entry of an order in the Chapter 11 Cases charging any of the DIP Collateral under section 506(c) of the Bankruptcy Code against the DIP Lender or the commencement of other actions by any Borrower or affiliate thereof that challenges the rights and remedies of any of the DIP Lender under the DIP Facility in any of the Chapter 11 Cases or in a manner inconsistent with this Term Sheet or the Financing Orders.

11.    Without the prior written consent of the DIP Lender and other than in respect of the DIP Facility and the Carve-Out or as expressly permitted in this Term Sheet or the Financing Orders, the bringing of any motion or taking of any action, seeking entry of an order, or the entry of an order by the Bankruptcy Court, in any of the Chapter 11 Cases (a) granting superpriority administrative expense status to any claim *pari passu* with or senior to the claims of the DIP Lender, (b) permitting the Debtors to obtain financing under section 364 of the Bankruptcy Code, (c) permitting the Debtors to grant security interests or liens under section 364 of the Bankruptcy Code, (d) permitting the Debtors to

use cash collateral under section 364 of the Bankruptcy Code or (e) authorizing the Debtors to take other actions adverse to any DIP Lender (in its role as a DIP Lender) or its rights and remedies under this Term Sheet or the Financing Orders or its interests in the DIP Collateral under section 364 of the Bankruptcy Code.

12.    There shall arise any superpriority claim in the Chapter 11 Cases which is *pari passu* with or senior to the priority of the claims of the DIP Lender, except with respect to the Carve-Out and as set forth in this Term Sheet or the Financing Orders.

13.    The Borrowers or any person claiming by or through any of the Borrowers shall obtain court authorization to commence, or shall commence, join in, assist, fail to object to after the DIP Lender so request, or otherwise participate as an adverse party in any suit or other proceeding against any DIP Lender (in its role as a DIP Lender) regarding the DIP Facility.

14.    Any Plan shall be filed by the Debtors or be confirmed in any of the Chapter 11 Cases which does not indefeasibly satisfy the DIP Obligations in full in cash or that is satisfactory to the DIP Lender in its sole discretion.

15.    The Bankruptcy Court shall enter an order authorizing the sale of all or substantially all of the assets of the Debtors unless such order contemplates indefeasible repayment in full in cash of the DIP Facility upon consummation of the sale process unless the DIP Lender consents in writing in its sole and absolute discretion.

16.    The entry of an order in the Chapter 11 Cases avoiding or permitting avoidance of any portion of the payments made on account of the obligations under the DIP Facility, this Term Sheet, the Financing Orders or any related documents or any other indebtedness provided to the Debtors by the DIP Lender, or the taking of any action by any Borrower to challenge or support a challenge of any such payments.

17.    This Term Sheet or the Financing Orders and the terms thereof shall cease to create a valid and perfected security interest and lien on the DIP Collateral (other than an immaterial portion thereof) to the extent required hereby.

18.    The Final Order does not include a waiver, in form and substance satisfactory to the DIP Lender in its sole and absolute discretion, of (a) the right to surcharge the DIP Collateral under section 506(c) of the Bankruptcy Code; and (b) the doctrine of marshaling.

19.    The filing or support of any pleading by any Borrower (or any subsidiary thereof) seeking, or otherwise consenting to, any relief the granting or prosecution of which could reasonably be expected to result in the occurrence of an Event of Default, including the support or acceptance of any bid in a 363 sale that

