# Exhibit II

Changed-Pages Blackline

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| RGN-GROUP HOLDINGS, LLC, a Delaware limited liability company, *et al.*[1] | Case No. 20-11961 (BLS)<br>(Jointly Administered) |
| Debtors. | Re: D.I. ——75 |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS
TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE
DEBTORS' USE OF CASH COLLATERAL, (III) GRANTING
ADEQUATE PROTECTION, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the above referenced debtors and debtors in possession (collectively, the "Debtors") in the above-referenced chapter 11 cases (the "Chapter 11 Cases"), for entry of an interim order (this "Interim Order") and a final order ("Final Order"), pursuant to sections 105, 361, 362, 363, 364 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking, *inter alia*:

(i)      authorization for the Debtors to obtain up to $17,500,000 in aggregate principal amount of postpetition financing (the "DIP Facility"), and to access up to $7,500,000 in the aggregate in the interim and pending a final hearing, all on the terms and conditions set forth in this Interim Order and that certain DIP Facility Term Sheet (the "DIP Term Sheet," substantially in the form attached hereto as Exhibit A and together with this Interim Order and the DIP

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's Federal Employer Identification Numbers ("FEIN"), where applicable are as follows: RGN-Group Holdings, LLC, RGN-National Business Centers, LLC (7723), H Work, LLC (4516), RGN-Columbus IV, LLC, RGN-Chapel Hill II, LLC, RGN-Chicago XVI, LLC, and RGN-Fort Lauderdale III~~, LLC, RGN-Chevy Chase I, LLC, and RGN-Seattle XII~~, LLC.  The aforementioned Debtors that do not include a FEIN are disregarded entities for tax purposes and do not have FEINs.  The mailing address for the Debtors is 3000 Kellway Drive, Suite 140, Carrollton, Texas 75006 (Attn: James S. Feltman, Responsible Officer).

26909562.7

{
ACTIVE.124903568.04

(vi) modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order and the Final Order;

(vii) waiver of any applicable stay with respect to the effectiveness and enforceability of the Interim Order or the Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h)); and

(viii) related relief.

and an interim hearing having been held by this Court on [~~_____~~]August 31, 2020 (the "Interim Hearing"); and pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, due and sufficient notice of the Motion and the relief sought at the Interim Hearing having been given under the particular circumstances by the Debtors; this Court having considered the Motion and all pleadings related thereto, including the record made by the Debtors at the Interim Hearing; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS AS FOLLOWS:**

A. Between July 30, 2020 and August 17, 2020 and (as to the applicable Debtor, the "Petition Date"), each applicable Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B. On July 31, 2020, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed Natasha Songonuga to serve as the trustee under section 1183(a) of the Bankruptcy Code (the "Subchapter V Trustee") for Columbus IV. The U.S. Trustee subsequently appointed Ms. Songonuga as the Subchapter V Trustee for RGN-Chapel Hill II, LLC and RGN-Chicago XVI, LLC on August 10, 2020, and for RGN-Fort Lauderdale III, LLC on August 13, 2020. The U.S. Trustee subsequently appointed Ms.

4

applicable,[4] (A) to the extent a lien on any property is valid, perfected, and not avoidable, (B) the lien on such property (or the proceeds of such property, as applicable) on the Petition Date is a valid, perfected and non-avoidable Permitted Lien (as defined in the Prepetition Credit Agreement) senior in priority to the prepetition liens on such property or (C) valid, non-avoidable liens that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (the foregoing clauses (A)-(C) being referred to collectively as the "Permitted Prior Senior Liens");

(c) a first priority security interest and lien pursuant to section 364(c)(2) of the Bankruptcy Code on all unencumbered property of the Debtor and its estate (the "Section 364(c)(2) Liens"), including, subject to entry of the Final Order, Avoidance Action Proceeds, but excluding any lease of, or leasehold ~~interest that may not be encumbered without the consent of the applicable landlord or any other third party~~or other interest in, any non-residential real property (each, an "Excluded ~~Lease~~Real Property Interest"); provided, however, that the Section 364(c)(2) Liens shall encumber any proceeds or income from or in connection with any Excluded ~~Lease~~Real Property Interest, which Section 364(c)(2) Liens shall be subject only to the Carve-Out~~,~~; and

(d) a junior security interest and lien pursuant to section 364(c)(3) of the Bankruptcy Code on all property of the Debtor and its estate that is subject to a Permitted Prior Senior Lien, if any (collectively, the "Section 364(c)(3) Liens"), which Section 364(c)(3) Liens are also subject to the Carve-Out. The Section 364(d)(1) Liens, Section 364(c)(2) Liens, and Section 364(c)(3) Liens shall be collectively referred to as the "DIP Liens."

---

[4] Debtors have represented that there are no existing prior liens on the Debtors' property except the liens in favor of the Prepetition Secured Party.

