**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| RGN-GROUP HOLDINGS, LLC, *et al.*,[1] | Case No. 20-11961 (BLS) |
| | (Jointly Administered) |
| Debtors. | **Obj. Deadline: June 7, 2021 at 4:00 p.m. (ET)**<br>**Hearing Date: To be addressed at status conference on May 24, 2021** |

**DEBTORS' OBJECTION TO PROOF OF CLAIM NO. 10268 FILED BY TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this objection seeking entry of an order, substantially in the form of the Order filed contemporaneously with this Objections (the "Order"), disallowing and expunging Proof of Claim No. 10268 (the "Proof of Claim" of "Claim"), filed by Teachers Insurance and Annuity Association of America (the "Claimant"). In further support of this objection, the Debtors respectfully state as follows:[2]

## Introduction

1. On December 18, 2020, Teachers Insurance and Annuity Association of America, ("TIAAA" or "Claimant") filed a Proof of Claim purporting to assert an amount of approximately $32.1 million based on an alleged breach of a commercial lease agreement (the "Lease") between

---

[1] The mailing address for the Debtors in these chapter 11 cases is 3000 Kellway Drive, Suite 140, Carrollton, Texas 75006 (Attn: James S. Feltman, Responsible Officer). Due to the large number of Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors is not provided herein. A complete list of the Debtors along with the last four digits of their tax identification numbers, where applicable, may be obtained on the website of the Debtors' noticing and claims agent at https://dm.epiq11.com/case/rgn/info or by contacting the proposed special conflicts counsel for the Debtors (Amanda Hrycak, paralegal, at ahrycak@ashbygeddes.com).

[2] To the extent additional evidence is necessary to support the relief requested herein, the Debtors will so provide in advance of the hearing on the Objection, if any.

TIAAA and RGN-Dallas IX, LLC ("RGN"). TIAAA contends H Work, LLC ("H-Work", formerly HQ Global Workspaces LLC or "HQ") is liable for the Claim because RGN succeeded HQ's interest as tenant under the Lease but remained fully obligated under the lease and all subsequent amendments thereto.

2.      But TIAAA's claim is without merit for multiple reasons. Most importantly, HQ never agreed to be bound by the Ninth Amendment, which is the amendment upon which TIAAA premises its Proof of Claim.  The Court need not even evaluate whether RGN defaulted on the Lease because TIAAA's entire Claim against H-Work is barred by common law contract principles. The Lease at issue has been amended nine times from the date of its inception to the present version, the Ninth Amendment to the Lease. These amendments modified material obligations under the Lease, and the Ninth Amendment modified the physical location of the premises, the lease term, and the amount of the rent obligation. HQ assigned its rights and obligations as tenant under the Lease to RGN during the duration of the Seventh Amendment to the Lease, which terminated HQ's privity of estate with TIAAA. As the Seventh Amendment's term came to a close, TIAAA and RGN alone then entered into the Eighth and Ninth Amendments to the Lease. Upon entering into the Eighth Amendment to the Lease, HQ's privity of contract with TIAAA was terminated as well. Without privity of contract or privity of estate with H-Work, TIAAA has no legal right to raise claims arising under the Eighth or Ninth Amendments to the Lease against H-Work.

3.      Even if H-Work is liable for RGN's obligations under the Ninth Amendment to the Lease, which it is not, TIAAA cannot meet its burden to demonstrate that RGN defaulted on the Lease. TIAAA will be unable to prove RGN defaulted on the Lease because the Ninth Amendment

to the Lease never went into effect. As such, TIAAA has no entitlement to the remedies prescribed by the Ninth Amendment, which TIAAA seeks in its Proof of Claim.

4. Furthermore, TIAAA's claim violates well-established principles of equity under Texas law[3] because the alleged breach of the Lease—and TIAAA's purported entitlement of over $32 million—resulted from a rental payment that was only ***one business-day late***, and TIAAA's own opportunistic refusal to accept that $49,970.48 rental payment after having accepted prior payments under similar circumstances. To now argue that TIAAA was entitled to terminate RGN's right of possession, and the Lease itself, and demand payment of not only out-of-pocket damages but also benefit-of-the-bargain damages (*i.e.*, total future rent) violates principles of equity, which are designed to protect against the harsh result TIAAA seeks.

5. Even assuming, *arguendo*, that TIAAA's claim is not disallowed or expunged in its entirety, other defenses arising under Texas law, the Lease itself, and the Bankruptcy Code (as defined herein) would significantly diminish TIAAA's exorbitant damages claims. ***First***, TIAAA seeks both out-of-pocket and benefit-of-the-bargain damages in its Proof of Claim. Texas law expressly prohibits such an award of damages as an impermissible double recovery. ***Second***, because TIAAA purported to terminate the Lease itself—and not solely RGN's right of possession—TIAAA cannot seek future rental payments under the plain language of the Lease. ***Third***, even if TIAAA has a right to future rental payments under the Lease, and it does not, TIAAA has a statutory and common law duty to mitigate damages. TIAAA even acknowledges

[3] Section 502(b)(1) of the Bankruptcy Code disallows any claim that is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). The Supreme Court has interpreted this provision consistent with the principle that state law governs the substance of creditors' claims, subject to any qualifying or contrary provisions in the Bankruptcy Code. *See Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450–51 (2007); *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 (2000). And so, because the Lease contains a governing law provision requiring the Lease to be "interpreted, construed, and enforced" under Texas law, *see* Orig. Lease § 37, the validity of TIAAA's claims must be examined under Texas law.

its duty to mitigate in its Proof of Claim, yet TIAAA still claims all future rental payments under the Lease. ***Fourth***, section 502(b)(6) of the Bankruptcy Code provides a separate statutory damages cap, which limits TIAAA damages claim further.

