## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RGN-GROUP HOLDINGS, LLC, a | ) | Case No.  20-11961 (BLS) |
| Delaware limited liability company, *et al.* | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Docket Ref. No.  1228 |

Ricardo Palacio, Esquire
Ashby & Geddes, P.A.
500 Delaware Avenue, 8th Floor
Wilmington, DE  19801

- and -

Eric W. Pinker, Esquire
Lynn Pinker Hurst & Schwegmann, LLP
2100 Ross Avenue, Suite 2700
Dallas, TX  75201

*Special Conflicts Counsel to the Debtors*

David W. Carickhoff, Esquire
Archer & Greiner, P.C.
300 Delaware Avenue, Suite 1100
Wilmington, DE  19801

- and -

Charles S. Kelly, Esquire
Mayer Brown LLP
700 Louisiana Street, Suite 3400
Houston, TX  77002

*Counsel for Teachers Insurance and Annuity Association of America*

## OPINION[1]

The matter before the Court is the objection[2] to the claim of Teachers Insurance and

Annuity Association ("TIAA") filed by the above-captioned Debtors (collectively, the

"Debtors").  TIAA asserts a claim in the amount of approximately $5.77 million on account of an

alleged breach of a lease (the "Lease") by debtor H-Work LLC (hereinafter "H-Work")[3] to

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.
[2] Docket No. 1228
[3] H-Work was previously known as HQ Global Workspaces LLC ("HQ").  The entity's name was changed from HQ to H-Work during the term of the Lease.  In the hope of avoiding confusion, for purposes of this Opinion, the Court will refer to H-Work and its predecessor HQ as "H-Work".

commercial real property located in Dallas, Texas (the "Property").   For the reasons stated

below, the Court will sustain, in part, the objection to TIAA's claim and allow the claim in the

reduced amount of $3,380,155.37.

### INTRODUCTION AND SUMMARY

In 2014, TIAA and H-Work executed the Seventh Amendment to a commercial lease that

extended the term of that lease to 2019.  Shortly after executing the Seventh Amendment, H-

Work assigned the Lease to an affiliate, RGN-Dallas, which was a newly-created special purpose

entity whose sole business was to hold the Lease[4].  TIAA did not sign the assignment or

otherwise consent to it.  In 2019, as the Seventh Amendment was set to expire, TIAA and RGN-

Dallas entered into the Eighth Amendment, which merely extended the lease term for a year to

allow the parties to negotiate a more complicated arrangement.

The Ninth Amendment was executed by TIAA and RGN-Dallas in December of 2019.

That agreement more than tripled the space RGN-Dallas would occupy, changed the location of

the leased premises to a different building on the campus, provided for new rent terms, and

contemplated an extensive buildout.  RGN-Dallas continued to occupy its old space during the

preparation and buildout of the space allocated under the Ninth Amendment.

During the buildout period and prior to occupying the new space, RGN-Dallas failed to

timely pay its October 2020 rent and TIAA terminated the Lease.  There is no doubt that non-

debtor RGN-Dallas, as tenant and occupant, may be liable to TIAA for breach of the Lease.  The

question before the Court is whether H-Work, a Debtor in these proceedings, remains liable to

TIAA for damages notwithstanding the fact that H-Work previously assigned the Lease and did

not sign the Eighth or Ninth Amendments.  The question is more than academic since the Court

---

[4] RGN-Dallas is not a Debtor in these proceedings.

has recently confirmed a plan of reorganization for H-Work and its affiliates that pays unsecured claims in full.

## BACKGROUND

### A. Background and Status of Bankruptcy Filing

On August 17, 2020 (the "Petition Date"), RGN-Group Holdings, LLC, RGN-National Business Centers, LLC, and H-Work, LLC (collectively, the "Debtors") each filed with this Court a voluntary petition under Chapter 11 of the Bankruptcy Code. Numerous affiliates of the Debtors subsequently commenced voluntary cases which have been jointly administered in this Court.

