## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

RGN-GROUP HOLDINGS, LLC, *et al.*,

Reorganized Debtors

Chapter 11

Case No. 20-11961 (BLS)

Re: Docket No. 1993

## MEMORANDUM OPINION[1]

Before the Court is the request of Teachers Insurance and Annuity Association of America ("TIAA") for allowance of attorneys' fees and interest as part of its claim against debtor H-Work, LLC ("H-Work"). TIAA filed a proof of claim against H-Work asserting damages arising from the breach of a commercial property lease in Dallas, TX.[2] The Debtors filed an objection to TIAA's Claim and, prior to trial, the parties agreed that the Debtors' objection to the portion of TIAA's Claim related to interest and attorneys' fees would be held in abeyance until the Court decided the main issues in dispute. On September 15, 2021, the Court issued an Opinion sustaining, in part, the Debtors' objection, and allowing TIAA's claim in the reduced amount of $3,380,155.37.[3]

---

[1] This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. This Court has jurisdiction to decide this claim objection pursuant to 28 U.S.C. § 157 and § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

[2] TIAA filed its original proof of claim against H-Work on December 18, 2020 asserting approximately $32.1 million in damages arising out the breach of the Lease (the "Claim"). TIAA subsequently amended the Claim to assert damages of approximately $5.6 million. The Court is advised that TIAA is also pursuing claims against other non-debtor affiliates in a separate state court proceeding.

[3] Docket No. 1840. A more detailed discussion of the relationship between the parties and the background of this matter is set forth in the Opinion.

The Order regarding the Debtors' Objection to TIAA's Claim included a schedule for considering TIAA's claim for  attorneys' fees and interest.[4]  Consistent with that Order, on October 4, 2021, TIAA filed its request for attorneys' fees in the amount of $736,524.64, and interest in the amount of $581,758.57.[5]  Both amounts were set as of September 30, 2021, and TIAA notes that those amounts will continue to increase over time.

On October 14, 2021, the Debtors objected to TIAA's request for attorneys' fees and interest.[6] On December 31, 2021, the Debtors filed a letter with supplemental authority in support of their objection to TIAA's interest claim.[7]

TIAA's Claim for Attorneys' Fees

The Debtors argue that TIAA's claim for attorneys' fees should be denied entirely or at least reduced because (i) neither the Lease nor applicable law permits TIAA to recover attorneys' fees on its claim; (ii) TIAA's requested fees are unreasonable; and (iii) other deficiencies and the doctrine of *res judicata*  preclude recovery of a portion of TIAA's requested fees.

(a) *Lease language*

TIAA claims that the Lease allows for the recovery of its attorneys' fees, particularly under Section 30,[8] which provides:

> In the event either party files suit to enforce the performance of or obtain damages caused by a default under any of the terms of this Lease, the party

---

[4] Docket No. 1868, ¶ 3.
[5] Docket No. 1993.
[6] Docket No. 2038.
[7] Docket No. 2344.
[8] TIAA also claims that other sections of the Lease allow it to recover attorneys' fees. Because the Court concludes that TIAA may recover attorneys' fees under Section 30, the Court does not make any ruling about the applicability of the other sections.

against whom a judgment is rendered shall pay the prevailing party's reasonable attorneys' fees.

TIAA argues that the Court allowed part of its Claim and, therefore, it is a prevailing party that can recover its attorneys' fees. The Debtors disagree, asserting that Section 30 includes two preconditions to recovery that TIAA cannot meet. First, Section 30 requires the lawsuit to be between parties to the Lease, and the Debtors argue that H-Work is not a party to the Lease. Second, Section 30 requires TIAA to obtain a prevailing judgment in a lawsuit, and the Debtors argue that a proof of claim is not a lawsuit but, instead, is a "written statement that a debt exists."[9]

The Debtors' arguments about Section 30 lack merit. In its September 15, 2021 Opinion, the Court concluded that even though H-Work had assigned its interest to an affiliate and did not execute the most recent amendment to the Lease, it remained responsible for the obligations in the Lease.[10] Therefore, H-Work would continue to be a responsible party for obligations under Section 30. The Debtors also assert that filing a proof of claim is not a lawsuit. However, an *objection* to a proof of claim is a contested matter under Fed.R.Bankr.P. 9014, which incorporates many of the Rules of Part VII of the Bankruptcy Rules for adversary proceedings.[11] Section 30 of the Lease uses the broad term "suit," which is defined in Black's Law

---

[9] *Gift Box Corp. v. Ravin*, No. MRS-P-1128-2014, 2020 WL 10051923, *14 (N.J. Super. Ch. July 15, 2020) (citing *Dunaway . LVNV Funding, LLC (In re Dunaway)*, 531 B.R 267, 272 (Bankr. W.D. Mo. 2015)).