| | |
|---|---|
| | does not provide for the indefeasible repayment in full in cash of the DIP Facility upon consummation of the sale unless the DIP Lender consents in advance in writing. |
| | 20. Any of the Financing Orders being amended or modified without the prior written consent of the DIP Lender. |
| **Remedies:** | Notwithstanding the provisions of section 362 of the Bankruptcy Code, but subject to any applicable provisions of the Financing Orders, if any Event of Default occurs and is continuing, the DIP Lender may take any or all of the following actions: |
| | 1. declare the commitment of the DIP Lender to make DIP Loans and consent to use of Cash Collateral to be terminated, whereupon such commitment and consent shall be terminated; |
| | 2. declare the unpaid amount of the DIP Obligations, all interest accrued and unpaid thereon, and all other amounts owing or payable under this Term Sheet and the Financing Orders to be immediately due and payable, without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Borrowers; or |
| | 3. take any other action or exercise any other right or remedy (including, without limitation, with respect to the liens in favor of the DIP Lender and including as set forth above under the "Credit Bidding" section) permitted under this Term Sheet or the Financing Orders, or by applicable law (including, without limitation, the rights of a secured creditor under the Uniform Commercial Code). |
| **Professional Fees and Expenses** | All reasonable and documented professional fees and out-of-pocket expenses incurred by the DIP Lender in connection with the establishment of the DIP Facility, including, without limitation, the negotiation, preparation, execution, delivery, performance and administration of this Term Sheet and the related documentation (including, but not limited to, the fees and expenses of the DIP Lender's counsel), and including expenses incurred in connection with defending the validity and enforceability of the DIP Obligations or any of the liens or adequate protection securing the same, shall be DIP Obligations. |
| **Additional Debtors:** | Additional Debtors may become Borrowers under this Term Sheet and the Financing Orders subject to (i) execution of a joinder to this Term Sheet executed by such Debtor and the DIP Lender, (ii) submission by the new Debtor of a joinder motion with a revised Budget (as defined below) acceptable to the Borrowers and the DIP Lender, and (iii) entry of an order by the Bankruptcy Court approving the joinder motion of the new Debtor. |
| **Amendments and Waivers; Assignments:** | Except as otherwise provided herein or therein, the provisions of this Term Sheet and the Financing Orders may not be amended or waived without the written consent of the DIP Lender. This Term |

| | |
|---|---|
| | Sheet shall be binding upon each party hereto and its respective successors and permitted assigns and shall inure to the benefit of the DIP Lender and the successors and permitted assigns of the DIP Lender. No other person or entity shall be a direct or indirect legal beneficiary of or have any direct or indirect cause of action or claim in connection with, this Term Sheet or any related documentation. The rights and obligations of the Borrowers hereunder may not be assigned by the Borrowers without the prior written consent of the DIP Lender, which consent may be grated or withheld in the DIP Lender's sole discretion.<br><br>The rights and remedies of the DIP Lender expressly set forth herein and in the related documentation are cumulative and in addition to, and not exclusive of, all other rights and remedies available at law, in equity or otherwise. No failure or delay on the part of the DIP Lender in exercising any right, power or privilege shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or privilege preclude any other or further exercise thereof or the exercise of any other right, power or privilege or be construed to be a waiver of any default or Event of Default. |
| **Governing Law:** | New York and the Bankruptcy Code. |
| **Miscellaneous:** | All payments to be made to the DIP Lender hereunder shall be made in the lawful money of the United States of America in immediately available funds.<br><br>Each party hereto hereby consents and agrees that the state and federal courts located in the State of New York shall have jurisdiction to hear and determine any claims or disputes between the parties hereto pertaining to this Term Sheet or any related documentation or to any matter arising out of or relating to this Term Sheet or any related documentation; *provided* that during the Chapter 11 Cases the Bankruptcy Court shall have exclusive jurisdiction to hear and determine any claims or disputes between the parties hereto pertaining to this Term Sheet or any related documentation or to any matter arising out of or relating to this Term Sheet or any related documentation; *provided, further* that nothing in this Term Sheet shall be deemed to operate to preclude the DIP Lender from bringing suit or taking other legal action in any other jurisdiction to realize on any security for the DIP Obligations, or to enforce a judgment or other court order in favor of the DIP Lender. The Borrowers hereby expressly submit and consent in advance to such jurisdiction in any action or suit commenced in any such court, and the Borrowers hereby waive any objection that the Borrowers may have based upon lack of personal jurisdiction, improper venue or *forum non conveniens* and hereby consent to the granting of such legal or equitable relief as is deemed appropriate by such court.<br><br>Each party hereto hereby waives, to the fullest extent permitted by applicable law, any right to jury trial with respect to any claim, |

demand, action or cause of action arising under this Term Sheet and the related documentation or in any way connected with or related to the dealings in respect hereof or thereof, in each case whether now existing or hereafter arising, and whether in contract, tort, equity or otherwise.