11. <u>DIP Collateral</u>. The DIP Liens of the DIP Lender under the DIP Loan Documents and as approved and perfected by this Interim Order include, <u>inter</u> <u>alia</u>, liens upon and security interests in (i) all of those items and types of collateral in which security interests may be created under Article 9 of the Uniform Commercial Code, (ii) to the extent not expressly prohibited by law or contract, all of those items and types of collateral not governed by Article 9 of the Uniform Commercial Code, including, without limitation, licenses issued by any federal or state regulatory authority, any leasehold or other real property interests <u>(other than Excluded Real Property Interests)</u>, and commercial tort claims of each Debtor, (iii) any and all other collateral of any nature or form, and (iv) the products, rents, offspring, profits, and proceeds of any of the foregoing (collectively, (i)-(iv), the "<u>DIP Collateral</u>"). None of the DIP Obligations, DIP Liens or DIP Superpriority Claims shall (a) be subject to or *pari passu* with any lien or security interest that is avoided and preserved for the benefit of any Debtor's estate under section 551 of the Bankruptcy Code, (b) be subject to or *pari passu* with any inter-company claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, (c) be subject to sections 510, 549, or 550 of the Bankruptcy Code or (d) hereafter be subordinated to or made *pari passu* with any other lien or security interest under sections 361, 363 or 364 of the Bankruptcy Code or otherwise, except as expressly provided in this Interim Order.

12. <u>Carve-Out</u>.

(a) <u>Generally</u>. The DIP Liens, the DIP Superpriority Claims, the liens of the Prepetition Secured Party, the Adequate Protection Liens (defined below), and the Section 507(b) Claims (defined below) of the Prepetition Secured Party, shall be subject to the payment, without duplication, of the following fees and expenses (the amounts set forth below, together

18. <u>Adequate Protection</u>.  The Prepetition Secured Party agrees, and this Court finds, that the adequate protection provided in this Interim Order (the "<u>Adequate Protection</u>") is reasonable and calculated to protect the interests of the Prepetition Secured Party. Notwithstanding any other provision hereof, the grant of Adequate Protection to the Prepetition Secured Party pursuant hereto is without prejudice to the right of the Prepetition Secured Party to seek adequate protection or to seek modification of a grant of Adequate Protection provided in this Interim Order so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such request.

(a) <u>Adequate Protection Liens</u>.  As adequate protection, the Prepetition Secured Party, in accordance with sections 361, 363(e) and 364(d) of the Bankruptcy Code, is hereby granted valid, binding, enforceable and perfected security interests and replacement liens (the "<u>Adequate Protection Liens</u>") upon all of the Debtors' assets, including (effective upon the entry of the Final Order) Avoidance Action Proceeds, but excluding any Excluded ~~Lease~~<u>Real Property Interest</u>; provided, however, that the Adequate Protection Liens shall encumber any proceeds or income from or in connection with any Excluded ~~Lease~~<u>Real Property Interest</u>, in each case to secure the Prepetition Secured Obligations of such Debtor against, without duplication, the aggregate diminution, if any, subsequent to the Petition Date, in the value of the applicable Prepetition Collateral by:  (i) the reduction in Prepetition Collateral available to satisfy the Prepetition Secured Obligations as a consequence of the priming of the Prepetition Secured Obligations by the DIP Obligations; (ii) depreciation, use, sale, loss, decline in market price or otherwise of the Prepetition Collateral as a consequence of the use, sale or lease of the Prepetition Collateral by the applicable Debtor or as a result of the imposition of the automatic stay; and (iii) the sum of the aggregate amount of all Cash Collateral and the aggregate value of

Liens, DIP Superpriority Claims, Adequate Protection Liens, Section 507(b) Claims, and the Carve-Out.

30. <u>Order Governs</u>.  In the event of any conflict between the provisions of this Interim Order and the DIP Loan Documents, the Motion, or any supporting documents (including, without limitation, with respect to Excluded Real Property Interests), the provisions of this Interim Order shall control and govern to the extent of such conflicts.

31. <u>Right to Credit Bid</u>.  Pursuant to section 363(k) of the Bankruptcy Code, (i) the DIP Lender shall have the exclusive right to use the DIP Obligations, DIP Liens and DIP Superpriority Claim to credit bid with respect to any bulk or piecemeal sale of all or any portion of the DIP Collateral, and (ii) subject to entry of the Final Order and the rights of the Chapter 5 Trustee or any Committee under paragraph 15, the Prepetition Secured Party shall have the exclusive right to use the Prepetition Secured Obligations and the Prepetition Adequate Protection Liens and Section 507(b) Claims to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Prepetition Collateral.

32. <u>No Marshaling</u>.  Subject to entry of the Final Order, none of the DIP Lender, DIP Collateral, Prepetition Secured Party or Prepetition Collateral shall be subject to the doctrine of marshaling or any similar doctrine or law of any jurisdiction requiring the recovery upon or application to any indebtedness of any collateral or proceeds in any particular order or action.

33. <u>Waiver of Requirement to File Proofs of Claim</u>.

(a) The DIP Lender shall not be required to file proofs of claim in the Chapter 11 Cases or, subject to the entry of the Final Order, any successor chapter 7 cases, in order to maintain its claims for payment of the DIP Obligations under the applicable DIP Loan Documents.  The statements of claim in respect of the DIP Obligations set forth in this Interim

37. <u>Non-Debtors Not Subject to this Order.</u>  For the avoidance of doubt and notwithstanding anything to the contrary contained herein or in the Motion, nothing in this Interim Order shall (i) constitute a finding or determination with respect to the validity, amount, priority, or enforceability of any debt to Regus by any entity other than the Debtors, (ii) authorize, provide for, or result in the encumbrance of any property of any entity other than the Debtors, or (iii) authorize, provide for, or result in the incurrence of any debt by any entity other than the Debtors.