6. As such, H-Work moves to disallow TIAAA's Proof of Claim in its entirety or, in the alternative, challenges TIAAA's alleged entitlement to the full amount of damages claimed.

**Jurisdiction and Venue**

7. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (the "Amended Standing Order"). The Debtors confirm their consent, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

8. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9. The bases for the relief requested herein are section 502(b) of chapter 11 of title 11 of the United States Code 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 3001, 3003, and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 3007-1.

**Scheduling Conference Requested**

10. The Debtors respectfully request that the Court hold a scheduling conference related to this Objection on **May 24, 2021 at 9:30 a.m. prevailing Eastern Time**. The Debtors have corresponded with counsel for the Claimant with respect to holding a scheduling conference

at such time and understand that the Claimant does not object to such request. Given the significant amount of liability asserted by the Claimant, the Debtors are seeking prompt resolution of the Claim, as such resolution will potentially influence the direction of the Debtors' restructuring efforts in the coming weeks.[4] The Debtors therefore seek to hold a hearing with respect to this Objection as soon as is practicable after the scheduling conference, and in no event later than June 21, 2021.

## Background

11. The Debtors are direct or indirect subsidiaries of Regus Corporation, a Delaware corporation that, together with its affiliates, offers a network of on-demand office and co-working spaces, and ancillary services and support, to a variety of clients across a host of industries in over 1,000 locations in the United States and Canada.[5] Exhibit A, ¶2 (Declaration of Michael Osburn).

12. On August 17, 2020, RGN-Group Holdings, LLC, RGN-National Business Centers, LLC, and H Work, LLC each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. Additional Debtors (collectively, the "SPE Debtors") have commenced voluntary cases under chapter 11 of the Bankruptcy Code periodically throughout the

---

4 The Debtors' current milestone to file a plan of reorganization under the Debtors' postpetition financing facility is May 31, 2021. Docket No. 1182. The Debtors' current milestones for entry of an order confirming a plan of reorganization and the effective date of a plan of reorganization are July 23, 2021, and July 30, 2021, respectively. Docket No. 1101.

5 Information regarding the Debtors' history and business operations, their capital structure, and the events leading up to the commencement of these chapter 11 cases is set forth in the declarations of James S. Feltman filed on August 17 and August 25, 2020 [Docket Nos. 3, 59].

duration of these chapter 11 cases.[6] As used herein, the term "Petition Date" refers to the date of commencement of a given Debtor's chapter 11 case.

13. The Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. On September 21, 2020, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "UCC") pursuant to section 1102 of the Bankruptcy Code [Docket No. 291]. As of the date hereof, there have been no requests for the appointment of a chapter 11 trustee or an examiner.

**The Claimant's Proof of Claim**

14. The Claimant is the landlord of RGN-Dallas IX, LLC, a non-debtor center and affiliate of the Debtors. H-Work is a predecessor in interest to RGN under that certain Office Lease Agreement dated October 12, 1987 (as amended from time to time). Exhibit A, ¶¶5-6.

15. On October 12, 1987, Metropolitan Life Insurance Company ("Met"), predecessor in interest to TIAAA, and ESP – Executive Services Plus of Texas, Inc. ("ESP"), predecessor in interest to H-Work, entered into the Lease for approximately 18,254 square feet of Rentable Area in the building known as Three Lincoln Centre (the "Building"), located at 5430 LBJ Freeway, Dallas, Texas, being a part of the office complex commonly known as the Lincoln Centre. Exhibit A-1.

16. The Lease was amended four times between the original parties. *Id.*

[6] The first of the SPE Debtors commenced its chapter 11 case on July 30, 2020. As of the filing of this motion, 103 SPE Debtors have commenced voluntary cases under chapter 11 of the Bankruptcy Code that are pending before this Court. The Court has entered orders dismissing the chapter 11 cases of (a) RGN-Chapel Hill II, LLC on October 16, 2020 [Docket No. 437], (b) RGN-Costa Mesa II, LLC and RGN-Tampa III, LLC on October 27, 2020 [Docket No. 601], and (c) RGN-Austin XIII, LLC on December 10, 2020 [Docket No. 775].

17. HQ succeeded to the interest of ESP under the Lease and a Fifth Amendment to the Lease was executed between HQ and Met. *Id.* Pursuant to the Fifth Amendment, HQ relocated to approximately 17,485 square feet of Rentable Area (the "Current Premises") located on the 12th Floor of the Building. *Id.*

18. Thereafter, TIAAA purchased the Building and succeeded to the interest of Met (and is currently the landlord of the Building). *Id.*

*19.* A Sixth Amendment to the Lease was executed between TIAAA and HQ in 2007, followed by a Seventh Amendment to the Lease on October 26, 2012. *Id.*

20. Effective as of May 31, 2014, HQ—now known as H-Work—assigned all of its rights under the Lease to RGN, and RGN assumed the corresponding obligations and liabilities under the Lease. Exhibit A-2 (Assignment and Assumption of Lease).

21. Thereafter, RGN and TIAAA executed an Eighth Amendment to the Lease on July 26, 2019 to expire on July 31, 2020. Notably, HQ was ***not*** a party to this Amendment. Exhibit A-3 (Eighth Amendment).