The Debtors, together with their non-debtor affiliates, offer a network of on-demand office and co-working spaces, and ancillary services and support, to clients across a host of industries in over 1,000 locations in the United States and Canada. The record reflects that the Covid-19 pandemic significantly impacted the Debtors' operations and revenues in the spring and summer of 2020[5]. These cases were commenced to address that crisis, and by order dated August 19, 2021[6] the Court confirmed the Debtors' plan of reorganization which implemented a successful and highly commendable rehabilitation of their business.

### B. Procedural History

On December 18, 2020, TIAA timely filed Proof of Claim Number 10268 (the "Claim") against H-Work asserting approximately $32.1 million in damages arising out of the breach of a commercial lease.[7] TIAA subsequently amended the Claim before trial to assert damages of

---

[5] *See* Declaration of James S. Feltman in Support of Chapter 11 Petitions and First-Day Relief [Docket No. 3].
[6] Docket No. 1608.
[7] TIAAS Ex. 13 (Proof of Claim No. 10268).

approximately $5.6 million. TIAA is also pursuing additional claims against RGN-Dallas and other non-debtor affiliates in a separate state court proceeding.

On May 20, 2021, Debtors filed their objection to TIAA's claim.[8]  In the Objection, Debtors are seeking entry of an order disallowing and expunging the Claim in its entirety. TIAA filed a response seeking allowance of its Claim on July 16, 2021.[9]  The matter was tried before the Court in proceedings that concluded on August 16, 2021.

### C. The Lease

The Lease covers space in Lincoln Centre, which is a multi-building office campus located in Dallas, Texas that was constructed in 1981. The office campus includes a hotel and three separate office buildings referred to as One, Two, and Three Lincoln Centre.

On October 12, 1987, Metropolitan Life Insurance Company ("Met Life") as landlord, and Executive Services Plus of Texas, Inc. ("ESP") as Tenant, entered into a commercial office lease agreement for certain premises in Three Lincoln Centre (the "Property").[10]  At that time, the Lease consisted of 18,254 square feet, plus defined common areas in Three Lincoln Centre.

Since its inception, there have been nine separate amendments to the Lease.  The first four amendments to the Lease were between the original parties. On June 5, 2003, Met Life and H-Work as tenant (who had succeeded to the interest of ESP) entered into the Fifth Amendment to the Lease.[11]

Thereafter, TIAA purchased the building and succeeded to the interest of MetLife. On July 30, 2007, TIAA and H-Work entered into the Sixth Amendment[12] to the Lease, which

---

[8] Docket No 1228.
[9] Docket No. 1423.
[10] See Joint Ex. J-1 (The parties submitted a joint exhibit list in connection with the trial that commenced on August 12, 2021).
[11] See Joint Ex. J.1E.
[12] Joint Ex. J.1F.

extended the Lease term by five years.[13]   Five years later, TIAA and H-Work entered into the

Seventh Amendment[14] to the Lease.  The Seventh Amendment to the Lease extended the term to

July 31, 2019, with options to renew, and the base rent was changed.[15]

During the period of the Seventh Amendment, H-Work executed an Assignment and

Assumption of Lease (the "Assignment") in favor of RGN-Dallas, a non-debtor affiliate of H-

Work.[16] The Assignment, which became effective on May 31, 2014, was executed by Mr.

Michael Osburn as the "Authorized Person" on behalf of both H-Work and RGN-Dallas. The

assignment provided that RGN-Dallas would assume H-Work's obligations and liabilities under

the Lease.

The Lease prohibited assignment generally, subject to certain defined exceptions that

permitted, among other things, "an assignment of tenant's interest in the Lease to any entity

controlled by, controlling or under common control with Tenant[.]"[17]  Because H-Work and

RGN-Dallas remained under common corporate control, the Assignment was permitted under the

Lease.  The record reflects that the Assignment occurred as part of an internal corporate policy of

the Debtors that contemplated each leased space to be held by a special purpose entity.  It is

undisputed that while TIAA was provided with notice of the Assignment,[18] H-Work neither

sought nor obtained a release from TIAA in connection with the Assignment.