[10] Opinion at 11-12 (The Court rejected the Debtors' argument that material changes in the latest Lease amendment between TIAA and H-Work's assignee, RGN-Dallas IX, LLC ("RGN-D"), prevented H-Work from any liability under that amendment, and decided that "[t]here is neither surprise nor unfairness to H-Work to hold it to the terms of the Lease from which it has not been released.")

[11] Fed.R.Bankr.P. 3007, Advisory Committee Notes; Fed.R.Bankr.P 9014(c).

Dictionary as "[i]n a legal sense, *suit* refers to an ongoing dispute at any stage, from the initial filing to the ultimate resolution."[12]  For "lawsuit," Black's Law Dictionary provides "*Lawsuit* more clearly implies courtroom proceedings before a judge, as opposed to a dispute before some other type of tribunal."[13]  The filing of an objection to a proof of claim is both a "suit" and a "lawsuit."  The Debtors' arguments for denying attorneys' fees based on the language of Section 30 of the Lease are rejected.

(b) *Bankruptcy Code § 502(b)(6)*

The Debtors also argue that TIAA's attorneys' fee claim is precluded by Bankruptcy Code § 502(b)(6), which disallows "the claim of a lessor for damages resulting from the termination of a lease of real property," to the extent such claim exceeds –

(A)    the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of - -
(i)     the date of the filing of the petition; and
(ii)    the date on which such lessor repossessed, or the lessee surrendered, the lease property; plus
(B)    any unpaid rent due under such lease, without acceleration, on the earlier of such dates.

TIAA argues that the attorneys' fees do not fall within the "rent reserved" cap of Section 502(b)(6)(A) and, therefore, are not subject to the statutory cap.  TIAA relies on the *McSheridan* test, which requires a charge to meet a three-part test to constitute "rent reserved" under § 502(b)(6):

---

[12] Black's Law Dictionary (11th ed. 2019).
[13] *Id.*

(1)    The charge must (a) be designated as "rent" or "additional rent" in the lease; or (b) be provided as the tenant's/lessee's obligation in the lease;

(2)    The charge must be related to the value of the property or the lease thereon; and

(3)    The charge must be properly classifiable as rent because it is a fixed, regular or periodic charge. [14]

TIAA claims that the attorneys' fees here fail prongs two and three. The Debtors agree that the attorneys' fees are not "rent reserved." However, the Debtors argue that TIAA's analysis of § 502(b)(6) is incomplete because the cap in § 502(b)(6) applies to more than the "rent reserved." The Debtors claim that *all* fees, costs, and other charges arising from termination of a lease are capped by § 502(b)(6).

The Court agrees that the statutory cap on landlord damage claims is broader than the "rent reserved" analysis. Section 502(b)(6) caps a landlord's claim "for damages resulting from the termination of a lease of real property." To determine whether attorneys' fees (and other non-rent costs) are *termination* damages, other courts have considered the following:

Assuming all other conditions remain constant, would the landlord have the same claim against the tenant if the lease had not been terminated? [15]

To apply this test, other courts have found it necessary to examine the claim underlying the attorneys' fees and distinguish between lease termination and non-termination damages. For example, in *Wigley*, the Eighth Circuit Court of Appeals

---

[14] *Kuske v. McSheridan (In re McSheridan)*, 184 B.R. 91, 99-100 (9th Cir. B.A.P. 1995) *overruled in part by In re El Toro Materials Co., Inc.*, 504 F.3d 978, 981-82 (9th Cir. 2007) ("To the extent that *McSheridan* holds section 502(b)(6) to be a limit on tort claims other than those based on lost rent, rent-like payments or other damages directly arising from a tenant's failure to complete a lease term, it is overruled.").