In case any provision in or obligation hereunder or in any related document shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

Each Borrower hereby waives presentment for payment, protest, demand, notice of protest, notice of nonpayment and diligence with respect to this Term Sheet and related documentation, and waives and renounces all rights to the benefits of any statute of limitations or any moratorium, appraisement, exemption, or homestead now provided or that hereafter may be provided by any federal or applicable state statute, including but not limited to exemptions provided by or allowed under the Bankruptcy Code, both as to itself and as to all of its property, whether real or personal, against the enforcement and collection of the DIP Obligations and any and all extensions, renewals, and modifications hereof.

The words "include," "includes" and "including" shall be deemed to be followed by the phrase "without limitation," whether or not so expressly stated in each such instance and the term "or" has, except where otherwise indicated, the inclusive meaning represented by the phrase "and/or." The word "will" shall be construed to have the same meaning and effect as the word "shall." Unless the context requires otherwise, (a) any definition of or reference to any agreement, instrument or other document herein shall be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth herein), and any reference to any statute or regulation shall be construed as including all statutory and regulatory provisions amending, replacing, supplementing or interpreting such statute or regulation, (b) any reference herein to any person or entity shall be construed to include such person's or such entity's successors and permitted assigns, and (c) the words "herein," "hereof" and "hereunder," and words of similar import, shall be construed to refer to this Term Sheet in its entirety and not to any particular provision hereof.

This Term Sheet and related documentation are the result of negotiations among and have been reviewed by counsel to each party hereto and thereto and are the products of all parties. Accordingly, such documentation shall not be construed against the DIP Lender merely because of the DIP Lender's involvement

| | in their preparation. |
| --- | --- |
| | This Term Sheet may be executed in any number of counterparts and by the different parties hereto on separate counterparts and each such counterpart shall be deemed to be an original, but all such counterparts shall together constitute but one and the same agreement. Receipt by telecopy or electronic transmission of any executed signature page to this Term Sheet or any related documentation shall constitute effective delivery of such signature page. This Term Sheet, together with the Financing Orders and related documentation, embodies the entire agreement and understanding among the parties hereto and supersedes all prior or contemporaneous agreements and understandings of such parties, verbal or written, relating to the subject matter hereof and thereof. |

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, the parties hereto have caused this Term Sheet to be executed as of the date first set forth above.

BORROWERS:

RGN-NATIONAL BUSINESS CENTERS, LLC, a Delaware limited liability company
H WORK, LLC, a Delaware limited liability company
RGN-COLUMBUS IV, LLC, a Delaware limited liability company
RGN-CHAPEL HILL II, LLC, a Delaware limited liability company
RGN-CHICAGO XVI, LLC, a Delaware limited liability company
RGN-FORT LAUDERDALE III, LLC, a Delaware limited liability company

By:_____
Name: James S. Feltman
Title: Debtors' Representative

Address of the Borrowers: 3000 Kellway Drive, Suite 140, Carrollton, Texas 75006

**DIP LENDER:**

REGUS CORPORATION, a Delaware corporation

By:_____
Name:
Title:

## **Exhibit A**

To be Provided

## Schedule 1

Debt to Regus Corporation
(as of June 30, 2020, the date of best available data)

| | |
|---|---|
| RGN-Columbus IV, LLC | $1,200,367 |
| RGN-Chapel Hill II, LLC | $1,623,085 |
| RGN-Chicago XVI, LLC | $1,834,811 |
| RGN-Fort Lauderdale III, LLC | $476,419 |
| RGN-Group Holdings, LLC | $467,000,000 |
| RGN-National Business Centers, LLC | $0 |
| H Work, LLC | $0 |