22. Shortly after executing the Eighth Amendment, RGN and TIAAA engaged in discussions about relocating and expanding the leased premises to another building in the same complex that had approximately 60,000 square feet of leasable space. Exhibit A, at ¶7. Eventually, the parties came to an agreement and executed the Ninth Amendment on December 19, 2019, which provided that RGN would relocate the leased premises to 59,788 square feet in another office building also owned by TIAAA located at 5400 LBJ Freeway, Dallas, Texas 75240 (hereinafter "New Premises"). HQ was similarly ***not*** a party to this Amendment. *Id.*

23.    The Ninth Amendment also extended the term of the Lease, setting the Lease to expire on the last day of the 156th full calendar month following the Relocation Date—which is calculated as follows:

> the earlier of (i) the date on which Tenant occupies any portion of the Relocation Premises and begins conducting business therein (it being understood that entry by Tenant for purposes of installing improvements, moving in furniture, conducting space tours, designing or constructing the Work and readying the Relocation Premises for the opening of its business shall not constitute commencing business operations), or (ii) the later of (x) one hundred thirty-five (135) days following the Delivery Date (hereinafter defined) (the "Construction Period") or (y) the date Landlord Substantially Completes the Landlord Work ("Renovation Date").

Exhibit A-4 (Ninth Amendment § 2).

24.    According to the Ninth Amendment to the Lease, TIAAA anticipated delivering the new premises to RGN by February 1, 2020 but later amended that date to April 15, 2020. *See id.* § 3c; Exhibit A-5 (Letter Agreement).

25.    The Ninth Amendment further provides, in part, that on the Relocation Date, the base Rental shall be the following:

| Period | Annual Base Rental | Monthly Base Rental |
|---|---|---|
| 1 – 12 | $0.00 | $0.00 |
| 13 – 24 | $28.00* | $106,799 |
| 25 – 30 | $28.75* | $109,658.68 |
| 31 – 36 | $28.75 | $143,242.08 |
| 37 – 48 | $29.50 | $146,978.83 |

*See* Exhibit A-4 § 4.

26.    Accordingly, beginning on the Relocation Date and for 12 months thereafter, RGN's base rent was **$0.00**.  Pursuant to the Ninth Amendment, effective as of the Relocation

Date, the Lease terminated as to the Current Premises and any further obligations relating to the Current Premises is governed by Section 3b, which if applicable, would consider RGN a holdover tenant subject to Section 27 of the originally executed Lease. *Id*. §§ 3a and b.

27. In addition to having no rent payments for a year pursuant to the Ninth Amendment, TIAAA also agreed to pay Tenant a construction allowance in the amount of $4,787,360.00 as a Construction Allowance. *See id. at* Ex. B to Ninth Am. Lease § 10.

28. TIAAA never delivered the New Premises to RGN, and RGN never occupied the New Premises. Indeed, TIAAA never funded any portion of the Construction Allowance required pursuant to the Ninth Amendment to the Lease. Exhibit A, at ¶11.

29. On October 16, 2020, without any prior notice to RGN, TIAAA placed locks on each of the office spaces leased by RGN, prohibiting RGN and its numerous business customers from accessing and utilizing the office space. Exhibit A-6. TIAAA had placed a notice on the door stating that the premises were locked due to non-payment of rent. Exhibit A, at ¶12.

30. On Saturday, October 17, 2020, RGN was informed by one of its customers that the customer was unable to enter its office space due to the locks on the doors. *Id.* at 13. This was RGN's first time learning that locks had been placed on the office doors. *Id.*

31. After arriving on the Current Premises that same day, RGN called the number referenced on the notice and left a voice message, informing TIAAA that RGN would wire the payment first thing Monday morning. *Id.* at 14. Indeed, on that next Monday morning, October 19, 2020, RGN wired $49,970.48 to TIAAA. *Id.*

32. That same day, shortly after wiring the funds, RGN received by mail TIAAA's notice of termination of the Lease and RGN's possession of the Current Premises, alleging that

RGN was in default for failure to pay its rent and that as a result, TIAAA was terminating the Lease pursuant to Section 25(b) of the agreement. *Id.* at 15.

33.     Over the course of the Lease term, RGN had consistently and timely paid its rents. There had only been one prior occasion where RGN's payments were slightly late due to a clerical error in its payment accounting program. *Id.* at 16.

34.     To elaborate, RGN uses an internal accounting program that sends upcoming payment notifications based on the terms of the lease. *Id.* at 17.   In this instance, due to the impending relocation of the leased premises and the lease term calculation under the Ninth Amendment, the lease term in RGN's accounting system was set to expire on July 31, 2020. *Id.* Accordingly, after this date, RGN's system did not send any notifications regarding rent charges due on the Lease and missed its payments for August and September. *Id.*

35.     And so, because TIAAA failed to deliver the New Premises to RGN prior to the expiration of the Eighth Amendment to the Lease, no other date was entered into the system because such date was undetermined. *Id.* at 18.