On July 26, 2019, TIAA and RGN-Dallas executed the Eighth Amendment[19] to the

Lease, which operated mainly to extend the term to July 31, 2020.  The record reflects that this

one-year extension was to provide the parties – TIAA and RGN-Dallas – with time to negotiate

---

[13] Joint Ex. J.1F.
[14] Joint Ex. J.1G.
[15] Joint Ex. J.1G.
[16] *See* Joint Ex. J.3 (Assignment and Assumption of Lease).
[17] Joint Ex. J.1E, § 19.
[18] Joint Ex. J.3.
[19] Joint Ex. J.1H

the relocation and expansion of the leased premises to another building on the same campus.  H-Work did not sign and was not a party to this Amendment.

Ultimately, TIAA and RGN-Dallas reached an agreement and executed the Ninth Amendment[20] on December 19, 2019. H-Work again was not a party to, and did not sign, this Amendment. The Ninth Amendment provided that RGN-Dallas would occupy 59,788 square feet in One Lincoln Centre, a different building on the campus owned by TIAA.[21] In addition to the change of size and physical location, this Amendment also provided for tenant improvement allowance of approximately $4 million. Under these terms, the Lease was set to expire thirteen years after the tenant occupied the space.[22]  In connection with executing the Ninth Amendment, the parties entered into a Guarantee Agreement whereby an affiliate of RGN-Dallas, IWG Investments Sarl ("IWG"), could be obligated to pay up to $3.5 million in damages to TIAA in the event of a tenant default.[23]  IWG is not a Debtor in these proceedings.

On April 21, 2020, TIAA's property manager, Cushman & Wakefield, sent an email notifying RGN-Dallas that the second and third floors of the Relocation Premises were vacant and ready for RGN-Dallas to commence work.[24]  RGN-Dallas took no action at that time to complete the build-out of the space and move in.[25] RGN-Dallas was later notified in August 2020 that the first floor was now available, and the Tenant could take possession of that space.

---

[20] Joint Ex. J.1I.
[21] Docket No. 1228
[22] Joint Ex. J.1I:  [T]he term "**Relocation Date**" mean the earlier of (i) the date on which Tenant occupies any portion of the Relocation Premises and begins conducting business therein (it being understood that entry by Tenant for purposes of installing improvements, moving in furniture, conducting space tours, designing or constructing the Work and readying the Relocation Premises for the opening of its business shall not constitute commencing business operations), or (ii) the later of (x) one hundred thirty-five (135) days following the Delivery Date (hereinafter defined) (the "**Construction Period**") or (y) the date Landlord Substantially Completes the Landlord Work ("**Renovation Date**"). *See* Ninth Amend., § 3(c) (emphasis in original).
[23] Debtors' Ex. 36.
[24] TIAA Ex. 6.
[25] Docket No. 1423, ¶ 22.

Again, RGN-Dallas made no attempt to move into the space. It is undisputed that RGN-Dallas was under no obligation to move into any portion of the new space until the Relocation Date: the full space was made available to RGN-Dallas on or about October 7, 2020, making the Relocation Date February 19, 2021. It is also undisputed that the Relocation Date, as referenced above and defined in the Ninth Amendment to the Lease, never occurred.

Upon expiration of the Eighth Amendment on July 31, 2020, RGN-Dallas remained in the original leased premises as a holdover tenant in that space. RGN-Dallas failed to submit timely rent payments for the months of August 2020 and September 2020. TIAA notified RGN-Dallas by email on September 10, 2020, that it had not received rent payments for those two months.[26] RGN-Dallas tendered payment for both months the following day, which TIAA accepted.[27]

RGN-Dallas again failed to make timely rent payment in October 2020. According to the terms of the Lease, rent is due by the 10th day of each month and there is a five-day grace period.[28] On October 16, 2020, one day after expiration of the grace period, TIAA issued a letter terminating the Lease.[29] RGN-Dallas immediately attempted to pay its October 2020 rent via wire transfer on October 19, 2020, after learning of the termination. TIAA attempted to refund the payment by tendering a check to RGN-Dallas, but RGN-Dallas has never cashed that check. The record reflects that RGN-Dallas attempted to pay rent every month until April 2021.