[15] *Kupfer v. Salma (In re Kupfer)*, 852 F.3d 853, 858 (9th Cir. 2016) (citing *Lariat Cos. v. Wigley (In re Wigley)*, 533 B.R. 267, 270-71 (8th Cir. B.A.P. 2015)).

determined that attorneys' fees claims related to damages that had accrued *prior to termination* of the lease (i.e., unpaid rent, common area maintenance and late fees) were not subject to the § 502(b)(6) cap.[16]   The balance of the landlord's claim for attorneys' fees and costs in *Wigley* were remanded to the lower courts to determine (among other things) whether the landlord would have a claim for those fees and costs if the lease had not been terminated.[17]

This Court's September 15, 2021 Opinion allowed TIAA's claim against H-Work in three parts:  (i) unpaid rent obligations outstanding as of the date of termination of the Lease ($19,720.44); (ii) broker commissions (reduced to $1,672,425.14); and (iii) tenant relocation expenses ($1,688,009.79).  The Court disallowed TIAA's claim for lobby renovations ($2,056,169.57).  Considering the various parts of the allowed claim, only attorneys' fees related to the unpaid rent obligations accruing prior to termination of the lease would not be subject to the § 502(b)(6) cap.  TIAA's Claim for broker commissions and tenant relocation expenses, along with the attorneys' fees incurred in the pursuit of those claims,

---

[16] *Wigley*, 533 B.R. at 272.

[17] *Id.*    The *Kupner* court similarly rejected an "all-or-nothing approach" when applying the § 502(b)(6) cap to a landlord's claim for fees and costs. Pre-bankruptcy arbitrators had assessed damages against the Kupner debtors and in favor of the landlords for lease breaches totaling almost $1.3 million for both unpaid past rent and future rent discounted to present value. *Kupner*, 852 F.3d at 855. The sole issue before the *Kupner* court was whether the § 502(b)(6) cap applied to the attorneys' fees and arbitration costs in the landlord's claim.  The *Kupner* court decided that:

> Fees attributable to litigating [the landlords'] claims for future rent are capped, because such claims would not arise were the leases not terminated. But the arbitration award also included damages for *past* rent, which the [landlords] could claim independent of termination; the fees attributable to that portion of the litigation are not capped.    The parties also litigated Debtors' numerous counterclaims.  To the extent that the counterclaims concerned ordinary alleged breaches, independent of lease termination, the associated fees and costs are not capped, either.

*Id.* at 859.

would not exist except for the termination of the Lease.  Therefore, those claims, and the attorneys' fees associated with them, are subject to the cap set forth in § 502(b)(6).

Typically, a landlord will assert a claim in a bankruptcy case for payment of lost future rent in the full amount allowed by § 502(b)(6).  Therefore, a landlord generally cannot recover additional out-of-pocket expenses arising from termination (including attorneys' fees, interest, and other charges) since those expenses would exceed the maximum allowed amount for termination damages calculated according to § 502(b)(6) and known as the "statutory cap."   In this case,  TIAA has calculated its maximum allowed claim amount according to § 502(b)(6) at $5.6 million.[18] However, rather than assert a claim here for unpaid future rent in the capped amount, TIAA's claim sought only recovery of out-of-pocket expenses including broker commissions, tenant relocation expenses, and lobby renovations.[19]  After trial, this Court disallowed part of TIAA's claim and allowed a claim of $3,380,155.37, which is less than the statutory cap amount of $5,589,155.37. Therefore, although TIAA's attorneys' fees represent termination damages that are capped by §502(b)(6), TIAA may include those fees in its claim amount *as long as TIAA's total claim for termination damages in this bankruptcy case is less than the statutory cap amount.* In other words:

---

[18] Although the Debtors have vigorously disputed liability to TIAA on various grounds, they have not disputed TIAA's calculation of the maximum allowed amount of TIAA's claim pursuant to § 502(b)(6).