36.     However, TIAAA notified RGN in September that the payments for August and September had not come through, and RGN immediately wired the funds necessary to pay the owed amounts and thereafter attempted to fix the error in its system – funds that TIAAA accepted without further comment or any objection. *Id.* at 19. TIAAA's action in locking out RGN and its many business customers who physically or virtually occupied office spaces in the Building is wholly inconsistent with TIAAA's prior conduct in providing RGN notice and the opportunity to cure, which RGN immediately did. *Id.*

37.     TIAAA failed to provide such notice to RGN to cure the alleged default in connection with the October error, which was the result of the same accounting issue that occurred

in the prior month. *Id.* at 20. Upon learning of this same mistake, RGN promptly tendered payment to TIAAA for the full amount of October's rent. *Id.*

38. TIAAA ***initially accepted the rent payment on October 17, 2020***, but eventually attempted to return the payment by way of check on October 22, 2020 (which RGN did not negotiate) and continued its efforts to evict RGN from the Current Premises. *Id.* at 21.

39. From October 2020 to April 2021, RGN continued making its rental payments under the Lease, but TIAAA rejected them. *Id.* at 22.

40. On November 2, 2020, Claimant filed a Petition for Eviction in the case captioned *Teachers Insurance and Annuity Association of America v. RGN-Dallas IX, LLC*, Case No. JE-20-01431-A. The Justice of the Peace Court issued an eviction order on November 16, 2020.

41. On December 18, 2020, the Claimant filed a Proof of Claim against H-Work asserting approximately $32.1 million in damages arising from the Lease's termination. *See* Exhibit B (Proof of Claim). The Claimant asserts approximately $20,000 in damages for "unpaid rent due as of the termination date," $5.8 million for "breach damages due from termination date to recover and relet premises," and $26.3 million for "breach damages due from termination date to expected lease expiration date." *Id.* at p. 2-3 of Statement of Claim.

42. On May 6, 2021, RGN filed suit (in the case captioned *RGN-Dallas IX, LLC v. Teachers Insurance and Annuity Association of America*, Cause No. CC-21-01761-D) against Claimant seeking declaratory relief and alleging *inter alia* breach of contract, wrongful termination of the Lease, and wrongful eviction pursuant to Section 93.002 of the Texas Property Code.

43. The amounts asserted in the Claim are not only unsupported by relevant law, but also unduly dominate the remaining holders of general unsecured claims against the Debtors. The

Claim should therefore be disallowed and expunged pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007.

**Relief Requested**

44. The Debtors request entry of an Order disallowing and expunging the Claim in its entirety.

**Objection**

45. A chapter 11 debtor "has the duty to object to the allowance of any claim that is improper." *Int'l Yacht & Tennis, Inc. v. Wasserman Tennis, Inc. (In re Int'l Yacht & Tennis, Inc.)*, 922 F.2d 659, 661–62 (11th Cir. 1991). *See also* 11 U.S.C. §§ 704(a)(5), 1106(a)(1), and 1107(a).

46. Section 502(a) of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). The burden of proof for determining the validity of claims rests on different parties at different stages of the objection process. As explained by the United States Court of Appeals for the Third Circuit:

> The burden of proof for claims brought in the bankruptcy court under 11 U.S.C.A. § 502(a) rests on different parties at different times. Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is '*prima facie*' valid [citations omitted]. In other words, a claim that alleges facts sufficient to support legal liability to the claimant satisfies the claimants' initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. . . . In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.

*In re Allegheny Int'l Inc.,* 954 F.2d 167, 173–74 (3d. Cir. 1992) (internal citations omitted). Once the *prima facie* validity of a claim is rebutted, "it is for the claimant to prove his claim, not for the

objector to disprove it." *In re Kahn*, 114 B.R. 40, 44 (Bankr. S.D.N.Y. 1990) (internal citations and quotations omitted).

## I. The Court Should Disallow TIAAA's Proof of Claim in its Entirety Because it is Unsupported by Law and Principles of Equity.

### *A. TIAAA's Claim Against H-Work is Invalid Because H-Work is Neither in Privity of Estate Nor Privity of Contract with TIAAA.*

47. On May 31, 2014, HQ assigned all of its right, title, and interest under the Lease to RGN, and RGN assumed all obligations, liabilities, responsibilities, undertakings, covenants, and agreements of HQ under the Lease. *See* Exhibit A-2. Under Texas law, an assignor's contractual obligations survive assignment unless the contract expressly provides otherwise, or the assignor obtains an express release. *See Seagull Energy E & P, Inc. v. Eland Energy*, 207 S.W.3d 342, 345, 346-47 (Tex. 2006) ("Generally speaking, a party cannot escape its obligations under a contract merely by assigning the contract to a third party."). It is likely on this basis that TIAAA claims H-Work is liable for RGN's alleged default.

48. But HQ never agreed to the Eighth and Ninth Amendments to the Lease. Those amendments created, in effect, new Leases between RGN and TIAAA. The tenant's obligations under the Lease materially changed between the Seventh, Eighth and Ninth Amendments to the Lease. For example, in the Ninth Amendment to the Lease, RGN agreed to lease a Rental Area in a different building containing more than three times the square footage as the Current Premises under dramatically different payment terms and for a substantially longer period of time.[7]

[7] Aside from the contractual "Premises" changing under the Ninth Amendment (and the tenant build-out provisions set forth in Exhibit B), the most obvious differences between the tenant's obligations under these amendments are the amendments' Lease Terms and Base Rental amounts. For example, the Seventh Amendment prescribes a Lease Term dating from March 1, 2013 until July 31, 2019 with Base Rental payments ranging from $31,691.56 to $35,334.27. *See* Exhibit A-1 (Seventh Am. at §§ 2–3). The Eighth Amendment prescribes a Lease Term dating from August 1, 2019 until July 31, 2020 with a Monthly Base Rental of $43,712.50. *See* Exhibit A-3 (Eighth Am. at §§ 2–3). The Ninth Amendment prescribes a 156-month Lease Term following the Relocation Date (as defined by the Lease) and a Monthly Base Rental ranging from $0.00 to $180,609.58 (subject to the Partial