On November 16, 2020, a Justice of the Peace Court in Texas entered an eviction order providing that TIAA may recover the Property from RGN-Dallas, along with rent owing,

---

[26] Joint Ex. J-6.
[27] *Id.*
[28] *See* Joint Ex. J-1, §§ 5(a), 25(a).
[29] Debtors' Ex. 10.

attorney's fees, and costs.[30]  TIAA is seeking allowance of a claim for damages against H-Work

in the amount of $5,770,809.97, which it contends is the amount computed pursuant to §

502(b)(6) of the Bankruptcy Code.

## JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this matter under 28 U.S.C. §1334(b).

Venue is proper in this Court and in this District under 28 U.S.C. §§ 1404 and 1412.  This is a

core matter under 28 U.S.C. § 157(b)(2)(A) and (B).

## LEGAL STANDARD

Under Bankruptcy Code § 502(a), a proof of claim is deemed allowed unless objected to.

11 U.S.C. § 502(a).  If a proof of claim meets the requirements of Federal Rule of Bankruptcy

Procedure 3001, then it is *prima facie* evidence of the claim's validity.[31]  The filing of an

objection under Rule 9014 operates to defeat that prima facie case so long as the objection

"produced sufficient evidence to negate one or more of the sworn facts in the proof of claim."[32]

In that event, the burden then shifts back to the claimant to demonstrate the validity of the

claim.[33]  For purposes of the present dispute, the Debtors' objection and supporting

declarations[34] has provided sufficient evidence challenging the claim to shift the burden back to

TIAA.[35]

## THE PARTIES' POSITIONS

---

[30] *See* Joint Ex. J-17.
[31] 4 *Collier on Bankruptcy* ¶ 502.02 n.2 (citing *In re Sears*, 863 F.3d 973, 977 (8th Cir. 2017)); *see also* Fed. R. Bankr. P. 3001.
[32] *In re Allegheny Int'l, Inc.*, F.2d 167, 173-74 (3d Cir. 1992).
[33] *Id.* at 174.
[34] Docket No.  1228, 1526.
[35] *See* letter dated August 10, 2021 denying motion to strike and determining order of proceeding at trial, Docket No. 1530.

The Debtors seek disallowance of TIAA's claim in its entirety.  As a threshold matter, the Debtors contend that any privity of contract between H-Work and TIAA terminated upon execution of the Eighth Amendment to the Lease and therefore H-Work cannot be liable as a matter of law for damages arising from any alleged breach of the Lease after the expiration of the Seventh Amendment.  More specifically, the Debtors assert that H-Work never agreed to be responsible for any of the obligations under the Eighth or Ninth Amendments, which were negotiated and entered into between TIAA and RGN-Dallas.  Alternatively, the Debtors assert that RGN-Dallas never breached the Ninth Amendment since TIAA terminated the Lease months before the Relocation Date that would have triggered RGN-Dallas's performance obligations thereunder.  Finally, the Debtors submit that principles of equity militate disallowance of the claim since TIAA made its own business decision to terminate the Lease and to trigger the damages it presently claims.

In response, TIAA contends that it is black letter law in Texas that a tenant remains obligated to the landlord under a commercial lease, notwithstanding assignment, in the absence of the landlord granting a release to the tenant.  In this case, TIAA stresses that the assignment of the Lease from H-Work to RGN-Dallas occurred without its consent and that it never released H-Work from any of its obligations under the Lease.  Thus, TIAA submits that privity of contract between it and H-Work was unaffected by the assignment and persisted through the Eighth and Ninth Amendments to the Lease.  TIAA stresses that it is undisputed that it terminated the Lease for non-payment in scrupulous conformity with the terms of the Lease.  Accordingly, TIAA asserts that the equities (should the Court reach these considerations) favor it and that equitable considerations should otherwise not come into play to reduce its claim.

At trial, both sides focused heavily and properly on their dispositive arguments:  if there is no privity of contract, TIAA loses.  If H-Work remains on the hook for obligations under the Lease through the Eighth and Ninth Amendments, it should be liable for damages arising from the breach of that Lease.  Each side presented comprehensive evidence and testimony regarding the economic elements of the claim which inform the Court's ruling.  The matter is ripe for disposition.