[19] As noted above (*supra* n. 2), it is the Court's understanding that TIAA is pursuing claims against non-debtors arising from termination of the Lease in a state court proceeding in Texas.

| | |
|---|---|
| TIAA Allowed Claim per Opinion dated 9/15/21: | $ 3,380,155.37 |
| Plus attorneys' fees: | $   736,524.64 |
| Total termination damages claim: | $4,116,690.01 |

TIAA's total allowed termination damages claim ($4,116,690.01) is less than statutory cap amount ($5,589,155.37).[20] Except to the extent TIAA's claim for attorneys' fees may be reduced or disallowed for other reasons, the attorneys' fee claim is allowable under § 502(b)(6).

 (c) *Reasonableness of Fees*

 The Debtors also argue that the amount of TIAA's attorneys' fee claim is unreasonable and should be disallowed or reduced. The Debtors argue that TIAA has not shown that the fees were reasonable and necessary because (i) the attorneys' fee statements are too imprecise to justify recovery of the requested fee amount, and (ii) the fee amount does not account for the proportionally low percentage of recovery (based on the original proof of claim amount).

 The Court has reviewed the documentation provided in support of the attorneys' fees and disagrees that the instances of block billing or other claimed deficiencies prevent the Court from assessing the reasonableness of the fees. Careful review of the billing records submitted reflect intensive trial preparation, briefing, and discovery entirely consistent with what the Court would expect for a complex commercial trial.[21]

---

[20] The Court notes that TIAA filed an appeal of the Order sustaining, in part, and overruling, in part, the Debtors' Objection to TIAA's Claim. If TIAA's allowed claim amount increases, the total allowed claim for termination damages (including attorneys' fees and interest) cannot exceed $5,589,547.48.

[21] The Debtors also contend that the Court should weigh the reasonableness of TIAA's fees by comparing the original claim amount ($32 million) to the allowed claim amount ($3.4 million). The Court disagrees and notes that TIAA timely amended its original claim to approximately $5.6 million

*(d) Other attorneys' fee deficiencies*

The Debtors further object to the fees charged by Munsch Hardt Kopf & Harr, P.C. ("MHKH") in connection with litigation in the Texas state courts. The Debtors argue MHKH should not recover fees for the eviction proceeding that exceed the amount set in the state court's order. Further, the Debtors argue that MHKH should not recover attorneys' fees arising from state court proceedings that are still pending because no final judgment has been entered. The Debtors also assert that the affidavit in support of MHKH's fees does not delineate the number of hours spent on each case matter, making it impossible to determine the amount of time attributable to litigation of state court matters or the Debtors' Claim Objection. The Court agrees with the Debtors. The lack of documentation and limited information in MHKH's affidavit prevent the Court determining whether the fee request is permissible and, if so, what amount of attorneys' fees are reasonable. Therefore, the Debtors' objection to MHKH's fees will be sustained.

TIAA's Interest Claim

The Debtors' Plan provides that TIAA's claim is unimpaired and will receive "payment in full in Cash (including payment of postpetition interest at a rate sufficient to render such Allowed General Unsecured Claim against the Assuming SPE Debtors Unimpaired), which payment shall occur on the later of (A) the Effective Date or (B) in the ordinary course."[22] The issue before the Court is

---

based on a § 502(b)(6) calculation and the issues presented at trial in this matter arose from that revised claim amount.

[22] Plan, Art. III.B.1(g)(iii).

whether treating TIAA's claim as unimpaired requires payment of postpetition interest at the contract rate in the Lease or at the federal judgment rate.

TIAA argues that it is entitled to postpetition interest on the Allowed Claim at the contract rate.  Section 5(b) of the Lease provides that:

> All installments of Rent not paid when due and payable shall bear interest at the maximum lawful rate until paid.[23]

TIAA asserts that under Texas law, contracts that provide for the maximum interest rate allowed by law are entitled to apply the rate of 18%, as set by statute.[24]   TIAA also asserts that it is appropriate to use the contract rate because debtor H-Work and non-debtor RGN-D are jointly and severally liable for the indebtedness and applying different interest rates for the parties would be inequitable. Therefore, TIAA requests interest on the Allowed Claim Amount at 18% beginning October 17, 2020 (i.e., the day after the Lease was terminated) which TIAA calculated as $581,758.57 as of September 30, 2021.