49. H-Work's potential liability on the Lease is strictly limited to the then-existing obligations that HQ had agreed to under the Seventh Amendment (and those before it) and not the new obligations contracted for by RGN and TIAAA after the date of the assignment. *See NextEra Retail of Tex., LP v. Investors Warranty of Am., Inc.*, 418 S.W.3d 222, 226–27 (Tex. App.–Houston [1st Dist.] 2013, pet. denied) ("Generally, the assignor of a contract remains liable for the obligations he ***originally*** assumed, even after the contract is assigned." (emphasis added)); *718 Associates, LTD. v. Sunwest N.O.P.*, 1 S.W.3d 355, 361 (Tex. App.–Waco 1999, pet. denied) ("[T]he original lessee's liability on the ***original*** contract remains unless expressly released by the lessor." (emphasis added)).

50. Common law contract principles preclude any attempt to impose liability on H-Work arising from Amendments executed after the date of the assignment. HQ's former obligations to pay rent or perform other Lease covenants arose from either privity of contract or privity of estate with TIAAA. *See Amco Trust, Inc. v. Naylor*, 317 S.W.2d 47, 50 (Tex. 1958). When HQ assigned the Lease to RGN, HQ transferred title and its entire interest in the leasehold estate, thereby destroying privity of estate between itself and TIAAA. *See Tawes v. Barnes*, 340 S.W.3d 419, 429 (Tex. 2011) ("An assignment creating privity of estate occurs when a lessee executes an instrument conveying his entire estate and interest under a lease to a subsequent lessee so that the original lessee retains no reversionary interest in the lease whatsoever."); *Amco Trust*, 317 S.W.2d at 50 ("One who thus acquires the entire leasehold estate becomes the tenant in place of the lessee and is in privity of estate with the lessor."). HQ and TIAAA likely remained in privity

Abatement Period). *See* Exhibit A-4 (Ninth Am. at §§ 2, 4). HQ never agreed to the terms of the Eighth and Ninth Amendments—including the payment of monthly rent as much as approximately five times the amount of rent in the Seventh Amendment—and therefore cannot be held liable for any alleged default based upon their terms. Exhibit A, at ¶9.

of contract following the assignment because TIAAA did not expressly release HQ from its obligations under the Lease. *See Carter v. Stovall,* 291 S.W.2d 411, 413 (Tex. App.—Amarillo 1956, writ ref'd n.r.e.) ("In an assignment by the lessee of a lease, there still remains privity of contract between the lessor and the original lessee, and there is also privity of estate between the lessor and assignee, enabling the lessor to recover from either the original lessee or assignee upon the original lessee's covenant to pay rent.").

51. However, HQ's privity of contract with TIAAA remained only through the duration of the Seventh Amendment to the Lease (through July 2019); privity of contract was destroyed when RGN and TIAAA entered into the Eighth Amendment to the Lease. *See Tawes*, 340 S.W.3d at 430 (noting that privity of contract exists only between signatories of specific agreements).[8] HQ never agreed to the Eighth or Ninth Amendments' terms, and therefore was never in privity of contract with TIAAA during the duration of the Eighth and Ninth Amendments. As such, TIAAA should be precluded from seeking damages from H-Work that arise out of RGN's alleged breach of the Ninth Amendment's terms. [9] *See TLC Hosp., LLC v. Pillar Income Asset Mgmt., Inc.*, 570 S.W.3d 749, 766 (Tex. App.—Tyler 2018, pet. denied) ("It is an elementary rule of law that privity of contract is an essential element of recovery in an action based on contractual theory.").

---

8 Case law from other jurisdictions further supports H-Work's contention that its obligations were terminated once TIAAA and RGN entered into the Eighth Amendment to the Lease. *See, e.g.*, *Jedco Dev. Co. v. Bertsch*, 441 N.W.2d 664, 667 (N.D. 1989) ("[I]f the lessor and assignee materially change the terms of the lease as it existed between the lessor and assignor, a new tenancy relationship is established and the assignor is released from his obligations under the original lease."); *St. Louis Twin Oaks Assocs. I, L.P. v. Exec. Off. Network, Ltd.*, 804 F. Supp. 1127, 1128 (E.D. Mo. 1992) (same) (quoting *Jedco Dev. Co.*, 441 N.W.2d at 667); *Groner v. Dryer*, 256 A.2d 559, 563 (D.C. 1969) ("[A] lessor and assignee may, be [sic] entering into a direct leasing arrangement or by varying materially the terms of the original lease, establish a new tenancy relationship, thereby terminating the old."); *Glesener v. Balholm*, 747 P.2d 475, 478 (1987) (same) (citing *Groner*, 256 A.2d at 563).

9 There can be no breach of the Lease through the Seventh Amendment because it expired long before the events giving rise to TIAAA's Claim.

52. Accordingly, TIAAA has no contractual basis upon which to hold H-Work liable for RGN's alleged breach of the Lease. On these grounds alone, the Court can readily grant this motion to disallow TIAAA's Claim in its entirety.