## DISCUSSION

### A.  Does H-Work Remain in Contractual Privity with TIAA?

The material facts are not in dispute.  H-Work assigned its obligations to RGN-Dallas in 2014, shortly after executing the Seventh Amendment of the Lease.  TIAA neither consented to the assignment nor provided H-Work with a release from its obligations thereunder.  After the Assignment, TIAA negotiated with RGN-Dallas and entered into two further amendments to the Lease before it was terminated for non-payment of rent on October 16, 2020.

Texas law governs interpretation of the Lease.[36]  Under Texas law, an assignor's obligation will survive assignment unless the contract provides otherwise, or the assignor obtains a release from the counterparty. [37]

While the Lease permitted the assignment from H-Work to RGN-Dallas (as they are affiliates under common corporate control), TIAA never released H-Work from its obligations under the Lease.  And the Court observes that this is not a surprising result:  H-Work assigned

---

[36] *See* Joint Ex. J.1 at § 37 ("Governing Law.  This Lease and the rights and obligations of the parties hereto shall be interpreted, construed and enforced in accordance with the law of the State of Texas.").

[37] *See Seagull Energy E&P, Inc. v. Eland Energy*, 207 S.W.3d 342, 345, 346-47 (Tex. 2006); *NextEra Retain of Tex., LP v. Inv'rs Warranty of Am., Inc.*, 418 S.W.3d 222, 226 (Tex. App – Houston [1ˢᵗ Dist.] 2013, pet. denied) ("Generally, the assignor of a contract remains liable for the obligations he originally assumed, even after the contract is assigned."); *718 Associates, Ltd v. Sunvest N.O.P., Inc.,* 1 S.W.3d 355, 361 ((Tex. App. – Waco 1999, pet. denied) ("the original lessee's liability on the original contract remains unless expressly released by the lessor.").

the Lease to a special purpose entity within its corporate family that had neither assets nor operations. From TIAA's view, the assignment was presumably without material economic or legal consequence, since it was continuing to deal with the same corporate entity that had been its tenant all along. This conclusion was reinforced by the fact that the same person – Mr. Michel Osburn – signed the Assignment instrument for both H-Work and RGN-Dallas, and he continued to serve as the face of the tenant in dealings with the landlord. The record reflects that Mr. Osburn signed each of the Seventh, Eighth and Ninth Amendments to the Lease.

The Debtors place significant weight on the holding in *NextEra*, which they suggest limit an assignor's liability to those "obligations he originally assumed."[38] Since H-Work did not sign anything beyond the Seventh Amendment, the Debtors posit that H-Work's obligations under the Lease expired in 2019 when the five-year term of the Seventh Amendment concluded. The Debtors acknowledge that the Eighth Amendment only created a one-year "bridge" on effectively the same terms as the Seventh Amendment. But the Debtors stress the significant modifications contained in the Ninth Amendment – new building, larger space, higher rent and a thirteen-year term – to contend that H-Work cannot be liable for such a different deal.

In effect, the Debtors assert that the material change doctrine should operate to permit the Court to infer or impose a release for H-Work where none was formally provided by the landlord. That doctrine – which does not appear to have been adopted by Texas courts – is intended to prevent an injustice being worked upon an assignor when an assignee signs on to new and different terms to which the assignor had never agreed.[39] While there may be circumstances where application of that doctrine would make sense, this is not such a situation. H-Work assigned the Lease to RGN-Dallas, an assetless special purpose entity created only to

---

[38] *NextEra*, 418 S.W.3d at 226.
[39] *Jedco Dev. Co., Inc. v. Bertsch*, 441 N.W.2d 664, 667 (N.D. 1989).

hold the Lease.  The same individual was and continues to be the authorized person for both RGN-Dallas and H-Work.  There is neither surprise nor unfairness to H-Work to hold it to the terms of a Lease from which it has not been released.

### B.  Was the Lease Breached by RGN-Dallas?

The record reflects that the Ninth Amendment was signed by TIAA and RGN-Dallas on December 19, 2019.  As noted, the new terms of the Ninth Amendment contemplated a move by RGN-Dallas into another building and tripled the space it would occupy.  Such a move required extensive preparations, and TIAA committed to an extensive buildout before RGN-Dallas would move into the new space.  Similarly, the Ninth Amendment effectively required TIAA to move current tenants around to free up the space that RGN-Dallas would occupy.  While all that was going on, RGN-Dallas would continue to occupy its original space demised under the Seventh and Eighth Amendments.