The Debtors object to the amount of TIAA's interest claim, arguing that the appropriate rate for postpetition interest on unimpaired claims is the federal judgment rate.[25]   Other courts have recognized that when a debtor in bankruptcy is solvent, unsecured creditors are entitled to  postpetition payment of interest "at

---

[23] Lease, ¶5(b).

[24] Tex. Fin. Code Section 304.002 (Vernon 1999) ("A money judgment of a court of this state on a contract that provides for interest . . . earns postjudgment interest at a rate equal to the lesser of: (1) the rate specified in the contract, which may be a variable rate; or (2) 18 percent a year."); *Jones v. R.O. Pomroy Equip Rental, Inc.*, 438 S.W.3d 125, 132 (Tex. App. Eastland 2014).

[25] 28 U.S.C. § 1961.  *In re W.R. Grace & Co.*, 475 B.R. 34, 73, n. 25 (D. Del. 20120 9("In a bankruptcy case, the applicable rate is the federal judgment rate reflected on the day that the debtor filed its bankruptcy petition.").

the legal rate" before any distribution of remaining assets are made to the debtor.[26]

Although bankruptcy court decisions split over whether "the legal rate" means

applying a federal judgment rate, contract rate or applicable state law, the Ninth

Circuit applied the federal judgment rate, writing that "the interests of 'fairness,

equality, and predictability in the distribution of interest on creditors' claims 'as

well as the interest in applying federal law to federal bankruptcy cases, required

application of the federal judgment rate approach."[27]

My colleague recently considered the same issue in *In re Hertz Corp.*[28]

Relying on caselaw, the express language of the Bankruptcy Code, and legislative

history, Judge Walrath determined in *Hertz* that the federal judgment rate, rather

than the contract rate, should be used to determine the appropriate amount of

postpetition interest payable to unimpaired creditors by a solvent debtor.[29]  The

Court wrote:

> It is true that in the rare solvent chapter 11 debtor case, some claims
> may be entitled to post-petition interest under sections 1129(a)(7) and
> 726(a)(5). However, those sections do not reinstate the creditors'
> contract or state law rights to unmatured interest that has been
> disallowed by section 502(b)(2).  Instead … sections 1129(a)(7) and
> 726(a)(5) require treatment of claims in accordance with the mandates
> of those sections which courts have concluded require the payment of
> post-petition interest only at the federal judgment rate.[30]

---

[26] *In re Cardelucci*, 285 F.3d 1231, 1234 (9th Cir. 2002) (citing 11 U.S.C. § 726(a)(5)).

[27] *Id.* (quoting and adopting *In re Beguelin*, 220 B.R. 94, 100-01 (9th Cir. B.A.P. 1998)). *See also Official Comm. of Unsecured Creditors v. PG&E Corp.*, No. 20-CV-04570-HSG, 2021 WL 2007145 (N.D. Cal. May 20, 2021) (applying *Cardelucci* and affirming the bankruptcy court's decision requiring postpetition interest to be paid at the federal rate).

[28] *Wells Fargo Bank, N.A. v. The Hertz Corp (In re The Hertz Corp.)*, No. 20-11218, 2021 WL 6068390 (Bankr. D. Del. Dec. 22, 2021).

[29] *Id.* at *16.

[30] *Id.* at *10.

Judge Walrath also observed that applying the federal judgment rate "promotes several important policies of the Bankruptcy Code," including similar treatment of creditors with the same priority, predictability, and the efficient administration of the estate.[31]

This Court agrees with the thorough and well-reasoned analysis laid out in *Hertz* on this issue and concludes that TIAA is entitled to interest on its allowed claim at the federal judgment rate.

Conclusion

For the reasons set forth above, the Debtors' objection to TIAA's claim for attorneys' fees is sustained, in part, with respect to the fees requested for MHKH. The Debtors' remaining objections to TIAA's claim for attorneys' fees are overruled. Also, for the reasons set forth above, the Debtors' objection to TIAA's claim for interest is sustained.

The parties shall confer and submit an appropriate Order consistent with this Opinion within 14 days of the date hereof.

FOR THE COURT:

Brendan Linehan Shannon
United States Bankruptcy Judge

Dated:  February 17, 2022

---

[31] *Id.* at *17.

12