***B. TIAAA's Claim Against H-Work Fails Because RGN did not Breach the Lease.***

53. Even if H-Work is liable for RGN's obligations under the Ninth Amendment to the Lease, TIAAA's claim is invalid because it is based on an incorrect premise—that RGN breached the Lease. If TIAAA cannot prove that RGN breached the Lease, then TIAAA has no basis for asserting its Claim against H-Work.

54. TIAAA will be unable to prove RGN defaulted on the Lease because the Ninth Amendment to the Lease never went into effect. The Relocation Date (defined above) determines when the Ninth Amendment would have gone into effect, and because TIAAA never delivered the New Premises to RGN, and RGN never occupied the New Premises, RGN's obligations under the Ninth Amendment never accrued.[10]

55. And so, because TIAAA will be unable to prove that RGN breached its obligations under the Ninth Amendment to the Lease, the Court should disallow TIAAA's Claim in its entirety.

***C. TIAAA's Claim Against H-Work Should be Disallowed Because it Violates Well-Established Principles of Equity Under Texas Law.***

56. In addition to the legal arguments discussed above, the equities require disallowing TIAAA's Claim. In short, it is profoundly inequitable for TIAAA to argue that it is entitled to over $32 million in damages based upon its own refusal to accept an allegedly one-day-late rental

[10] Because RGN was under no obligation to pay TIAAA rent during the first twelve months of the Ninth Amendment to the Lease, even if the Ninth Amendment was in effect during the time of RGN's alleged breach, the extent of RGN's potential liability would be limited to its duty to pay rent as a holdover tenant in the Current Premises, thereby foreclosing TIAAA's remedies under the Ninth Amendment (which TIAAA seeks in its Proof of Claim). *See* Exhibit A-4 at §4.

payment totaling approximately $50,000. *See First Heights Bank, FSB v. Gutierrez*, 852 S.W.2d 596, 605 (Tex. App.—Corpus Christi 1993, writ denied) (noting that equity is "a court of conscience" and "seeks to prevent unjust enrichment"); *Slaughter v. Cities Service Oil Co.*, 660 S.W.2d 860, 862 n.* (Tex. App.—Amarillo 1983, no writ) ("[E]quitable principles are designed to alleviate harsh results caused by rigid application of legal principles."); *Simmons v. Wilson*, 216 S.W.2d 847, 849) (Tex. App.—Waco 1949, no writ) ("Equity relieves against the unjust consequences of accident and mistake, as well as of fraud.").

57. The situation the parties find themselves in is the direct result of TIAAA's wrongful termination of RGN's right of possession, and the Lease itself, after having accepted RGN's rental payment the month prior under similar circumstances. TIAAA failed to provide notice to RGN to cure the alleged default in connection with the October error, which was the result of the same accounting error that occurred in the prior month. Upon learning of this same mistake, RGN promptly tendered payment to TIAAA for the full amount of October's rent.

58. Based on these facts, the doctrines of quasi-estoppel and waiver preclude TIAAA's Claim. *See Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996) ("The affirmative defense of waiver can be asserted against a party who intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right. . . . Silence or inaction, for so long a period as to show an intention to yield the known right, is also enough to prove waiver." (internal citations omitted)); *Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 268 (Tex. App.—Dallas 2011, pet. denied) ("[Quasi-estoppel] is a long-standing doctrine applied to preclude contradictory positions: it precludes a person from asserting, to another's disadvantage, a right inconsistent with a position previously taken. . . . The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with

one in which he acquiesced." (internal citations omitted)). TIAAA should not be permitted to obtain such an exorbitant windfall based on its prior acquiescence and subsequent wrongful rejection of the rental payment.

59. As such, The Court should disallow TIAAA's Claim in its entirety on equitable grounds.

## II. If the Court does not Disallow TIAAA's Proof of Claim in its Entirety, the Court Should Reduce the Amount Claimed.

### *A. TIAAA Seeks both Out-of-Pocket and Benefit-of-the-Bargain Damages in Violation of Texas Law.*

60. Under Texas law, a plaintiff in a breach of contract action can recover damages for its expectation interest in the contract, which would give the plaintiff the benefit of its bargain by putting the plaintiff in the same economic position it would have occupied if the defendant had performed its contractual obligations. *See Range v. Calvary Christian Fellowship*, 530 S.W.3d 818, 831 (Tex. App.—Houston [14th Dist.] 2017, pet. denied); *Sharifi v. Steen Auto., LLC,* 370 S.W.3d 126, 148 (Tex. App.—Dallas 2012, no pet.). On the other hand, out-of-pocket damages in breach of contract cases are meant to restore the status quo at the time before the contract was made by awarding the plaintiff damages equal to the expenditures made by the plaintiff in reliance on the contract. *See Range*, 530 S.W.3d at 831; *Mistletoe Express Serv. v. Locke*, 762 S.W.2d 637, 638 (Tex. App.—Texarkana 1988, no writ).