It is undisputed that RGN-Dallas was late with the August and September 2020 rent. After receiving correspondence from TIAA in September 2020, RGN-Dallas promptly paid the rent.  In October 2020, RGN-Dallas again failed to pay the rent.  After expiration of both the payment deadline and the five-day grace period provided under the Lease, TIAA sent a notice of termination of RGN-Dallas on October 16, 2020.[40]  TIAA subsequently sought and obtained an order of eviction from the Texas state court based upon the termination of the Lease.[41]

The Debtor contends that since RGN-Dallas had not yet occupied the new space contemplated under the Ninth Amendment, it is at most a holdover tenant for the rent due under the Eighth Amendment – just over $40,000.  More to the point, H-Work asserts that the Ninth Amendment never came into effect since the new space was never occupied and the Relocation

---

[40] Debtors' Ex. 10.
[41] Joint Ex. J.17

Date never occurred.  The Relocation Date defined the mechanics by which the new space would be tendered to the tenant, and the deadline for the tenant to occupy the space.  H-Work correctly noted that the full space was only tendered by TIAA on October 7, 2020.  The Ninth Amendment afforded the tenant 135 days after that tender – until February 19, 2021 – to take possession of the premises.

Obviously, that did not occur, as the Lease was terminated on October 16, 2020 on account of RGN-Dallas' failure to pay the rent.  It is the Debtors' position, in effect, that since the Relocation Date never occurred, they cannot be liable for damages arising under the Ninth Amendment.  This is incorrect.  The Ninth Amendment was signed on December 19, 2019 and was an enforceable, binding agreement on both sides from its execution.  True, the landlord's heaviest obligations were front-loaded:  it had to expend significant funds to prepare the space and relocate existing tenants before RGN-Dallas could move in and start paying rent.  But that simple timing feature of the transaction does not mean that there wasn't a valid contract between the parties under the Ninth Amendment, or that TIAA cannot recover damages for breach notwithstanding RGN-Dallas' failure to take possession of the premises.

## C.  Calculation of the Claim

Having determined above that H-Work remained in contractual privity notwithstanding the Assignment, and that the Lease was indeed breached by the tenant, the Court turns now to allowance of TIAA's Claim.  The Claim as amended totals approximately $5.77 million and breaks down into four separate categories of asserted damages:

- Unpaid rent -- $19,720.44
- Tenant Relocation -- $1,688,009.79
- Brokerage Commissions -- $2,006,910.17
- Lobby Renovation -- $2,056,169.57

Comprehensive evidence was adduced by TIAA at trial to document the amounts above.  The Court will address each of the categories.

As to unpaid rent, this appears undisputed.  The Debtors acknowledge that there were rent obligations outstanding as of the date of termination of the Lease, and in fact the Debtors tried repeatedly to pay that rent and cure the default.  The record supports allowance of unpaid rent, after deduction for application of the security deposit, in the amount of $19,720.44.

The record is likewise undisputed that TIAA paid brokerage commissions to its own broker and to RGN-Dallas's broker in connection with negotiation and completion of the Ninth Amendment, and the amounts paid are fixed.  However, at trial it was established that TIAA paid one of the brokers' invoices in full, even though the engagement letter with Cushman & Wakefield ("CW") clearly provides that it was entitled to half of its fee when the Ninth Amendment was executed, and the balance only after RGN-Dallas occupied the new space.[42]  As noted above, the latter condition never occurred.

TIAA offered testimony from both its own witness and the Debtors' witnesses that the market practice in Dallas is that broker commissions are paid in full upon execution of a lease or amendment.  However, regardless of market custom or practice, the Court will not allow a claim in favor of TIAA for amounts that it was not legally obligated to pay.  The brokerage commissions piece of TIAA's claim will be reduced by 50% of the CW commission ($334,485.03).  Brokerage commissions will be allowed in the amount of $1,672,425.14.