61. In its Proof of Claim, TIAAA seeks *both* benefit-of-the-bargain damages (*i.e.*, future rent, as summarized at "Line Q" of the Proof of Claim) and out-of-pocket damages (*i.e.*, TIAAA's purported expenditures made in reliance on the contract, as summarized at "Lines F and J" of the Proof of Claim). But TIAAA cannot recover both benefit-of-the-bargain and out-of-pocket damages under Texas law. *See Yeng v. Zou*, 407 S.W.3d 485, 491 (Tex. App.—Houston

[14th Dist.] 2013, no pet.) ("Recovering both benefit-of-the-bargain or expectancy damages and out-of-pocket or reliance damages for the same loss is inconsistent and impermissible because it is a double recovery."); *Foley v. Parlier*, 68 S.W.3d 870, 882 (Tex. App.—Fort Worth 2002, no pet.) ("A party is entitled to sue and seek damages on alternative theories but is not entitled to recover on both theories; to do so is considered equivalent to a 'double recovery.'"). Accordingly, TIAAA's Proof of Claim impermissibly seeks double recovery from H-Work.

**B. *TIAAA Seeks Future Rental Payments in Violation of the Lease Itself.***

62. TIAAA cannot seek any future rental payments from H-Work because TIAAA, by its own admission, purported to terminate the Lease itself (in addition to terminating RGN's right to possession of the Premises). *See* Exhibit A-6 at 2.; Exhibit B at p. 2 of Statement of Claim. Assuming termination was proper, and it was not, Landlord's contractual remedies would be limited to the following:

(d) In the event that Landlord elects to terminate this Lease, then, notwithstanding such termination, Tenant shall be liable for and shall pay to Landlord the sum of all Rents and other indebtedness accrued to the date of such termination, plus, as damages, an amount equal to the total of (i) the cost of recovering the Premises, (ii) the cost of removing and storing Tenant's and other occupant's property located therein, (iii) the costs of reletting the Premises (including, without limitation, brokerage commissions), (iv) the cost of decorations, repairs, changes, alterations, and additions to the Premises whether accomplished in one or more steps or phases, (v) the cost of collecting such amounts from Tenant hereunder, and (vi) any other sums of money or damages that may be owed to Landlord as the result of default by Tenant or the exercise of Landlord's rights at law or in equity.

Exhibit A-1 (Orig. Lease § 25(d)). Notably missing from Landlord's contractual remedies is a right to future rent upon termination of the Lease. [11]

[11] Under the Original Lease, "Rent" is defined broadly as "Base Rental" plus "other sums of money becoming due and payable to Landlord hereunder." *See* Exhibit A-1 (Orig. Lease § 1(c)).

63. Future rent (subject to mitigation of damages) is provided for in Section 25(e) of the Lease, which sets forth TIAAA's remedies "[i]n the event that Landlord elects to take possession of the Premises and terminates Tenant's right to occupy the Premises ***without terminating this Lease***." Exhibit A-1 (Orig. Lease § 25(e)) (emphasis added). Section 25(e) further states that "Tenant shall remain liable, and shall pay Landlord on demand, any deficiency between the total Base Rental due under this Lease for the remainder of the lease Term and rents, if any which Landlord is able to collect from another Tenant for the premises during the remainder of the Lease term," in addition to other damages. *See id.* But the remedies listed in Section 25(e) do not apply to this case because TIAAA purported to terminate the Lease itself. *See Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 727–28 (Tex. 1981) ("In construing this lease, it is our task to seek the intention of the parties as that intention is expressed in the lease.") (citing *McMahon v. Christmann*, 157 Tex. 403, 303 S.W.2d 341 (1957)).

64. Case law provides further support for H-Work's interpretation of the Lease. By purporting to terminate the Lease upon RGN's alleged default, TIAAA waived its right to future rental payments. *See Glasscock v. Console Drive Joint Venture*, 675 S.W.2d 590, 592 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.) (holding lessor's election to terminate the lease bars the lessor's recovery of any future rent payments from the lessee); *Speedee Mart Inc. v. Stovall*, 664 S.W.2d 174, 177 (Tex. App.—Amarillo 1983, no writ) (holding that when a landlord elects to treat the lease as forfeited, the landlord relieves tenant of liability for future rent). Accordingly, TIAAA's election of contractual remedies precludes the recovery of future rent payments.

### *C. TIAAA's Claim Fails to Account for Its Duty to Mitigate Damages.*

65. Even if TIAAA has a right to future rental payments under the Lease, and it does not, TIAAA has a statutory and common law duty to mitigate damages. TIAAA even

acknowledges its duty to mitigate in its Proof of Claim, *see* Exhibit B at p. 2 of State of Claims, yet TIAAA still claims all future rental payments as damages under the Lease.

66. The Texas Supreme Court recognized a landlord's duty to mitigate damages for future rent in *Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 299 (Tex. 1997) ("We are persuaded by the reasoning of those courts that recognize that landlords must mitigate damages upon a tenant's abandonment and failure to pay rent."). This duty was subsequently codified in the Texas Property Code:

> (a) A landlord has a duty to mitigate damages if a tenant abandons the leased premises in violation of the lease.
>
> (b) A provision of a lease that purports to waive a right or to exempt a landlord from a liability or duty under this section is void.

TEX. PROP. CODE § 91.006(a).

67. The duty to mitigate requires TIAAA to use "objectively reasonable efforts" to relet the premises to a tenant "suitable under the circumstances." *Austin Hill Country Realty, Inc.*, 948 S.W.2d at 299. If TIAAA fails to use "reasonable efforts" to mitigate damages, TIAAA's recovery is barred to the extent that damages reasonably could have been avoided. *Id.* The reasonableness of TIAAA's efforts to mitigate damages is an issue for a fact finder. *See Hunsucker v. Omega Indus.*, 659 S.W.2d 692, 698 (Tex. App.—Dallas 1983, no writ) ("[I]ssues such as reasonableness and foreseeability are inherently issues for a jury because whether each is precluded as a matter of law depends upon all the facts and circumstances in each case.").