Turning to the relocation expenses, the Ninth Amendment contemplated that RGN-Dallas would move into space that was currently being occupied by other tenants of TIAA.  TIAA

---

[42] Joint Ex. J.15.

14

presented evidence at trial that it moved two tenants to different space, and that a third tenant chose not to move within Lincoln Centre and terminated its lease.

The Debtors have argued that TIAA should not recover costs or expenses incurred in relocating one of the tenants, Entos LLC ("Entos"), since TIAA had contractually obligated itself to move Entos prior to executing the Ninth Amendment with RGN-Dallas. If TIAA was already committed to move Entos, the argument goes, then any damages it suffered cannot be attributed to the Ninth Amendment.

This argument fails. The record at trial demonstrates that the Entos relocation was a critical element to delivering the space covered by the Ninth Amendment. The agreement between TIAA and Entos to relocate was executed only three days before the Ninth Amendment was executed,[43] when negotiations over that Amendment were in their final strokes. The testimony of both Mr. Barker (TIAA's witness) and Mr. Osburn (the Debtors' primary witness) was largely in agreement as to the complexity of the Ninth Amendment and the steps necessary to implement it. Both sides understood that the Ninth Amendment required TIAA to enter into arrangements with multiple other parties to make the space available, and those arrangements had to be staged around execution of the Ninth Amendment. If, for example, TIAA had learned that one of the other tenants steadfastly refused to move (and couldn't be legally compelled to do so), TIAA could not have executed the Ninth Amendment without exposing itself to grave and very foreseeable liability.

In this instance, the record supports TIAA's assertion that the Entos relocation agreement was signed in furtherance of the commitments TIAA was making to RGN-Dallas under the Ninth Amendment. The fact that the relocation agreement with Entos was signed shortly before the

---

[43] Joint Ex. J.13.

Ninth Amendment is simply an unremarkable feature of a complicated commercial arrangement that TIAA and RGN-Dallas fully understood would require the involvement or cooperation of multiple third parties.  The request for tenant relocation expenses will be allowed in the amount of $1,688,009.79.

Finally, TIAA seeks allowance of a claim on account of renovations it made to the lobby of One Lincoln Centre.  TIAA contends that these renovations, which included moving restroom facilities from one side of the building to the other, were done in connection with the Ninth Amendment and for the benefit of RGN-Dallas.

Messrs. Osburn and Barker each testified that TIAA is in the midst of a comprehensive $43 million renovation and updating of the entirety of Lincoln Centre, which (as noted above) includes three office towers, a hotel, retail space and parking.  That exercise is intended to refresh commercial space originally built in 1981 and to ensure that it remains a Class A property.  It is the Debtors' contention that the lobby renovations were undertaken by TIAA as part of its overall renovation project, separate from any obligations or commitments embodied in the Ninth Amendment.

The record reflects that the Ninth Amendment does indeed mention the lobby.  Schedule 2 of the Ninth Amendment reads, in its entirety, as follows: "Landlord will update the 5400 Building lobby with new Class A finishes to be completed by the Relocation Date."  It is noteworthy that the record is devoid of any evidence that RGN-Dallas would participate in any respect in the design or renovation of the lobby.  To the contrary, the evidence at trial demonstrated that the lobby renovation was completed exclusively by TIAA in a manner to ensure that the lobby was consistent with and matched the scheme of the overall renovation of Lincoln Centre.

The Debtors have amply demonstrated that the lobby was not renovated as part of the Ninth Amendment but rather in connection with TIAA's plan for the comprehensive updating of the entirety of Lincoln Centre.  TIAA completed the work and enjoys the benefits of improved lobby facilities in its building.  Accordingly, TIAA's request for a claim relating to lobby renovations in the amount of $2,056,169.57 is denied.

## CONCLUSION

For the reasons stated above, the Court will sustain, in part, the Debtors' objection to TIAA's claim.  The Court will allow a Claim in favor of TIAA in the amount of $3,380,155.37 on account of the breach and termination of the Lease.  The parties are requested to confer and submit an Order consistent with the Court's ruling within seven days of the date hereof.

BY THE COURT:


Brendan Linehan Shannon
United States Bankruptcy Judge

Dated:    September 15, 2021
          Wilmington, Delaware

17