68. Although TIAAA's Claim contains several conclusory statements regarding the alleged challenges created by the COVID-19 pandemic, *see* Exhibit B at p. 2 of Statement of Claim, TIAAA leaves H-Work guessing as to the reasonableness of TIAAA's efforts (if any) to relet the premises. TIAAA purported to terminate the Lease on October 16, 2020. Approximately

seven months have passed since TIAAA that time, and TIAAA has failed to amend its Claim to account for any mitigation of damages as TIAAA indicated it would do. *See id.* ("As we emerge from the pandemic and gain better market information, Landlord reserves the right to amend its bid to address implications of the mitigation obligations.").

69. H-Work is not privy to information that would enable it to evaluate whether TIAAA's efforts to relet the Premises (if any) have been objectively reasonable. Regardless, the Court should disallow TIAAA's Claim on the basis that it does not account for *any* mitigation of damages.

***D. TIAAA's Claim is Subject to the Damages Cap in 11 U.S.C. § 502(b)(6).***

70. As noted above, TIAAA is entitled to no damages under non-bankruptcy law. However, assuming that TIAAA is able to successfully assert damages on account of a lease termination, section 502(b)(6) of the Bankruptcy Code requires that such damages be capped as follows:

> **(b)** Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
>
> …
>
> **(6)** if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—
>
> **(A)** the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of--
>
> **(i)** the date of the filing of the petition; and
> **(ii)** the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

          > **(B)** any unpaid rent due under such lease, without acceleration, on the earlier of such dates;

11 U.S.C. § 502(b)(6).

71. Between the statutory cap and/or TIAAA's duty to mitigate damages, TIAAA's claimed $26,291,224.85 in damages from the termination date to the expected lease expiration date must be significantly reduced. *See, e.g.*, *In re Iron-Oak Supply Corp.*, 169 B.R. 414, 420 (Bankr. E.D. Cal. 1994) ("[L]andlord's allowable damages are the lower of (1) the statutory cap computed in accordance with the ordinary language of section 502(b)(6) ignoring mitigation or (2) total rejection damages, which take mitigation into account, available under non bankruptcy law."). To the extent the Court determines that TIAAA holds a valid Claim under non-bankruptcy law, the Debtors hereby reserve all rights to reduce the allowed amount of the Claim pursuant to section 502(b)(6) of the Bankruptcy Code.

## Conclusion

72. For the foregoing reasons, TIAAA's Claim is unsupported by law and principles of equity. The Claim, therefore, fails to provide *prima facie* evidence of the validity and amount of the claim it asserts against the Debtors, as required by section 502 of the Bankruptcy Code and Bankruptcy Rule 3001(f). *See Allegheny Int'l*, 954 F.2d at 173–74. Accordingly, the Debtors request the Court disallow and expunge the Claim in its entirety. In the alternative, the Debtors request the Court to reduce TIAAA's exorbitant damages claim.

## Reservation of Rights

73. Nothing contained in this objection or any actions taken by the Debtors pursuant to relief granted in the Order is intended or should be construed as: (a) an admission as to the validity of any particular claim (including the Claim) against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim (including the Claim) on any grounds; (c) a promise or

requirement to pay any particular claim (including the Claim); (d) an implication or admission that any particular claim (including the Claim) is of a type specified or defined in this objection; (e) an admission by the Debtors that any contract or lease is executory or unexpired, as applicable; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; (g) a request or authorization to assume or reject any agreements under section 365 of the Bankruptcy Code; (h) a waiver of any party's rights to assert that any other party is in breach or default of any agreement; or (i) an admission that any contract or lease is integrated with any other contract or lease.

74. The Debtors hereby reserve their right to amend, modify, and/or supplement this objection, including to object to the Claim on any additional grounds, prior to the hearing before the Court on this objection, if any (the "Hearing"), and nothing in this objection shall affect the Debtors' right to object to the Claim at a future date on a basis other than as set forth in this objection as permitted by bankruptcy or non-bankruptcy law, subject to any limitations set forth in the Local Rules.

**Notice**

75. The Debtors will provide notice of this objection to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the UCC; (c) the Debtors' prepetition secured lender and the DIP Lender or, in lieu thereof, counsel thereto; (d) the Claimant; and (e) those persons who have formally appeared in these chapter 11 cases and requested service pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

76. No prior request for the relief sought in this objection has been made to this or any other court.

[*Remainder of page intentionally left blank*]

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, substantially in the form as the Order filed contemporaneously with this Motion, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: May 20, 2021
Wilmington, Delaware

*/s/ Ricardo Palacio*

**ASHBY & GEDDES, P.A.**
Ricardo Palacio (DE Bar No. 3765)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19801
Tel.:    (302) 654-1888
Fax:    (302) 654-2067
Email: rpalacio@ashbygeddes.com

*(Proposed) Special Conflicts Counsel to the Debtors and Debtors in Possession*

**LYNN PINKER HURST & SCHWEGMANN, LLP**

Eric E. Pinker (admitted *pro hac vice*)
Bennett Hampilos (admitted *pro hac vice*)
2100 Ross Avenue, Suite 2700
Dallas, TX 75201
Tel: (214) 981-3837
Fax: (214) 981-3839
Email: epinker@lynnllp.com
          bhampilos@lynnllp.com

*Co-Counsel to the Debtors and Debtors in Possession*